**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE LIVINGSOCIAL MARKETING AND SALES PRACTICE LITIGATION<br><br>─────────────────────────<br><br>**This Document Relates To:**<br>**ALL CASES** | **Misc. Action No. 11-0472 (ESH)**<br>**MDL Docket No. 2254** |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT[1]

Plaintiffs Melissa Forshey, Sarah Gosling, Mandy Miller, Kimberly Pullman, Dawn Abbott, Barrie Arliss, Cara Lauer and Amy Schultz (collectively "Plaintiffs") bring this action on behalf of themselves and classes of all other similarly situated persons, as defined below, against Hungry Machine, Inc. d/b/a LivingSocial.com ("LivingSocial") and Jack's Canoes and Kayaks, LLC d/b/a Jack's Boathouse ("Jack's Boathouse") (collectively "Defendants"). Plaintiffs make their allegations upon personal knowledge as to their own transactions. All other facts contained in this Complaint are alleged upon information and belief and based upon the investigation of counsel.

### INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers who purchased, or otherwise acquired, gift certificates from LivingSocial. These gift

---

[1] By filing this Consolidated Amended Class Action Complaint, Plaintiffs do not intend to waive their rights under 28 U.S.C. § 1407 or *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), to later seek remand to the transferor districts in which each Plaintiff filed his or her original complaints.

certificates, marketed as "vouchers" by LivingSocial, are sold and issued with expiration dates that are deceptive and illegal under federal and District of Columbia law, as well as the gift certificate laws of a host of other states.  LivingSocial partners and contracts with various retail businesses and merchants, such as Jack's Boathouse, to sell and issue these illegal gift certificates.

2.      LivingSocial is a so-called "Daily Deal" website that claims to offer discounts on a variety of products and services, including restaurants and bars, hotels, salon and spas, sporting events, clothing and other retail items, and fitness classes and other recreational courses, among other things.  LivingSocial offers these discounts in numerous geographic markets in the United States.

3.      LivingSocial offers discounts to consumers *en masse* by directly partnering with the retail businesses and merchants that provide the products or services.  LivingSocial promises to increase the sales volumes of its retail partners by sending out daily e-mails promoting their products and services to its massive subscription network, which by its own account, includes over 34 million domestic users.

4.      Once a consumer purchases a LivingSocial gift certificate for a particular daily deal, LivingSocial sends a confirmatory e-mail with a link for downloading and printing the gift certificate.  The gift certificate may then be redeemed with the retail business offering the product or service within a specified – and often unreasonably short – period of time.

5.      The gift certificates sold and issued by LivingSocial contain short expiration dates that are illegal under both federal and state laws.  The Electronic Funds Transfer Act (the "EFTA"), 15 U.S.C. § 1693 *et seq*., and the Credit Card Accountability Responsibility and

Disclosure Act (the "CARD Act"), expressly prohibit the sale and issuance of gift certificates with expiration dates of less than five years. Moreover, a host of states have enacted gift certificate laws that go even further than this federal floor, with some prohibiting the sale and issuance of gift certificates with *any* expiration period.

6.      However, LivingSocial and its retail partners, including Jack's Boathouse, market and sell gift certificates with limited expiration periods that are much shorter than the periods allowed under both federal and state laws. Defendants know full well that many consumers will not be able to use the gift certificates before the expiration date. LivingSocial's deliberate and systematic use of abbreviated expiration dates harms and deceives consumers throughout the United States.

7.      LivingSocial and its retail partners bank on the fact that many consumers will not manage to redeem their gift certificates before the limited expiration period – indeed, many consumers will never use their gift certificates, despite already having paid for the particular service or product. As a result, many consumers are left having purchased a gift certificate that is valueless to them. The fact that a substantial number of gift certificates are not redeemed before their expiration date creates a windfall for LivingSocial and its retail partners – the very result that Congress and the legislatures of many states intended to prevent by enacting legislation regulating the use of expiration dates on gift certificates.

8.      Mirroring the experience of many thousands of purchasers nationwide, Plaintiffs were victims of Defendants' unlawful and deceptive activities because they purchased LivingSocial gift certificates containing illegal expiration dates, which they were unable to use before expiration.

9.      Accordingly, Plaintiffs, on behalf of themselves and the proposed Classes, bring

this class action against LivingSocial and Jack's Boathouse, for violations of the EFTA, state gift

certificate laws, and the District of Columbia Consumer Protection Act ("CPPA"), DC Code §

28-3901 *et seq.*, as well as asserting common law claims for breach of contract, quasi-contract,

restitution, unjust enrichment, and declaratory and injunctive relief.

10.     Plaintiffs, on behalf of themselves and the members of the Classes, seek all

available damages and equitable relief, including, but not limited to, compensatory damages

and/or restitution; damages under the CARD Act and the CPPA; an order enjoining Defendants

from selling and issuing gift certificates with unlawful expiration dates and other improper

terms; punitive damages and/or disgorgement of unlawful profits; reasonable attorneys' fees and

expert fees; reimbursement of costs and expenses; and any additional relief that this Court deems

necessary, just or appropriate.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this nationwide class action

pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, exclusive

of interest and costs, and is a class action in which some members of the proposed classes are

citizens of states different than Defendants.

12.     Venue is proper in this District under 28 U.S.C. § 1391(a) and (b).  Defendants are

residents of this District and subject to personal jurisdiction here.  Likewise, Defendants have

made material omissions and misrepresentations emanating from this District.

13.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1367.

## PARTIES

14.    At all times relevant to this matter, Plaintiff Melissa Forshey ("Forshey") resided, and continues to reside, in Washington, DC.  During the relevant time period, Forshey received offers from LivingSocial and purchased gift certificates based on representations and claims made by LivingSocial.  Forshey purchased LivingSocial gift certificates that were subject to illegal expiration dates.

15.    At all times relevant to this matter, Plaintiff Sarah Gosling ("Gosling") resided, and continues to reside, in San Francisco, California.  During the relevant time period, Gosling received offers from LivingSocial and purchased gift certificates based on representations and claims made by LivingSocial.  Gosling purchased LivingSocial gift certificates that were subject to illegal expiration dates.

