UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE LIVINGSOCIAL MARKETING AND SALES PRACTICE LITIGATION<br><br>This Document Relates To:<br>ALL CASES | Misc. Action No. 11-0472 (ESH)<br>MDL Docket No. 2254<br><br>ORAL HEARING REQUESTED |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS AND STRIKE PORTIONS OF PLAINTIFFS'
CONSOLIDATED CLASS ACTION COMPLAINT**

TABLE OF CONTENTS

PAGE

I. INTRODUCTION .................................................................................................................. 1

II. PLAINTIFFS' OPPOSITION DOES NOT REMEDY ANY OF THE PLEADING DEFICIENCIES IDENTIFIED BY DEFENDANTS' MOTION ................ 2

    A. Plaintiffs Have Not Alleged Concrete, Redressable Injury Sufficient to Establish Article III Standing ................................................................................... 2

        1. Article III's Standing Requirement Cannot Be Eliminated by Statute ............................................................................................................ 3

        2. Plaintiffs' Allegations of Statutory Violations Do Not Excuse Their Failure to Plead an Injury In Fact ................................................... 5

    B. Plaintiffs Fail to Identify Any Out-of Pocket Expenses that Could Support Their Recovery of Actual Damages .......................................................... 7

    C. The Opposition Demonstrates Why Plaintiffs Should Be Required to Provide a More Definite Statement Regarding Their Contract and Restitution Claims ................................................................................................... 8

    D. Plaintiffs' Proposed Class Definitions Are Hopelessly Overbroad as a Matter of Law, and Should Be Disposed of at the Pleading Stage ..................... 10

        1. Striking certain aspects of Plaintiffs' class definitions would not be premature ........................................................................................ 11

        2. The numerous conflicts in state laws presented by the Complaint are issues of law that should be addressed at the pleadings stage ........... 11

        3. Plaintiffs will always lack standing to assert violations of the laws in states in which they do not reside ....................................................... 13

        4. Class members who fully redeemed their vouchers are barred as a matter of law from recovering for breach of contract or unjust enrichment ................................................................................................. 13

    E. Plaintiffs Cannot State a Claim Under the CARD Act or CCPA For Alleged Violations Occurring Before the CARD Act's Effective Date .............. 14

III. CONCLUSION ................................................................................................................... 16

I. INTRODUCTION

In their Motion to Dismiss and Strike Portions of Plaintiffs' Consolidated Class Action Complaint ("Motion") (Dkt. 12) and supporting Memorandum of Points and Authorities ("MPA," Dkt. 12), Defendants identified a series of questions left unanswered by Plaintiffs' Consolidated Amended Class Action Complaint ("Compl.," Dkt. 10). The answers to these questions determine, among other things, whether Plaintiffs have standing to assert any of their claims, whether they can recover compensatory damages for any claim, and whether the putative classes, as defined, are capable of meeting the requirements of Rule 23.

The response in Plaintiffs' Opposition ("Opp.," Dkt. 16) amounts to nearly 30 pages of "don't worry about it . . . yet." Relying on rhetoric over substance, Plaintiffs sidestep or obfuscate the factual deficiencies in their Complaint—particularly the failure to allege that Plaintiffs have suffered economic harm at all, much less harm *caused* by the purported "expiration date" on LivingSocial's vouchers. Plaintiffs insist that their "inability" to redeem their vouchers before the supposed expiration date is enough to survive the pleadings stage, but this simply begs the questions presented in Defendants' Motion: *why* were they "unable" to do so, and did they even try? If, as Plaintiffs implicitly concede, the answers have nothing to do with expiration dates or other terms and conditions, the Complaint fails to state a claim for breach of contract or unjust enrichment. For the same reasons, Plaintiffs cannot recover compensatory damages for any of their claims.

Plaintiffs' legal analysis is a similar exercise in misdirection. To excuse their failure to allege any economic loss, Plaintiffs repeatedly cite their supposed entitlement to civil penalties under the CARD Act based on nothing more than alleged statutory violations. Even assuming *arguendo* that Article III standing can be conferred by violations of the federal and state statutes at issue, those violations cannot serve as a surrogate for actual damages. If Plaintiffs seek

nothing more than statutory damages, their claims and class definitions should be conformed to that theory.  As pleaded, however, the Complaint cannot state any claim for actual damages.