16.    At all times relevant to this matter, Plaintiff Kimberly Pullman ("Pullman") resided, and continues to reside, in San Diego, California.  During the relevant time period, Pullman received offers for discounted products and services from LivingSocial and purchased LivingSocial gift certificates based on representations and claims made by LivingSocial. Pullman purchased LivingSocial gift certificates that were subject to illegal expiration dates.

17.    At all times relevant to this matter, Plaintiff Mandy Miller ("Miller") resided, and continues to reside, in Broward County, Florida.  During the relevant time period, Miller received offers for discounted products and services from LivingSocial and purchased LivingSocial gift certificates based on representations and claims made by LivingSocial.  The LivingSocial gift certificates purchased by Miller were subject to illegal expiration dates.

18.     At all times relevant to this matter, Plaintiff Dawn Abbott ("Abbott") resided, and continues to reside, in Seattle, Washington. During the relevant time period, Abbott received offers from LivingSocial and purchased gift certificates based on representations and claims made by LivingSocial. Abbott purchased LivingSocial gift certificates that were subject to illegal expiration dates.

19.     At all times relevant to this matter, Plaintiff Barrie Arliss ("Arliss") resided, and continues to reside, in Seattle, Washington. During the relevant time period, Arliss received offers for discounted products and services from LivingSocial and purchased LivingSocial gift certificates based on representations and claims made by LivingSocial. Arliss purchased LivingSocial gift certificates that were subject to illegal expiration dates.

20.     At all times relevant to this matter, Plaintiff Cara Lauer ("Lauer") resided, and continues to reside, in Seattle, Washington. During the relevant time period, Lauer received offers from LivingSocial and purchased gift certificates based on representations and claims made by LivingSocial. Lauer purchased LivingSocial gift certificates that were subject to illegal expiration dates.

21.     At all times relevant to this matter, Plaintiff Amy Schultz ("Schultz") resided, and continues to reside, in Osseo, Minnesota. During the relevant time period, Schultz received offers for discounted products and services from LivingSocial and purchased LivingSocial gift certificates based on representations and claims made by LivingSocial. Schultz purchased LivingSocial gift certificates that were subject to illegal expiration dates.

22.     LivingSocial is a privately-held Delaware corporation with its principal place of business located at 1445 New York Avenue, NW, Suite 200, Washington, DC 20005.

LivingSocial is an Internet-based company engaged in, *inter alia*, the promotion and sale of discounted products and services to millions of individuals. LivingSocial does business throughout the United States, including in the District of Columbia.

23.     Defendant Jack's Canoes and Kayaks, LLC d/b/a Jack's Boathouse is a Washington, DC limited liability company, with its principal place of business in Washington, DC. LivingSocial, on behalf of, and pursuant to an agreement with, Jack's Boathouse, promoted, sold and issued gift certificates for use at Jack's Boathouse.

## GENERAL ALLEGATIONS

**LivingSocial's Scheme to Sell Gift Certificates with Illegal Expiration Dates**

24.     LivingSocial was originally founded in 2007 as Hungry Machine. LivingSocial launched its first Daily Deal on July 27, 2009. Since that time, LivingSocial has become one of the most popular social-buying websites in the world, behind only Groupon.

25.     LivingSocial promises consumers discounted deals on various products and services in approximately 189 markets. In order to receive the Daily Deals offered by LivingSocial, consumers must sign-up and provide their e-mail addresses and other personal information to LivingSocial. Over 34 million people in the United States reportedly have signed up to receive offers from LivingSocial.

26.     Each day, LivingSocial sends subscribers in each of the cities it operates in a "Daily Deal" e-mail, promoting the particular products or services of the retail businesses with which it has partnered. Consumers interested in the particular "Daily Deal" may then purchase a gift certificate (*i.e.*, "voucher") from LivingSocial for the product or service.

27.     To arouse consumer interest and create the urgency to buy the "Daily Deal" product or service, LivingSocial offers the "Daily Deal" for a very limited period of time – usually only 24 hours.  This is intended to create – and does in fact create – a rush among consumers to purchase LivingSocial gift certificates.

28.     LivingSocial also uses electronic social media, such as Facebook and Twitter, to promote and stoke demand for its "Daily Deals," creating additional pressure among consumers to buy LivingSocial gift certificates before time runs out.

29.     Purchases of gift certificates are made directly through LivingSocial's website using the consumer's credit or debit card.  Once consumers purchase the Daily Deal, they will receive an e-mail from LivingSocial, with a link to the gift certificate the following business day, typically at approximately 7:00 a.m. local time.  Consumers may then follow and click the link and print the gift certificate or download it to certain electronic devices, such as smartphones.

30.     The gift certificates may then be directly redeemed with LivingSocial's retail partners, such as Jack's Boathouse, who purport to offer the products and services indicated on the gift certificate.

31.     However, LivingSocial and retail partners like Jack's Boathouse impose illegal expiration dates on each gift certificate they promote and sell.  Often, the expiration dates on the gift certificates are only a few months from the date of purchase.

32.     LivingSocial and its retail partners are well aware that after the initial frenzy to purchase the gift certificate, many consumers, including the Plaintiffs, will not be able to redeem their gift certificate before they expire.

33.     As a result, many consumers cannot and do not take advantage of and/or use the product or service they paid for before the expiration date unilaterally imposed by Defendants, resulting in a substantial windfall for Defendants.

34.     In addition to imposing illegal expiration periods, LivingSocial places other deceptive and unfair conditions on its gift certificates.  For example, consumers are typically required by Defendants to redeem gift certificates in a single transaction.  As a result, consumers are forced to redeem the gift certificates all at once and are unable to use the gift certificates in multiple transactions.

35.     Similarly, unused portions of the gift certificates may not be redeemed for cash.  . LivingSocial imposes unfair restrictions on the manner in which consumers can redeem their gift certificates for the products and services offered even though consumers have already paid in full for such products and services.