Plaintiffs' response to the inevitable and unsolvable complexities presented by the Complaint's class definitions—the same concerns expressed by the Court during the Scheduling Conference—is equally dismissive.  Indeed, Plaintiffs concede that the putative classes are an amalgam of purchasers who redeemed their vouchers and those who did not, with claims arising under the broadly and materially varying regulatory regimes of 27 different states.  Resting on a breezy "no harm, no foul" argument, Plaintiffs ask for a free pass to conduct more than nine months of discovery into classes that cannot possibly satisfy Rule 23.  Perhaps recognizing that no amount of delay or discovery will show these classes to be certifiable, Plaintiffs modestly assure the Court that they "are free to seek . . . [certification of] a narrower class" in late 2012.  Plaintiffs are wrong that courts "routinely" defer consideration of the issues of law presented in Defendants' motion to the certification stage, and the Court should not do so here.

For these reasons, Defendants respectfully request that the Court grant their Motion and order that the Complaint be dismissed entirely or in part, and that certain claims be struck or stated more definitely.  (*See* MPA at 23, Appendix (specifying requested relief).)

## II. PLAINTIFFS' OPPOSITION DOES NOT REMEDY ANY OF THE PLEADING DEFICIENCIES IDENTIFIED BY DEFENDANTS' MOTION.

**A.    Plaintiffs Have Not Alleged Concrete, Redressable Injury Sufficient to Establish Article III Standing.**

At the outset, Plaintiffs do not and cannot dispute that Article III requires an injury in fact.  *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990).  The Opposition brushes past this requirement by asserting standing for all Plaintiffs and all class members as to all claims based on allegations of statutory violations alone.  (Opp. at 10–12.)  As a fallback position, Plaintiffs assert that some of them have suffered economic losses by virtue of their unspecified inability to redeem their

vouchers before an alleged expiration date. (Opp. at 13–16.) Neither of these arguments suffices to show that the Complaint satisfies the Article III standing requirements.

### 1. Article III's Standing Requirement Cannot Be Eliminated by Statute.

As explained in one of the primary cases cited by Plaintiffs, legislatures "may grant an express right of action to persons who otherwise would be barred by *prudential* standing rules [, but] . . . Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself. . . . ." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (emphasis added).[1]  Plaintiffs do not dispute this, but attempt an end-run around Article III standing by citing cases that do not involve factual allegations as sparse as those in the Complaint.

First, Plaintiffs cite the factually inapposite opinion in *Shaw v. Marriott International, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010). (Opp. at 10.) In *Shaw*, the court primarily addressed two issues that have no relevance to this case: whether a think-tank had demonstrated standing by showing that Marriott had sufficient control over its hotel franchisees that allegedly imposed improper charges, and whether the think-tank employees were "consumers" under the CCPA. 605 F.3d at 1042–44. The court did *not* address the question presented by Defendants' Motion: whether the bare allegation of a statutory violation—absent sufficient indications of actual injury—suffice to confer Article III standing. As such, *Shaw* provides no guidance in this case.

Plaintiffs' reliance on the Southern District of Mississippi's order in *In re Regions Bank ATM Fee Notice Litigation* is equally misplaced. In *Regions Bank*, the plaintiff established Article III standing by alleging that he had not received notice of ATM fees as required by the Electronic Fund Transfer Act ("EFTA"). No. 2:11-MD-2202-KS-MTP, 2011 WL 4036691,

---

[1] Prudential standing rules are "judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U. S. 737, 751 (1984).

at *3 (S.D. Miss. Sept. 12, 2011). Notably, the court allowed the recovery of statutory damages under the EFTA (a "remedial" rather than penal statute) to "compensat[e] the consumer for *actual damages* which are *difficult to ascertain*." *Id.* at *3 & n.4 (emphasis added).

Plaintiffs' reliance on *Regions Bank* presumes that the Complaint sufficiently alleges any "actual damages" to be compensated. It does not. Most glaringly, plaintiff Arliss admits he "was able to use and redeem his LivingSocial [voucher] before the posted expiration date." (Opp. at 4 n.1.) Arliss, and any other plaintiff or class member who is aggrieved only by an alleged statutory violation, certainly has not incurred "actual damages which are difficult to ascertain." *Regions Bank*, 2011 WL 4036691, at *3.