**LivingSocial and Its Retail Partners Profit from the Use of Illegal Expiration Terms on LivingSocial Gift Certificates**

36.     LivingSocial targets two markets – consumers who seek products or services by purchasing LivingSocial gift certificates, and retail businesses who wish to promote their products and services through LivingSocial.  These retail businesses are willing to partner with LivingSocial and offer their products and services at a discount because LivingSocial promises to promote their products and services through its huge subscription base and guarantees them a specified volume of business.  Indeed, by leveraging its enormous customer base and its comprehensive knowledge of social networking, LivingSocial is able to reach very large audiences, generating broad-based exposure for its retail partners.

37.     LivingSocial's business model, particularly its ability to establish partnerships with retail businesses nationwide, depends in large part on its systematic use of illegal expiration dates. LivingSocial knows that its retail partners are not willing to offer their products and services at a discount to consumers through the sale of LivingSocial gift certificates without an agreement to limit the time period for which consumers can redeem the gift certificates. Indeed, it has been reported that upwards of 40% of all "Daily Deal" type gift certificates, such as those sold by LivingSocial, go unredeemed.[2] "Daily deal" websites like LivingSocial reportedly pitch these redemption statistics as an incentive to the retail businesses they are wooing. Accordingly, LivingSocial and its retail partners continue to flout the law by imposing illegal expiration dates on the LivingSocial gift certificates sold to consumers.

38.     LivingSocial attempts to circumvent federal and state gift certificate laws by inserting a disclaimer on some LivingSocial gift certificates in which it claims its expiration terms do not apply to any prepaid portion of the gift certificates. Such disclaimers are ineffective and provide no defense for LivingSocial. First, the disclaimer is buried at the bottom of certain LivingSocial gift certificates in tiny, barely legible font that is readily overlooked by consumers. Second, in prior versions of the gift certificate, the disclaimer is only found on the voucher itself, which must be downloaded and printed by the consumer. Thus, consumers who do not download and print their gift certificates will never have access to, nor knowledge of, the disclaimer. Third, the disclosure neither excuses nor justifies LivingSocial's use of illegal expiration periods because the placement of expiration dates on LivingSocial gift certificates

---

[2]     Kelli B. Grant, *10 Things Daily Deal Sites Won't Say*, March 29, 2011, www.smartmoney.com/spending/deals/10-things-daily-deal-sites-wont-say-13014040724421.

constitutes per se violations of federal and state laws, for which there is no applicable exception.

Fourth, LivingSocial's disclaimer is ineffective as it puts the onus on consumers to research their

respective state's gift certificate laws as to the validity of expiration periods.

39.     LivingSocial reaps massive profits from this business model.  LivingSocial

reportedly takes for itself 30% to 50% on the sale of each gift certificate.  LivingSocial

reportedly made $100 million dollars in revenue in 2010 and is expected to book $1 billion in

2011.  LivingSocial's retail partners also profit from the increases in customer traffic that result

from the sale of LivingSocial gift certificates.  Again, LivingSocial's and its retail partners'

undue profits are fueled by their use of illegal expiration periods on the gift certificates sold to

consumers.

### Plaintiffs' Experiences

**Plaintiff Melissa Forshey**

40.     On June 22, 2010, Plaintiff Melissa Forshey received a "Daily Deal" e-mail offer

from LivingSocial for a gift certificate for Jack's Boathouse, a canoe and kayak rental business

located in Georgetown that offers guided tours by canoe or kayak.

41.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Forshey

to pay $12.00 in exchange for a sunset kayak or canoe trip touring the monuments.  According to

the Daily Deal, the sunset tour typically costs $25.00.  The gift certificate was represented to be a

52% savings over the typical costs charged by Jack's Boathouse.

42.     Forshey purchased two gift certificates for Jack's Boathouse, making a payment

of $24.00 to LivingSocial through its website.

43.     The next morning Forshey received an e-mail from LivingSocial confirming her purchase of the gift certificates for Jack's Boathouse.  The e-mail contained a link to LivingSocial's website that Forshey used to download her gift certificates.

44.     The gift certificates indicated that they expired on October 31, 2010.

45.     Forshey was unable to redeem the gift certificates prior to their expiration on October 31, 2010.

**Plaintiff Sarah Gosling**

*Creations Dessert House*

46.     On February 24, 2010, Plaintiff Sarah Gosling received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for desserts at Creations Dessert House located in San Francisco, California.

47.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Gosling to pay $10.00 in exchange for $20.00 worth of Hong Kong-Style desserts at Creations Dessert House.

48.     Gosling purchased a gift certificate for Creations Dessert House, making a payment of $10.00 to LivingSocial through its website.

49.     Gosling subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that Gosling used to download her gift certificate.

50.     The gift certificate indicated that it expired on February 22, 2011.

51.     Gosling was unable to redeem the gift certificate prior to its expiration on February 22, 2011.

*Butter Restaurant*

52.     On March 24, 2010, Gosling received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for food and drinks at Butter, a local San Francisco bar and restaurant.

53.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Gosling to pay $10.00 in exchange for a $20.00 gift certificate to Butter.

54.     Gosling purchased the gift certificate for Butter, making a payment of $10.00 to LivingSocial through its website.

55.     Gosling subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate. The e-mail contained a link to LivingSocial's website that Gosling used to download her gift certificate.

56.     The gift certificate indicated that it expired on March 22, 2011.

57.     Gosling was unable to redeem the gift certificate prior to its expiration on March 22, 2011.

*Always Tan Skin and Body*

58.     On April 5, 2010, Gosling received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for Always Tan Skin and Body located in San Francisco, California.

59.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Gosling to pay $25.00 in exchange for $50.00 worth of waxing services or a 60-minute facial.

60.     Gosling purchased a gift certificate for Always Tan Skin and Body, making a payment of $25.00 to LivingSocial through its website.

- 13 -

61.     Gosling subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that Gosling used to download her gift certificate.

62.     The gift certificate indicated that it expired on April 2, 2011.

63.     Gosling was unable to redeem the gift certificate prior to its expiration on April 2, 2011.

*GoCar Tours*

64.     On April 7, 2010, Gosling received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for GoCar Tours.

65.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Gosling to pay $24.50 in exchange for a 1-hour or 2.5 hour self-guided GPS tour of San Francisco worth $49.00.