Further, to the extent *Regions Bank* can be read as holding that alleging a statutory violation is sufficient to establish standing under the EFTA, the case runs afoul of the principle that "injury in fact is a hard floor of Article III jurisdiction that *cannot be removed by statute*." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (emphasis added); *accord Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).[2]

Finally, Plaintiffs' allegations of state-law violations are no more availing than their arguments under federal law. If the United States Congress cannot eliminate Article III's standing requirement by statute, neither can state legislatures. *See, e.g.*, *Lee v. Chase Manhattan Bank*, No. C07-04732 MJJ, 2008 WL 698482, at *5 (N.D. Cal. Mar. 14, 2008) ("[T]he mere allegation of a violation of a California statutory right, without more, does not confer Article III

---

[2] Such a conclusion is further drawn into question by the Supreme Court's grant of certiorari in *Edwards v. First American Financial Corp*. As noted in Defendants' MPA, the question presented in *Edwards* is whether "a private purchaser of real estate settlement services . . . in the absence of any claim that the alleged violation affected the price, quality, or other characteristics of the settlement services provided" has Article III standing. (MPA at 13 n.8 (citing 131 S. Ct. 3022 (2011).) Although the Court's opinion in *Edwards* is still forthcoming, it is worth noting that the appellate opinion under review conflicts with rulings of other courts. *See, e.g.*, *Williams v. First Am. Title Ins. Co.*, No. Civ.A. 2:02CV194-B-B, 2005 WL 2219460, at *3 (N.D .Miss. Sept. 13, 2005).

standing. A plaintiff invoking federal jurisdiction must also allege some actual or imminent injury resulting from the violation . . . ."); *Grayson v. AT&T Corp.*, 15 A.3d 219, 224, 243 (D.C. 2011) (holding that 2000 amendments to CPPA "did not disturb or override [the] constitutional standing requirement"; contrary ruling "would open our courts to any person from anywhere who decides to lodge a complaint labeled as a 'representative action' under the CPPA, even though that person has suffered no injury-in-fact").

### 2.  Plaintiffs' Allegations of Statutory Violations Do Not Excuse Their Failure to Plead an Injury In Fact.

In addition to Plaintiffs' argument that have "standing conferred by statute" to seek civil penalties, Plaintiffs assert standing "because they allege economic losses suffered as a result of defendants' misconduct." (Opp. at 13.) This rests on the Complaint's bare allegation that Plaintiffs were "unable" to redeem their vouchers before the purported expiration date, which is entirely insufficient to establish standing.

Plaintiffs start by waiving off the simple questions posed by Defendants' Motion as unnecessary to the Article III analysis. At the risk of repetition, those questions go to the heart of Plaintiffs' alleged entitlement to compensatory damages, *e.g.*, (1) *why* Plaintiffs were allegedly unable to redeem their vouchers, (2) whether purported expiration dates or other terms *caused* Plaintiffs' failure to redeem, and (3) whether Plaintiffs *attempted* to redeem and were denied by merchants due to an expiration date. (*See* MPA at 11.) Answering these questions does not require "exhaustively" detailed pleadings (Opp. at 13), and Plaintiffs' refusal to answer in any manner is dispositive of their lack of standing.

In light of Plaintiffs' self-imposed silence, it is worth noting what is no longer disputed. For example, Plaintiffs do not contest that they could redeem their LivingSocial vouchers with the relevant merchant even today. (MPA at 11–12.) Nor do Plaintiffs dispute that they could

recoup the value (or have already) of their voucher by obtaining a refund from LivingSocial. (*Id.*) Further, Plaintiffs do not assert that they ever tried to redeem and were unsuccessful for any reason—or that their vouchers are less valuable due to the complained-of conditions. (*Id.*)

Instead, Plaintiffs insist that the Complaint establishes economic loss based solely on the conclusory allegations that Plaintiffs were "unable" to use their vouchers before the alleged expiration dates. (Opp. at 13.) Plaintiffs further argue that "what the plaintiffs did or did not do with their gift certificates after purchase involves a merits-based inquiry that goes to the mitigation of damages." (*Id.* at 14.) Plaintiffs are wrong on both fronts.

First, Plaintiffs have not alleged facts showing that the compensatory damages they seek would redress actual economic losses. Indeed, under Plaintiffs' theory a purchaser who still holds a $15 voucher would nonetheless be entitled to $15 in actual damages. This is absurd. If the relevant merchant would currently honor the $15 voucher—despite any stated period of expiry—an award of compensatory damages would result in a windfall gain. Because Plaintiffs decline to state whether they attempted to redeem their vouchers and were refused, their alleged economic harm is simply an alleged breach of a legal obligation—not injury in fact.