66.     Gosling purchased a gift certificate for GoCar Tours, making a payment of $24.50 to LivingSocial through its website.

67.     Gosling subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that Gosling used to download her gift certificate.

68.     The gift certificate indicated that it expired on May 27, 2010.

69.     Gosling was unable to redeem the gift certificate prior to its expiration on May 27, 2010.

*Pizzeria Avellino*

70.     On June 23, 2010, Gosling received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for food and drink at Pizzeria Avellino, a bar and restaurant located in San Francisco, California.

71.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Gosling to pay $15.00 in exchange for $30.00 worth of food and drink at Pizzeria Avellino.

72.     Gosling purchased a gift certificate for Pizzeria Avellino, making a payment of $15.00 to LivingSocial through its website.

73.     Gosling subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that Gosling used to download her gift certificate.

74.     The gift certificate indicated that it expired on December 22, 2010.  Gosling was unable to redeem the gift certificate prior to its expiration on December 22, 2010.

**Plaintiff Mandy Miller**

*CrossFit ATP*

75.     On February 24, 2010, Plaintiff Mandy Miller received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for CrossFit classes from CrossFit ATP in Dania Beach, Florida.

76.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Miller to pay $19.00 in exchange for three semi-private CrossFit classes at CrossFit ATP.

77.     Miller purchased a gift certificate for CrossFit ATP, making a payment of $19.00 to LivingSocial through its website.

78.     Miller subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate. The e-mail contained a link to LivingSocial's website that Miller used to download her gift certificate.

79.     The gift certificate indicated that it expired on February 12, 2011.

80.     Miller was unable to redeem the gift certificate prior to its expiration on February 12, 2011.

*T-3 Health & Fitness*

81.     On January 27, 2011, Miller received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for rock climbing T-3 Health & Fitness in Cooper City, Florida.

82.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Miller to pay $20.00 in exchange for 60 minutes of indoor rock climbing at T-3 Health & Fitness.

83.     Miller purchased a gift certificate for T-3 Health & Fitness, making a payment of $20.00 to LivingSocial through its website.

84.     Miller subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate. The e-mail contained a link to LivingSocial's website that Miller used to download her gift certificate.

85.     The gift certificate indicated that it expired on July 27, 2011.

86.     Miller was unable to redeem the gift certificate prior to its expiration on July 27, 2011.

**Plaintiff Kimberly Pullman**

*Bare Back Grill*

87.     On September 24, 2010, Plaintiff Kimberly Pullman received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for food and beverages at Bare Back Grill in San Diego, California.

88.     The "Daily Deal" offer, as set forth on LivingSocial's website, required Pullman to pay $15.00 in exchange for $30.00 worth of food and beverages at Bare Back Grill.

89.     Pullman purchased a gift certificate for Bare Back Grill, making a payment of $15.00 to LivingSocial through its website.

90.     Pullman subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that Pullman used to download her gift certificate.

91.     The gift certificate indicated that it expired on March 27, 2011.

92.     Pullman was unable to redeem the gift certificate prior to its expiration on March 27, 2011.

**Plaintiff Dawn Abbott**

*Lao Shan Massage*

93.     On April 15, 2010, Plaintiff Dawn Abbott received a "Daily Deal" e-mail offer from LivingSocial for a 60-minute Chinese hot-stone massage and acupressure at Lao Shan Massage.

94.     The "Daily Deal" offer, as set forth from LivingSocial, required Abbott to pay $25 in exchange for a 60-minute Chinese hot-stone massage and acupressure at Lao Shan Massage.

95.     Abbott purchased a gift certificate for Lao Shan Massage, making a payment of $25 to LivingSocial through its website.

96.     Abbott subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that Abbott used to download her gift certificate.

97.     The gift certificate indicated that it expired on October 15, 2010.

98.     Abbott was unable to redeem the gift certificate prior to its expiration on October 15, 2010.

**Plaintiff Barrie Arliss**

*Bustle on Queen Anne*

99.     On September 19, 2010, Arliss received a "Daily Deal" e-mail offer from LivingSocial for $20 worth of food and drink at Bustle on Queen Anne.

100.    The "Daily Deal" offer, as set forth on LivingSocial's website, required Arliss to pay $10 in exchange for $20 worth of food and drink.

101.    Arliss purchased a gift certificate for Bustle on Queen Anne, making a payment of $10 to LivingSocial through its website.

102.    Arliss subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that Arliss used to download his gift certificate.

- 18 -

103.   The gift certificate indicated that it expired on September 20, 2011.

104.   Arliss was able to redeem the gift certificate prior to its expiration on September 20, 2011.

**Plaintiff Cara Lauer**

*Bustle on Queen Anne*

105.   On March 11, 2010, Lauer received a "Daily Deal" e-mail offer from LivingSocial for $100 worth of food and wine at Lark.

106.   The "Daily Deal" offer, as set forth on LivingSocial's website, required Lauer to pay $50 in exchange for $100 worth of food and drink.

107.   Lauer purchased a gift certificate for Lark, making a payment of $50 to LivingSocial through its website.

108.   Lauer subsequently received an e-mail from LivingSocial confirming her purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that Lauer used to download his gift certificate.

109.   The gift certificate indicated that it expired on March 12, 2011.

110.   Lauer was unable to redeem the gift certificate prior to its expiration on March 12, 2011.

**Plaintiff Amy Schultz**

*Minnetonka Orchards*

111.   On October 4, 2010, Plaintiff Amy Schultz received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for admission and lunch for two to Minnetonka Orchards in Minnetrista, Minnesota.

112.    The "Daily Deal" offer, as set forth on LivingSocial's website, required Schultz to

pay $11.00 in exchange for weekend admission for two, plus lunch and access to all attractions at

Minnetonka Orchards.

113.    Schultz purchased the gift certificate for Minnetonka Orchards, making a payment

of $11.00 to LivingSocial through its website.

114.    Schultz subsequently received an e-mail from LivingSocial confirming her

purchase of the gift certificate.  The e-mail contained a link to LivingSocial's website that

Schultz used to download her gift certificate.