Second, Plaintiffs' mitigation argument is a red herring that assumes sufficient allegations of actual damages in the first place. Defendants' Motion questions the *existence* of damages, not mitigation. This distinction is best demonstrated by the cases cited in the Opposition, each of which involved plaintiffs who had, in fact, suffered cognizable loss.[3]

---

[3] *See PJM Interconnection LLC v. Gorton*, No. 08-216-JJF, 2009 WL 840548, at *1–2 (D. Del. Mar. 30, 2009) (rejecting argument that plaintiff had not been harmed due to contractual right to obtain payment to cover its losses; contract did not *mandate* that plaintiff invoke this provision); *Dandino v. Tieri*, 878 F. Supp. 129, 130–31 (N.D. Ill. 1994) (holding that plaintiff in § 1983 employment claim adequately pleaded causation and damages because, notwithstanding that plaintiff rejected defendant's reinstatement offer, "[t]he record is not clear when [plaintiff] became aware of the offer, and whether the offer afforded [plaintiff] 'make-whole' relief which would include back-pay"). Here, in contrast, Plaintiffs do not dispute that they could be made whole by simply seeking to redeem their vouchers.

Without having attempted to redeem their vouchers—or without alleging any diminution in value of their vouchers caused by the complained-of conditions—Plaintiffs simply cannot show that they were injured by any purported conditions of redemption. *See Alfi v. Nordstrom, Inc.*, No. 09-cv-1249-BEN, 2010 WL 5093434, at *5 (S.D. Cal. Dec. 8, 2010); *Shelton v. Restaurant.com Inc.*, No. 10-0824-JAP, 2010 WL 2384923, at *3–4 (D.N.J. June 15, 2010).[4]

**B.    Plaintiffs Fail to Identify Any Out-of Pocket Expenses that Could Support Their Recovery of Actual Damages.**

In response to Defendants' request that the Court dismiss Plaintiffs' claims for breach of contract and unjust enrichment (Counts IV and V), and strike their prayer for compensatory damages (Compl., Prayer for Relief, ¶¶ D–F, at p. 38) Plaintiffs resort to three equally meritless arguments: (1) it is inappropriate to address the insufficiency of damages claims at the pleading stage; (2) the prayer for compensatory damages is justified by their alleged entitlement to statutory damages under the CARD Act; and (3) the Complaint adequately alleges economic harm.  (Opp. at 16–17, 19–22.)

Plaintiffs' first argument is easily disposed of.  Courts routinely dismiss causes of action at the pleading stage that fail to contain allegations sufficient to support an essential element—indeed, that is the purpose of Rule 12(b)(6).  *See, e.g.*, *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627–28 (8th Cir. 1999) (affirming dismissal of breach of contract claim where plaintiffs failed to plead damages).  And Plaintiffs are simply wrong that courts do not strike damage allegations at the pleadings stage. *See Haug v. Petsmart, Inc.*, No. 2:10-cv-00990-MCE-KJM, 2010 WL 2925069, at *2 (E.D. Cal. July 23, 2010) (striking certain damage allegations); *Hemphill v. Celanese Corp.*, No. 3:08-cv-2131-B, 2009 WL 2949759, at *5 (N.D. Tex. Sept. 14,

---

[4] Plaintiffs' attempt to distinguish *Alfi* and *Shelton* (Opp. at 15–16) again conflates standing conferred by statute and standing to recover compensatory damages.  As discussed in Section II.A, *supra*, the former is irrelevant to the latter and is insufficient to establish an injury in fact.

7.

2009) (same).  As such, and given the absence of factual detail in the Complaint, now is the time to address the insufficiency of Plaintiffs' damages allegations.

Plaintiffs' second argument overlooks the Complaint's separate prayers for statutory and actual damages.  (Compl., Prayer for Relief, ¶ F at p. 38.)  Despite their attempt to blur this distinction in their Opposition (*e.g.*, Opp. at 16), Plaintiffs' reliance on their purported ability to obtain statutory damages cannot support their prayer for compensatory damages.

Finally, as discussed above, Plaintiffs have not adequately alleged that they have suffered any redressable harm.  (*See* Section II.A.2, *supra*.)  It is therefore entirely appropriate to dismiss Plaintiffs' breach of contract and unjust enrichment (Counts IV and V), and strike their prayer for compensatory damages (Compl., Prayer for Relief, ¶¶ D–F, at p. 38).