115.    The gift certificate indicated that it expired on October 31, 2010.

116.    Schultz was unable to redeem the gift certificate prior to its expiration on

October 31, 2010.

### Other Proposed Class Members' Experiences

117.    Upon information and belief, many thousands of consumers have lost millions of

dollars because of the illegal expiration dates included on LivingSocial's gift certificates.

118.    Numerous blogs and other websites resound with complaints concerning

Defendants illegal and improper practices.  Typifying these complaints is the following excerpt

from a comment on the website of the *Star Tribune*:

> I paid $25 for $50 worth of merchandise from a store near my parents' house. I
> figured I'd have no trouble using the certificate before the expiration date printed
> on the voucher. It turns out I overestimated how many times to
> grandmother's house we'd go.

(available at http://www.startribune.com/business/yourmoney/119480274.html).  Like many

LivingSocial customers, this comment reflects the fact that many consumers are not able to use

the gift certificate before the improper and abbreviated expiration date passes. As a result, many

of these consumers received nothing.

## CLASS ACTION ALLEGATIONS

119.    Plaintiffs bring this nationwide class action lawsuit on behalf of themselves and

the following Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the

Federal Rules of Civil Procedure.

120.    Plaintiffs seek certification of the following Classes:

**The Federal CARD Act Class**:

> All persons in the United States who purchased or otherwise acquired a
> gift certificate (*i.e.*, "voucher") issued by LivingSocial, on or after
> August 22, 2010, with an expiration date of less than five years from the
> date of purchase.

**The State Gift Certificate Laws Class**:

> All persons in the United States who purchased or otherwise acquired a
> gift certificate (*i.e.*, "voucher") issued by LivingSocial with an expiration
> date that is earlier than the expiration period provided under applicable
> state gift certificate laws.

**Numerosity**

121.    The members of the Classes are so numerous that the individual joinder of all

members, in this or any action, is impracticable. The exact number or identification of members

of the Classes are presently unknown to Plaintiffs, but it is believed that the members of the

Classes number in the millions. The identity of members of the Classes is ascertainable.

Members of the Classes may be informed of the pendency of this class action by a combination

of direct mail and public notice, or other means, including through records possessed by

LivingSocial and its retail partners.

**Commonality**

122.    Common questions of fact and law exist as to all members of the Classes, which predominate over questions affecting only individual members of the Classes. These include, but are not limited to, the following:

a.    Whether LivingSocial and its retail partners, including Jack's Boathouse, promoted, sold or issued gift certificates with illegal or otherwise improper expiration dates;

b.    Whether the imposition of abbreviated expiration dates on LivingSocial's Daily Deal gift certificates violate federal and/or state laws;

c.    Whether LivingSocial or its retail partners, including Jack's Boathouse, engaged in conduct constituting deceptive  and unfair business and trade practices under applicable law;

d.    Whether Plaintiffs and members of the Classes are entitled to compensatory damages, including actual and statutory damages; and

e.    Whether Plaintiffs and members of the Classes are entitled to declaratory, injunctive and/or equitable relief.

**Typicality**

123.    Plaintiffs' claims are typical of the claims of the members of the Classes and all such claims arise out of the same wrongful course of conduct engaged in by LivingSocial and its retail partners, including Jack's Boathouse.

**Adequacy**

124.    Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the members of the Classes

they seek to represent.  Plaintiffs are represented by experienced and able counsel that have

litigated numerous class actions, and Plaintiffs' counsel intend to prosecute this action

vigorously for the benefit of all members of the Classes.  Plaintiffs and their counsel can fairly

and adequately protect the interests of the members of the Classes.

**Predominance and Superiority**

125.    The class action is the best available method for the efficient adjudication of this

litigation because individual litigation of these claims would be impracticable and individual

litigation would be unduly burdensome to the courts.  Further, individual litigation has the

potential to result in inconsistent or contradictory judgments.  A class action in this case presents

fewer management problems and provides the benefits of single-adjudication, economies of

scale, and comprehensive supervision by a single court.

**CAUSES OF ACTION**

**COUNT I**

**For Violations of the Credit Card Accountability Responsibility and Disclosure Act
and Electronic Fund Transfer Act, 15 U.S.C. §1693 *et seq.*,
(On Behalf of All Plaintiffs and All Members of the Classes Against All Defendants)**

126.    Plaintiffs repeat and reallege each and every allegation contained above as if set

forth herein.

127.    The CARD Act, which amends the EFTA, prohibits the sale or issuance of any

gift certificate that features or is subject to an expiration date, unless the expiration date is (i) five

years or more from the date on which the gift certificate was issued; and (ii) conspicuously stated

on the gift certificate.

128.    LivingSocial and its retail partners, including Jack's Boathouse, sold and issued and/or agreed to sell and issue LivingSocial "vouchers," which are "gift certificates" as defined by 15 U.S.C. §1693l-1(a)(2)(B), as such vouchers constitute electronic promises that are: (i) redeemable at a single merchant or an affiliated group of merchants; (ii) issued in a specified amount that may not be increased or reloaded; (iii) purchased on a prepaid basis in exchange for payment; and (iv) honored upon presentation by such single merchant or affiliated group of merchants for goods or services.

129.    At all times relevant, LivingSocial gift certificates were sold and issued to consumers through electronic fund transfer systems established, facilitated and monitored by LivingSocial.

130.    LivingSocial does not issue gift certificates exclusively in paper form. LivingSocial provides an email link to consumers to download and print such gift certificates. Consumers may also download LivingSocial gift certificates to their mobile phones through applications available on LivingSocial's website.

131.    LivingSocial gift certificates are marketed and sold to the general public and are not issued as part of any loyalty, award, or promotional program.

132.    LivingSocial and its retail partners, including Jack's Boathouse, violated the CARD Act and EFTA by selling and issuing and/or agreeing to sell and issue gift certificates with expiration dates less than five years from the dates of purchase, which is prohibited under §1693l-1(a)(2)(B) and §1693l-1(c)(1).

133.    As a direct and proximate result of Defendants' unlawful acts and conduct, Plaintiffs and members of the Classes were deprived of the use of their money that was charged,

collected and retained by Defendants through the sale of gift certificates with illegal expiration dates.