C.  **The Opposition Demonstrates Why Plaintiffs Should Be Required to Provide a More Definite Statement Regarding Their Contract and Restitution Claims.**

Plaintiffs respond to Defendants' request for a more definite statement regarding the breach of contract claim by *adding* to the ambiguity and confusion that plagues the Complaint.  For instance, Plaintiffs argue circularly that "LivingSocial breached the agreement . . . by providing [vouchers] that contained unlawful and deceptive expiration dates." (Opp. at 20).  Yet the Complaint states that "[t]he clause *of the contract* purporting to set out an 'expiration date' is void as a matter of public policy and is unenforceable."  (Compl. ¶ 182 (emphasis added).)  By arguing that the expiration date is both a term in the contract *and* the cause of breach, Plaintiffs are suggesting that the contract somehow breached itself.  This is illogical, to say the least.  The breach element of Plaintiffs' contract claim cannot be satisfied by the mere existence of an objectionable provision in the contract—a provision that Plaintiffs knew of and agreed to before

purchasing their vouchers.[5]  *See EDM & Assocs., Inc. v. GEM Cellular*, 597 A.2d 384, 389 (D.C. 1991) (illegal contract term can be severed, but does not itself cause breach of contract).

These ambiguities are particularly pronounced with respect to plaintiffs such as Forshey, who purchased her voucher before the CARD Act's effective date.  If the expiration term was not yet unlawful (without conceding that it is now), and was undeniably disclosed to plaintiff prior to her purchase (*e.g.*, Compl. ¶ 184), the alleged contractual "breach" remains a mystery.

Plaintiffs' attempt to rehabilitate their allegations regarding causation and damage results in even further confusion.  By asserting that these elements are satisfied because "most of the plaintiffs were unable to use the [deal vouchers] and obtain the product or service they paid for before the expiration date," (Opp. at 20), Plaintiffs merely repeat the substance-free allegations in the Complaint.  If the expiration date is alleged to be unenforceable, it would drop out of the contract.  (Compl. ¶ 182); *see also EDM*, 597 A.2d at 389.  Plaintiffs thus could demonstrate causation and damages only if they *tried* to redeem their vouchers and were *refused*.  The Complaint alleges no such facts, and Plaintiffs disclaim any intent to provide that information.  For these reasons alone, Plaintiffs should be required to plead the requisite elements of their contract claim with more specificity.  *See Bennett v. Beiersdorf, Inc.*, 889 F. Supp. 46, 52 (D. Conn. 1995) (granting 12(e) motion because "the nature of the supposed contract . . . is completely unclear."); *Reed v. Fawick Airflex Co.*, 86 F. Supp. 822, 824 (N.D. Ohio 1949) (ordering plaintiff to allege "what sections of the contract have been breached" because "it is impossible to determine what the plaintiff is charging constituted breaches of the contract").

---

[5] Plaintiffs voluntarily agreed to all terms and conditions governing their purchase and use of LivingSocial vouchers, as acknowledged in their original complaints.  (*See* Compl. ¶ 184 ("Defendant LivingSocial states on its website that after a LivingSocial [deal voucher] expires it loses its promotional value."); D.D.C. Case No. 11-cv-01533-ESH, Dkt. No. 1 (Pullman Compl.), ¶¶ 33 ("'The Fine Print' section of the 'Daily Deal' offer stated that the [LivingSocial voucher]'s 'Promotional value expires on March 27, 2011.'"); D.D.C. Case No. 11-cv-01532-ESH, Dkt. No. 1 (Gosling Compl.), ¶¶ 34, 40, 46, 52, 58; D.D.C. Case No. 11-cv-01697-ESH, Dkt. No. 1 (Schulz Compl.), ¶¶ 33–34.)

Plaintiffs' unjust-enrichment claim suffers from the same flaws. The Opposition asserts that Defendants "reaped a substantial, undeserved windfall because they kept the money that plaintiffs and many other consumers paid, even though the products and services that were offered went unclaimed." (Opp. at 21.) In direct conflict with this statement, Plaintiffs assert a claim for unjust enrichment on behalf of persons such as plaintiff Arliss—who "was able to use and redeem" his LivingSocial deal voucher. (*Id.* at 4 n.1; *see also* Compl. ¶ 120 (class definition applicable to unjust enrichment claim including persons who redeemed their vouchers). Equally inconsistent is Plaintiffs' admission that "consumer[s] would be able to recoup the amount they paid for the voucher *notwithstanding applicable expiration dates*." (Opp. at 26 (emphasis added.) This kind of doublespeak underscores the need for a more definite statement regarding Plaintiffs' unjust enrichment claim.[6]

### D.  Plaintiffs' Proposed Class Definitions Are Hopelessly Overbroad as a Matter of Law, and Should Be Disposed of at the Pleading Stage.

Defendants moved to strike Plaintiffs' proposed class definitions on three grounds: (1) the class definition for breach of contract and unjust enrichment should be struck as overbroad because it includes persons who were not harmed; (2) Plaintiffs lack standing to represent class members from states in which they do not reside; and (3) Plaintiffs' state-law subclass should be struck because the variances in state gift-certificate laws preclude certification under Rule 23. (MPA at 14–15, 16–20.) Plaintiffs' respond by requesting a special dispensation to engage in months of fruitless discovery (*see* Opp. at 17), but the Court need not defer adjudication of *issues of law* that can and should be addressed at the pleading stage.