134.   Pursuant to 15 U.S.C. § 1693m, Plaintiffs, on behalf of themselves and the Classes, seek compensatory damages, including actual and statutory damages, injunctive and declaratory relief, as well as reasonable attorneys' fees and the cost of this action.

**COUNT II**

**For Violations of State Gift Certificate Statutes**
**(On Behalf of All Plaintiffs and All Members of the Classes**
**Against Defendant LivingSocial)**

135.   Plaintiffs repeat and reallege each and every allegation contained above as if set forth herein.

136.   LivingSocial's sale and issuance of LivingSocial gift certificates (*i.e.*, "vouchers"), as described herein, violate a host of state gift certificate laws, which proscribe the expiration periods used by Defendant.

137.   At least 27 states have enacted statutes to protect consumers from the sale and issuance of gift certificates with onerous expiration periods.  These statutes either impose a flat-out prohibition against the placement of *any* expiration date on gift certificates, or mandate a minimum expiration period ranging from 30 days to seven years.  LivingSocial sold and issued gift certificates with abbreviated expiration periods that are illegal and deceptive under the following statutes.

138.   Defendant violated Arkansas's gift certificate statute, Ark. Stat. Ann. §4-88-703(a) and (c), which prohibits the sale of gift certificates with expiration dates of less than two years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and

members of the Classes containing expiration dates that expire less than two years from the date of issuance.

139.    Defendant violated California's gift certificate statute, Cal. Civ. Code § 1749.5(a)(1), which prohibits the sale of gift certificates with any expiration dates, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates.

140.    Defendant violated Connecticut's gift certificate statute, Conn. Gen. Stat. Ann. § 42-460(a), which prohibits the sale of gift certificates with any expiration dates, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates.

141.    Defendant violated Florida's gift certificate statute, Fla. Stat. Ann. §501.95(2)(a), which prohibits the sale of gift certificates with any expiration dates, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates.

142.    Defendant violated Hawaii's gift certificate statute, Haw. Rev. Stat. §481B-13(b), which prohibits the sale of gift certificates with expiration dates of less than five years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than five years from the date of issuance.

143.    Defendant violated Illinois's gift certificate statute, 815 ILCS 505/2SS(b), which prohibits the sale of gift certificates with expiration dates of less than five years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than five years from the date of issuance.

144.    Defendant violated Kansas's gift certificate statute, Kan. Stat. Ann. §50-6,108(a), which prohibits the sale of gift certificates with expiration dates of less than five years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than five years from the date of issuance.

145.    Defendant violated Kentucky's gift certificate statute, Ky. Rev. Stat. §367.890(2), which prohibits the sale of gift certificates with expiration dates of less than one years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than one years from the date of issuance.

146.    Defendant violated Louisiana's gift certificate statute,  La. Rev. Stat. §51:1423(B)(1), which prohibits the sale of gift certificates with expiration dates of less than five years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than five years from the date of issuance.

147.    Defendant violated Maine's gift certificate statute, 33 Me. Rev. Stat. Ann. §1953(1)(G)(3), which prohibits the sale of gift certificates with any expiration dates, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates.

148.    Defendant violated Maryland's gift certificate statute, Md. Comm. Code Ann. §14-1319(b), which prohibits the sale of gift certificates with expiration dates of less than four years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than four years from the date of issuance.

149.     Defendant violated Massachusetts's gift certificate statute, Mass. Gen. Laws 200A §5D, which prohibits the sale of gift certificates with expiration dates of less than seven years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than seven years from the date of issuance.

150.     Defendant violated Michigan's gift certificate statute, Mich. Comp. Laws §445.903g, which prohibits the sale of gift certificates with expiration dates of less than five years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than five years from the date of issuance.

151.     Defendant violated Minnesota's gift certificate statute, Minn. Stat. Ann. §325G.53 Subd. 2, which prohibits the sale of gift certificates with any expiration dates, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates.

152.     Defendant violated Montana's gift certificate statute, Mont. Code Ann. §30-14-108, which prohibits the sale of gift certificates with any expiration dates, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates.

153.     Defendant violated New Hampshire's gift certificate statute, N.H. Rev. Stat. Ann. §358-A:2(XIII), which prohibits the sale of gift certificates having a face value of $100 or less with any expiration dates, and prohibits  the sale of gift certificates having a face value in excess of $100 with expiration dates of less than five years pursuant to N.H. Rev. Stat. Ann. §471-

C:2(1), by selling and issuing and/or agreeing to sell and issue gift certificates of $100 or less to

Plaintiffs and members of the Classes containing expiration dates, and gift certificates of over

$100 with expiration dates that expire less than five years from the date of issuance.

154.     Defendant violated New Jersey's gift certificate statute, N.J. Rev. Stat. §56:8-

110(a)(1)., which prohibits the sale of gift certificates with expiration dates of less than two

years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and

members of the Classes containing expiration dates that expire less than two years from the date

of issuance.

155.     Defendant violated New Mexico's gift certificate statute, N.M. Stat. Ann. 1978,

§57-12-26(B), which prohibits the sale of gift certificates with expiration dates of less than five

years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and

members of the Classes containing expiration dates that expire less than five years from the date

of issuance.

156.     Defendant violated North Dakota's gift certificate statute, N.D. Cent. Code §51-

29-02, which prohibits the sale of gift certificates with expiration dates of less than six years, by

selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of

the Classes containing expiration dates that expire less than six years from the date of issuance.

157.     Defendant violated Ohio's gift certificate statute, Ohio Rev. Code Ann.

§1349.61(A)(1), which prohibits the sale of gift certificates with expiration dates of less than two

years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and

members of the Classes containing expiration dates that expire less than two years from the date

of issuance.

158.    Defendant violated Oklahoma's gift certificate statute, Okla. Stat. tit. 15 §797(A)(1), which prohibits the sale of gift certificates with expiration dates of less than five years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than five years from the date of issuance.

159.    Defendant violated Oregon's gift certificate statute, Ore. Rev. Stat. §646A.278(3), which prohibits the sale of gift certificates with expiration dates of less than 30 days, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than 30 days from the date of issuance.