---

[6] As with the breach-of-contract claim, the ambiguity of the unjust-enrichment claim is particularly pronounced with respect to plaintiffs (such as Forshey) who purchased their deal vouchers before the CARD Act's effective date. If the expiration date term was not unlawful, and was disclosed prior to purchase (*e.g.*, Compl. ¶ 184), it is unclear how Defendants were unjustly enriched.

10.

1.   **Striking certain aspects of Plaintiffs' class definitions would not be premature.**

Plaintiffs start with a misleading attempt to portray the weight of authority, citing several cases to support their argument that "motions to strike class allegations are . . . disfavored at the pleading stage because class issues should be resolved at the class certification stage after discovery has been conducted." (Opp. at 17, 22–25.)  None of these cases involved a class for which discovery was incapable of improving the prospects of certification.  Nor do the cited cases prohibit a court from striking class allegations from a complaint.  Quite the contrary:

> The Federal Rules provide a mechanism for exercising defective class allegations *before discovery*.  Pursuant to Rule 23(c), "the court must—at an early practicable time—determine by order whether to certify the action as a class action." . . . . [T]he Supreme Court has noted that "*[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiffs claim.*" *General Telephone Co. of Southwest v. Falcon*, [457 U.S. 147, 160 (1982)].  This Court may strike "impertinent" matters from the pleadings "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  In this instance, this Court concludes that the motion is not premature.

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009) (emphasis added). Whatever collateral benefits Plaintiffs seek in proceeding to a lengthy and unfettered discovery phase, it is clear that the effect will *not* be to aid their class-certification efforts.

2.   **The numerous conflicts in state laws presented by the Complaint are issues of law that should be addressed at the pleadings stage.**

Plaintiffs make no attempt to explain how the state laws identified in Count II are uniform, nor to address the Court's questions regarding how such a class could be certified. (*See* Status Conf. Tr. at 7 ("Minnesota, Florida, California . . . are going to [have to] drop out because, otherwise, I don't understand how the class works."); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) (noting that, "[i]f more than a few of the laws of the fifty states

11.

differ, the district judge would face an impossible task of instructing a jury on the relevant law"), *abrogated on other grounds*. This failing alone merits an order striking Count II.

Moreover, and despite Plaintiffs' mantra that any scrutiny of their class definitions should be deferred (Opp. at 17 & 24), they make no attempt to explain how the passage of time will cure the deficiencies of their state-law subclass. Analyzed now or analyzed later, the states' gift-certificate laws indentified in Count II vary in numerous and material respects—*e.g.*, (1) whether the statute allows for a private right of action; (2) the elements needed to state a claim; (3) the definition of "gift certificate" or "gift card"; (4) exclusions from the laws' coverage; (5) obligations and prohibitions imposed on issuers of gift certificates and cards; (6) defenses to liability; and (7) available relief. (*See* MPA at 16–20.) The unsustainable complexity of these issues is "plain enough from the pleadings to determine" that the interests of absent parties are not encompassed within Plaintiffs' claim. *See Falcon*, 457 U.S. at 160.

As the Sixth Circuit aptly stated last month, when it affirmed a district court's order striking class allegations at the pleading stage due to variations in state laws:

> The problem for the plaintiffs is that *we cannot see how discovery or for that matter more time would have helped them*. To this day, they do not explain what type of discovery or what type of factual development would alter the central defect in this class claim. The key reality remains: Their claims are governed by *different States' laws*, a largely *legal determination*, and *no proffered or potential factual development offers any hope of altering that conclusion*, one that generally *will preclude class certification*.

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (emphasis added); *accord Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2008 WL 4542967, at *7–8 (N.D. Cal. Oct. 1, 2008) (striking class claims because "[d]iffering state laws would make

12.

adjudication of class claims difficult"). For the same reasons, Plaintiffs' state-law subclass definition should be struck from the Complaint.[7]

### 3. Plaintiffs will always lack standing to assert violations of the laws in states in which they do not reside.

Among other omissions, the Opposition fails to explain how Plaintiffs could ever establish standing to pursue claims in states in which they do not reside and were not injured, and which have laws that are dissimilar to those in Plaintiffs' home states. (*See* MPA at 17.) Plaintiffs miss the point by arguing that persons from those states may later be joined as class members. (Opp. at 24–25.) As discussed above, Plaintiffs' proposed state-law class is overbroad due to variations in state laws—*regardless* whether Plaintiffs live in those states. Even if Plaintiffs could bring individual claims, they certainly cannot assert *class* claims for alleged violations of those states gift-certificate and gift-card laws. Because named Plaintiffs reside in only four of the twenty-seven states listed in Count II, paragraphs 138, 140, 142–150, 152–163, should be struck from the Complaint.