160.    Defendant violated Rhode Island's gift certificate statute, R.I. Gen. Laws 1956, §6-13-12, which prohibits the sale of gift certificates with any expiration dates, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates.

161.    Defendant violated South Carolina's gift certificate statute, S.C. Code Ann. §39-1-55(B), which prohibits the sale of gift certificates with expiration dates of less than one year, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than one year from the date of issuance.

162.    Defendant violated Tennessee's gift certificate statute, Tenn. Code Ann. §47-18-127(a), which prohibits the sale of gift certificates with expiration dates of less than two years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members

of the Classes containing expiration dates that expire less than two years from the date of issuance.

163.    Defendant violated Vermont's gift certificate statute, Vt. Stat. Ann. tit. 8, §2702, which prohibits the sale of gift certificates with expiration dates of less than three years, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates that expire less than three years from the date of issuance.

164.    Defendant violated Washington's gift certificate statute, Wash. Rev. Code 19.240.020(1)(a), which prohibits the sale of gift certificates with any expiration dates, by selling and issuing and/or agreeing to sell and issue gift certificates to Plaintiffs and members of the Classes containing expiration dates.

165.    As a direct and proximate result of LivingSocial's unlawful acts and conduct, Plaintiffs and members of the Classes were deprived of the use of their money that was charged and collected by LivingSocial through the sale of LivingSocial gift certificates with illegal expiration dates.  Plaintiffs, on behalf of themselves and the Classes, seek compensatory damages, including actual and statutory damages, injunctive and declaratory relief, as well as reasonable attorneys' fees and the cost of this action, as a result of LivingSocial's statutory violations.

## COUNT III

**Violations of District of Columbia Consumer Protection Act ("CPPA"),**
**D.C. Code Ann. § 28-3901 *et seq.***
**(On Behalf the All Plaintiffs and CARD Act Class Members Against All Defendants)**

166.    Plaintiffs repeat and reallege each and every allegation contained above as if set forth herein.

167.    The CPPA provides a just mechanism to remediate all improper trade practices and deter the continuing use of such practices, to promote fair business practices, and to seek proper redress of grievances. D.C. Code Ann. § 3901(b). The business and trade practices of Defendants, as alleged herein, constitute unfair and unlawful trade practices under D.C. Code Ann. § 28-3901(a)(6).

168.    It is a violation of the CPPA, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

> (a)    represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> *        *        *
>
> (d)    represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;
>
> (e)    misrepresent a material fact which has a tendency to mislead;
>
> (f)    fail to state a material fact if such failure tends to mislead;
>
> *        *        *
>
> (r)    make or enforce unconscionable terms or provisions of sales or leases.

D.C. Code Ann. § 28-3904.

169.    At all times relevant, Defendants are and have been "merchant[s]," as that term is defined in § 28-3901(a) (3) of the CPPA.

170.    At all times relevant, Plaintiffs and members of the Class contracted with Defendants for the purchase of consumer goods or services, in this case, LivingSocial gift certificates (*i.e.*, vouchers).

- 32 -

171.    At all times relevant, Plaintiffs and members of the Class are "person[s]" and "consumer[s]," as those terms are defined in § 28-3901(a)(1) and (2) of the CPPA.

172.    The conduct of Defendants, as alleged herein, constitutes deceptive and unfair methods of competition and/or trade practices, all impacting the public interest, in violation of D.C. Code Ann. § 28-3904. Defendants, by marketing, promoting and selling LivingSocial gift certificates through "Daily Deal" website offers, direct emails, social networks and other promotional channels, misrepresented that such gift certificates have characteristics and benefits that they do not in fact have, and that the gift certificates are of a particular standard or quality, when in fact they are of another. Indeed, Defendants' ongoing sale and issuance of gift certificates with illegal and deceptive expiration dates amount to misrepresentations of material facts that tend to mislead. Defendants' acts and practices fail to represent that the transaction involving LivingSocial gift certificates confers or involves obligations that are prohibited by law, particularly the imposition of illegal expiration dates and other onerous sales terms.

173.    Defendants' act and practice of disseminating and/or agreeing to disseminate, through LivingSocial's website and other promotional channels, misleading and partial statements about LivingSocial gift certificates, has a tendency to mislead the public. Defendants' practice of omitting material information about the legality of LivingSocial gift certificates also has a tendency to mislead the public.

174.    LivingSocial, with the approval and agreement of its retail business partners, including Jack's Boathouse, imposed other unfair and unconscionable conditions on gift certificates, including forcing consumers to redeem the gift certificates in the course of a single transaction and not providing for the exchange of any unused portion of the gift certificates for cash value.

- 33 -

175.    As a direct and proximate result of such wrongful activity, Plaintiffs and Class members have suffered and will continue to suffer substantial damages, and Defendants have been and will be unjustly enriched by their wrongful conduct.

176.    The harm to Plaintiffs and to each member of the Class emanated from the District of Columbia, where LivingSocial has its principal place of business.   Each of the consumer transactions alleged herein emanated from and has a nexus with the District of Columbia, and the laws of the District of Columbia has the most significant relationship to the transactions between LivingSocial and Plaintiffs and members of the Class.   Thus, the CPPA applies to the claims of every Class member, regardless of their location.

177.    Pursuant to § 28-3905 of the CPPA, a "person," whether acting for the interest of itself, its members, or the general public, may bring an action for relief from unlawful trade practice and may seek treble damages, or $1,500 per violation, whichever is greater, reasonable attorneys' fees, punitive damages, an injunction against the use of the unlawful trade practices, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practices, or any other relief which the court deems proper.   D.C. Code Ann. § 28-3905(k)(1)

178.    Under Section 28-3905(k)(1) of the CPPA, Plaintiffs and Class Members are entitled to the greater of treble damages or $1,500 per violation, punitive damages, disgorgement of profits, recovery of reasonable attorneys' fees, and injunctive relief.

## COUNT IV

### Breach of Contract
### (On Behalf of All Plaintiffs and Members of the Classes Against All Defendants)

179.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

180.    Plaintiffs and members of the Classes entered into contracts with Defendants for the purchase of LivingSocial gift certificates.