### 4. Class members who fully redeemed their vouchers are barred as a matter of law from recovering for breach of contract or unjust enrichment.

Plaintiffs do not dispute that persons who redeemed their vouchers cannot recover actual damages or restitution. (Opp. at 4 n.1; *id*. at 21 (seeking restitution of funds paid for vouchers that went *unused*).) As a matter of law, class members who are uninjured lack standing to

---

[7] Plaintiffs argue that, if "standing can be shown for at least one plaintiff, [the court] need not consider the standing of the other plaintiffs to raise that claim." (Opp. at 10 (citing *Reed v. Salazar*, 744 F. Supp. 2d 98, 111 (D.D.C. 2010).) This ignores the variations among the state laws in Count II. (*See* MPA at 16–20.) If the Court strikes the state-law subclass, the CARD Act would be the only statute underlying the CCPA, breach of contract, and unjust enrichment claims. Because, as discussed in Section II.E, *infra*, the Complaint makes no well-pled factual allegations of a misrepresentation, plaintiff Forshey cannot state a claim for any of the counts in the Complaint. For the same reason, plaintiffs Gosling, Abbott, and Lauer could assert only individual claims under their respective states' laws. Because those plaintiffs cannot state a class claim, an order striking those claims would obviate the need to engage in discovery as to whether plaintiffs Gosling, Abbott, and Lauer would make adequate class representatives.

recover damages and cannot recover for breach of contract or unjust enrichment.  (*See* MPA at 14–15.)  Accordingly, the Court can and should order that the classes for these claims be limited to persons who did not redeem their vouchers.  (*Cf.* Status Conf. Tr. at 7, 26–27); *see also Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (striking class allegations where class included "members have no injury and no standing to sue"); *accord Pfizer v. Superior Court*, 182 Cal. App. 4th 622, 631–32 (2010) (holding that class improperly "presumes there was a class-wide injury" and "is grossly overbroad" because "many class members, if not most, clearly are not entitled to restitutionary disgorgement"); *Bishop v. Saab Auto. A.B.*, No. CV 95–0721, 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996) (denying certification based on "tendency to fail" theory because "purported class includes members who have suffered no injury and therefore lack standing to sue").

E.  **Plaintiffs Cannot State a Claim Under the CARD Act or CCPA For Alleged Violations Occurring *Before* the CARD Act's Effective Date.**

Notably, plaintiffs Forshey, Gosling, Abbott, and Lauer do not dispute that they purchased their LivingSocial deal vouchers before the CARD Act's effective date of August 22, 2010.  (*Compare* MPA at 21, *with* Opp. at 25.)  Nor do they argue that the CARD Act applies retrospectively—because it does not.  *See Carlini v. United Airlines*, No. 10 C 6343, 2011 WL 1543212, at *2–3 (N.D. Ill. Apr. 19, 2011).  As such, plaintiffs Forshey, Gosling, Abbott, and Lauer effectively concede that they cannot state a claim for alleged violations of the CARD Act.

These same plaintiffs argue that they *can* state a claim for alleged violations of the CPPA despite the absence of Washington D.C. law regulating expiration or any other gift-certificate terms.[8]  In addition to the supposed "imposition of illegal expiration dates," Plaintiffs assert that

---

[8]  Prior to the enactment of the CARD Act, the only gift certificate and card regulations in Washington D.C. related to escheat of unused certificate and card funds.  *See* D.C. Code §§ 41-102, 114.

Defendants improperly "forc[ed] consumers to redeem their gift certificates in the course of a single transaction and [did] not provid[e] for the exchange of any unused portion of the gift certificates for cash value." (Opp. at 26.) What is missing from the Opposition is a reference to any Washington D.C. law that prohibits gift certificates from expiring, requires that gift certificates be redeemable over multiple visits to a merchant, or mandates that gift certificates be redeemable for cash. There is no such law. But even if there were, Plaintiffs fail to describe (1) how the complained-of terms were misleading; and (2) whether Forshey, Gosling, Abbott, and Lauer were unaware of the allegedly misleading terms before they purchased their LivingSocial deal vouchers. As a result, these plaintiffs' CPPA claims under D.C. Code § 28-3904(a), (d), (e) & (f) should be dismissed.[9] Additionally, their CPPA claim under D.C. Code § 28-3904(r) should be dismissed because the Complaint fails to address the several statutory factors set forth in § 28-3904(r)(1) through (5). *See Grayson,* 15 A.3d at 252.