181.    Upon information and belief, at no time prior to or after purchase did Defendants require Plaintiffs or members of the Classes to "click" to signify their assent to an expiration date, illegal or otherwise.

182.    The clause of the contract purporting to set out an "expiration date" is void as a matter of public policy and is unenforceable.

183.    Defendants have failed to honor the contracts they entered into with Plaintiffs and members of the Classes by refusing to honor the contract after a certain date.

184.    Defendant LivingSocial states on its website that after a LivingSocial gift certificate expires it loses its promotional value.

185.    Defendants further breached their duty of good faith and fair dealing by intentionally adding expiration dates they knew or reasonably should have known were in violation of federal and state laws, as well as the laws of the District of Columbia.

186.    Plaintiffs and the members of the Classes have complied with their obligations under their contracts with Defendants.

187.    Defendants' contractual breaches have caused Plaintiffs and members of the Classes economic and other damages.

## COUNT V

### Quasi-Contract/Restitution/Unjust Enrichment
### (On Behalf of All Plaintiffs and Members of the Classes Against All Defendants)

188.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

189.     Defendants have been unjustly enriched at the expense of Plaintiffs and the Classes by their wrongful acts and omissions as described herein, including, but not limited to, knowingly and/or recklessly selling and issuing and/or agreeing to sell and issue LivingSocial gift certificates that feature and are subject to expiration dates that are prohibited under both federal and state laws; disseminating and/or agreeing to disseminate, through LivingSocial's website and other promotional channels, misleading and partial statements about LivingSocial gift certificates that have a tendency to mislead the public; forcing consumers to redeem the gift certificates in the course of a single transaction; not providing for the exchange of any unused portion of the gift certificates for their cash value; and unfairly limiting consumers from using more than one LivingSocial gift certificates during each visit to the business offering the particular product or service.

190.     Defendants profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiffs and members of the Classes, under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit. Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits of this unjust enrichment.

191.     Plaintiffs and members of the Classes were deprived of the use of their money that was charged and collected by Defendants through the sale of LivingSocial gift certificates with expiration dates.

192.     Plaintiffs and members of the Classes do not have an adequate remedy at law against Defendants.

- 36 -

193.    Plaintiffs and the members of the Classes seek disgorgement of all profits resulting from such overpayment and the establishment of a constructive trust from which Plaintiffs and the members of the Classes may seek restitution.

## COUNT VI

### Declaratory and Injunctive Relief
### (On Behalf of All Plaintiffs and Members of the Classes Against All Defendants)

194.    Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

195.    By this cause of action, Plaintiffs and members of the Classes seek declaratory and injunctive relief against Defendants.

196.    Plaintiffs and members of the Classes are entitled to declaratory relief establishing that Defendants' conduct violates the CARD Act, applicable state gift certificate laws, and that Defendants are engaging in unfair and deceptive practices.

197.    Plaintiffs and members of the Classes are entitled to a declaration that the expiration dates in the LivingSocial gift certificates are illegal and unenforceable.  Defendants should be enjoined from enforcing the expiration dates set forth in the LivingSocial gift certificates.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for judgment and relief against Defendants as follows:

A.    For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein and appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

B.      For an order enjoining Defendants from continuing to sell and issue LivingSocial gift certificates with illegal and/or deceptive expiration dates;

C.      For an order requiring Defendants to fund a corrective advertising campaign in order to remedy their wrongful and illegal conduct;

D.      For an order awarding restitution of the monies Defendants wrongfully acquired by their wrongful and illegal conduct;

E.      For an order requiring disgorgement of monies wrongfully obtained as a result of Defendants' wrongful and illegal conduct;

F.      For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful and illegal conduct;

G.      For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

H.      For pre-judgment and post-judgment interest at the legal rate; and

I.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  November 4, 2011                CUNEO GILBERT & LADUCA, LLP
                                        CHARLES J. LADUCA (DC Bar 476134)
                                        WILLIAM H. ANDERSON (DC Bar 502380)


                                        _____
                                                CHARLES J. LADUCA

                                        507 C Street, NE
                                        Washington, DC  20002
                                        Telephone: 202-789-3960
                                        Facsimile:  202-789-1813

- 38 -

DATED:  November 4, 2011

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR.
RACHEL L. JENSEN
THOMAS R. MERRICK
PHONG L. TRAN

_John Stoia / CJL_

JOHN J. STOIA, JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
Facsimile:  619/231-7423

WITES & KAPETAN PA
MARC A. WITES
JONATHAN STEPHEN BURNS
4400 N Federal Highway
Lighthouse Point, FL 33064
Telephone:  954-570-8183
Facsimile:  954-354-0205

CARNEY GILLESPIE ISITT PLLP
CHRISTOPHER ROBERT CARNEY
100 W. Harrison Street
Suite N440
Seattle, WA 98119
Telephone:  206-445-0220

MYLES A. SCHNEIDER & ASSOCIATES,
LTD.
MYLES A. SCHNEIDER
710 Dodge Avenue, NW
Suite A
Elk River, MN 55330
Telephone:  763-315-1100
Facsimile:  877-294-4254

BONNETT FAIRBOURN FRIEDMAN &
  BALINT
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2901 North Central Avenue
Suite 1000
Phoenix, AZ 85012
Telephone:  602-274-1100
Facsimile:  602-798-5825

AUDET & PARTNERS, LLP
MICHAEL A. MCSHANE
221 Main Street, Suite 1460
San Francisco, CA 94105
(415) 568-2555
(415) 576-1776 (fax)

HALUNEN & ASSOCIATES
CLAYTON D. HALUNEN
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 605-4098
(612) 605-4099 (fax)

BOLEN ROBINSON & ELLIS, LLP
CHRISTOPHER M. ELLIS
202 S. Franklin, 2nd Floor
Decatur, IL  62523
(217) 429-4296
(217) 329-0034 (fax)

LEVIN, FISHBEIN, SEDRAN & BERMAN
CHARLES E. SCHAFFER
510 Walnut Street – Suite 500
Philadelphia, PA 19106-3697
(215) 592-1500
(215) 592-4663 (fax)

Attorneys for Plaintiff