The cases cited in the Opposition neither address nor absolve the pleading deficiencies in the Complaint. *See Pearson v. Chung*, 961 A.2d 1067, 1079 (D.C. 2008) (affirming *post-trial* ruling that plaintiff had not established CPPA violation); *Smith v. Gutter Covers of Md. & Va.*, No. Civ.A. 04-01974, 2005 WL 3276280, at *2–3 (D.D.C. Aug. 4, 2005) (allowing plaintiff to amend complaint to replace claim under FTC rule (16 C.F.R. § 429.0) with CPPA claim). These cases do not speak to whether plaintiffs Forshey, Gosling, Abbott, and Lauer have plead facts sufficient to support a CPPA claim—particularly given that they cannot state a CARD Act claim.

---

[9] *Cf. Williams v. Purdue Pharma Co*., 297 F. Supp. 2d 171, 177 (D.D.C. 2003) (dismissing CPPA claim in part because complaint "does not plead that these defendants were in any way deceived—or even saw—any [allegedly misleading] advertising."); *Grayson*, 15 A.3d at 251–52 (dismissing CPPA claim under D.C. Code § 28-3904 (a),(e), & (f) where plaintiff failed to allege that he was misled); *Jackson v. ASA Holdings, LLC*, 751 F. Supp. 2d 91, 98–99 (D.D.C. 2010) (same under § 28-3904 (e) & (f) where plaintiff "does not explain in her Complaint what acts, if any, she would or would not have taken if she had been aware" of the allegedly true facts); *Whiting v. AARP*, 701 F. Supp. 2d 21, 29–30 (D.D.C. 2010) (same under § 28-3904(a), (d), (e), & (f) where statements were found not to be misleading).

In short, plaintiffs Forshey, Gosling, Abbott, and Lauer fail to allege that they were in fact misled by Defendants' purported conduct.  (*Cf.* Compl. ¶ 184 ("Defendant LivingSocial states on its website that after a LivingSocial [deal voucher] expires it loses its promotional value.").)  Because these plaintiffs acknowledged that they were informed of all conditions applicable to their deals *before* their purchases, (*see* fn.5, *supra*), their CPPA claims should be dismissed.  *See Grayson*, 15 A.3d at 251–52; *see also Meyers v. ABN Amro Mortg. Grp., Inc.*, No. 05-70453, 2005 WL 2396991, at *2 (E.D. Mich. Sept. 28, 2005) ("Plaintiff should not be able to defeat a meritorious motion to dismiss by styling his complaint as a class action.").

Further, because plaintiff Forshey cannot state any claim against Jack's Boathouse—and is the only plaintiff to assert such a claim—Jack's Boathouse should be dismissed as a defendant.  (*See* Sections II.B-II.C & p. 13 n. 8, *supra* (breach of contract and unjust enrichment); p. 14-16, *supra* (CARD Act and CPPA); MPA at p. 21 (injunctive and declaratory relief).)

### III.  CONCLUSION

For all the reasons stated above and in their Motion, Defendants request that the Court grant their motion to dismiss and strike portions of Plaintiffs' Complaint or alternatively order Plaintiffs to file a more definite statement of their claims.

Dated:  December 19, 2011                    Respectfully submitted,

                                                 */s/ Michael G. Rhodes*
Michael G. Rhodes (*pro hac vice*)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Email:  rhodesmg@cooley.com
Telephone:  (415) 693-2181
Facsimile:  (415) 693-2222

Attorneys for Defendants LIVINGSOCIAL, INC. and JACK'S CANOES & KAYAKS, LLC

17.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of December, 2011, copies of the below listed documents were filed with the Clerk. Notice of this filing will be sent to all parties via electronic mail and by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

- Defendants' Reply in Support of Their Motion to Dismiss and Strike Portions of Plaintiffs' Consolidated Class Action Complaint

Dated: December 19, 2011

*/s/ Michael G. Rhodes*
Michael G. Rhodes (pro hac vice)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Email: rhodesmg@cooley.com
Telephone: (415) 693-2181
Facsimile: (415) 693-2222

Attorneys for Defendants LIVINGSOCIAL, INC. and JACK'S CANOES & KAYAKS, LLC

734047/SD