UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re LIVINGSOCIAL MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) | Misc. Action No. 1:11-mc-0472 (ESH) MDL No. 2254 |
| This Document Relates To: | ) ) | |
| ALL CASES | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...............................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................2

    A.  LivingSocial's Sales and Marketing .......................................................2

    B.  Multiple Nationwide Class Actions Filed Across the Country Against
        LivingSocial .............................................................................................3

    C.  The Actions Are Transferred and Consolidated .....................................4

    D.  The Parties Engage in Mediation ............................................................4

    E.  Plaintiffs' Consolidated Amended Class Action Complaint ...................4

    F.  Defendants' Motion to Dismiss and Strike the Complaint .....................5

    G.  Discovery Process ...................................................................................6

    H.  Parties' Second Mediation Attempt ........................................................7

III.  TERMS OF THE PROPOSED SETTLEMENT .............................................7

    A.  The Settlement Class ...............................................................................7

    B.  Monetary Relief to Settlement Class Members ......................................8

    C.  Cy Pres Distribution ...............................................................................8

    D.  Injunctive Relief .....................................................................................9

    E.  Incentive Awards and Attorneys' Fees ...................................................9

    F.  Release ..................................................................................................10

    G.  Notice and Right to Opt Out .................................................................10

IV.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
     APPROVED ...................................................................................................11

    A.  Legal Standard for Preliminary Approval ............................................11

    B.  The Proposed Settlement Is the Product of Serious, Informed and Non-
        Collusive Negotiations ..........................................................................12

    C.  The Proposed Settlement Contains No Obvious Deficiencies and Is Within
        the Range of Possible Approval .............................................................14

        1.  Plaintiffs and the Class Face a Substantial Risk of Recovering
            Nothing .......................................................................................14

        2.  If the Litigation Proceeds, It May Be Years Before the Class
            Recovers, If at All .....................................................................16

        3.  The Proposed Settlement Provides the Settlement Class with
            Substantial Monetary Relief ......................................................17

    D.  The Proposed Settlement Does Not Grant Preferential Treatment to
        Plaintiffs or Segments of the Class .......................................................18

## TABLE OF CONTENTS (CON'T)

Page

V. THE PROPOSED NOTICE SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23 ............................................................................................20

    A.     Legal Standard for Approval of a Notice Plan .....................................20

    B.     The Content of the Notice Is Appropriate ...........................................21

    C.     The Manner of Providing Notice Is Appropriate.................................22

VI. THE COURT SHOULD SCHEDULE THE FAIRNESS HEARING ............................23

VII. CONCLUSION.................................................................................................24

I.      **INTRODUCTION**

The Parties have reached a proposed settlement of this nationwide class action (the "Proposed Settlement") in which Settlement Class Members can receive a direct *cash* payment of up to 100% of the purchase price of their LivingSocial Deal Vouchers that they were unable to redeem due to the expiration date. (Exhibit 1, Settlement Agreement and Release.) This Proposed Settlement is an excellent result, as it provides Settlement Class Members with meaningful monetary relief, while taking into account the substantial risks Plaintiffs would face if the litigation progressed.

The Proposed Settlement was reached after over a year of hard-fought litigation, which included the filing of six putative nationwide class action complaints, a petition to the Judicial Panel on Multidistrict Litigation ("JPML") for consolidation of pretrial proceedings, the drafting of the Consolidated Amended Class Action Complaint, a fully-briefed motion to dismiss, an extensive and contentious discovery process, including several plaintiffs' depositions, and multiple attempts at mediation with the assistance of an experienced and skilled neutral mediator.

Following these events, counsel for Plaintiffs and Defendants were fully informed of the factual and legal issues of the case. With a dispositive motion pending, and in light of impending further motion practice (*e.g.*, class certification and summary judgment), the Parties engaged in arm's-length negotiations under the guidance of the Honorable Edward A. Infante (Ret.), and reached the Proposed Settlement. Given counsels' intimate knowledge of the facts and legal issues, as well as their substantial experience in nationwide class actions involving consumers, the Parties submit that the Proposed Settlement achieves an excellent result and is in the best interests of the class. The Proposed Settlement not only potentially provides direct and substantial monetary relief to Settlement Class Members who did not redeem their Deal Vouchers before the expiration date (in the form of cash payments of up to 100% of the purchase price of their LivingSocial vouchers), the Proposed Settlement also requires LivingSocial to modify its business practices to ensure that

customers are made fully aware of the terms and conditions governing LivingSocial's Deal Vouchers. The Parties contend that the Proposed Settlement falls well within the range of reasonableness in light of: (1) Defendants' potential defenses; (2) the costs and risks of prosecuting this action to trial; and (3) the very significant recovery achieved.

Accordingly, the Parties respectfully request the Court to grant preliminary approval of the Proposed Settlement so that notice can be distributed to the members of the Settlement Class and a Fairness Hearing can be scheduled to consider final approval of the Proposed Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    LivingSocial's Sales and Marketing

Based in Washington D.C., LivingSocial is a rapidly growing company that facilitates Internet-based "daily deals," by which consumers may purchase a wide variety of offerings—often from a local merchant such as Jack's Boathouse—at a substantial discount. (CC ¶¶22, 24–26.)[1] The deals offered by LivingSocial, include, but are not limited to, deals for restaurant meals, personal services (massages, haircuts, manicures), entrance or access into venues, fitness classes, outdoor activities, sporting events and theater tickets, and clothing and accessories. (*See, e.g.*, *id.* at ¶2.) LivingSocial Deal Vouchers are typically split into a "paid" portion (*i.e.*, the amount actually paid for the voucher) and a "promotional" portion (any amount above the paid portion of the voucher).

LivingSocial's website is segmented into local markets, such as cities, neighborhoods, and related geographic areas. (*Id.* at ¶¶22, 24–26.) These local pages offer "deals" on products and services from merchants within the relevant locale. (*Id.*) LivingSocial's homepage offers individuals the opportunity to sign-up to receive email notifications from LivingSocial regarding the

---

[1]    Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint" or "CC") (Dkt. No. 10), filed November 4, 2011.

deals available in their designated region. (*Id.*) LivingSocial members who purchase a particular

deal receive vouchers by email that may be redeemed with the relevant merchant. (*Id.* at 29.)

LivingSocial members may also obtain a copy of their voucher by logging onto the LivingSocial

website.

**B.      Multiple Nationwide Class Actions Filed Across the Country Against LivingSocial**

Beginning on February 14, 2011, a total of six putative nationwide class actions were filed

against LivingSocial:

- *Abbott, et al. v. Hungry Machine, Inc., d/b/a LivingSocial*, Case No. 11-cv-0253-RSL, United States District Court for the Western District of Washington (filed February 14, 2011);

- *Miller v. LivingSocial, Inc., et al.*, Case No. 11-cv-60519-WPD, United States District Court for the Southern District of Florida (filed March 11, 2011);

- *Forshey v. LivingSocial, Inc., et al.*, Case No. 11-cv-00745-HHK, United States District Court for the District of Columbia (filed April 19, 2011);

- *Pullman v. Hungry Machine, Inc., d/b/a LivingSocial.com*, Case No. 11-cv-00846-LAB -JMA, United States District Court for the Southern District of California (filed April 21, 2011);

- *Gosling v. Hungry Machine, Inc., d/b/a LivingSocial.com*, Case No. 11-cv-2094-LB, United States District Court for the Northern District of California (filed April 28, 2011); and

- *Schultz v. Hungry Machine, Inc., d/b/a LivingSocial.com*, Case No. 11-cv-01136-JNE-SER, United States District Court for the District of Minnesota (filed April 29, 2011).

Each complaint was based on similar factual allegations and claimed that the purported

expiration of LivingSocial Deal Vouchers, as well as other restrictions on the Deal Vouchers, violate

the federal Credit Card Accountability Responsibility and Disclosure Act, as it is incorporated into

the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.* ("CARD Act") and state consumer

protection laws.  Specifically, Plaintiffs allege that the CARD Act is applicable to LivingSocial Deal

Vouchers and that the CARD Act prohibits the sale of gift certificates with expiration periods of less

than five years.  Plaintiffs also contend that the inclusion of expiration dates on LivingSocial Deal Vouchers violates a number of state laws that apply to expiration dates on gift cards and gift certificates.

Defendants deny Plaintiffs' allegations and that they are liable under any of the legal theories asserted by Plaintiffs.  In particular, Defendants dispute that the CARD Act and the other gift certificate statutes under which Plaintiffs sue were intended to apply to LivingSocial Deal Vouchers and that LivingSocial Deal Vouchers are not gift card or gift certificates.

**C.      The Actions Are Transferred and Consolidated**

On May 2, 2011, LivingSocial filed a motion before the JPML to transfer the actions to the United States District Court for the District of Columbia for coordinated or consolidated pretrial proceedings.  (MDL 2254, Dkt. No. 1.)  Plaintiffs filed motions in support of LivingSocial's motion, and on August 22, 2011, the JPML ordered the actions to be transferred to this Court for coordinated and consolidated pretrial proceedings.  (MDL 2254, Dkt. No. 36.)

**D.      The Parties Engage in Mediation**

On August 30, 2011, the Parties attended mediation before the Honorable Edward A. Infante (Ret.).  Although this provided a constructive forum for settlement discussions, the Parties were unable to reach a settlement.  (Declaration of Michael G. Rhodes ("Rhodes Decl."), ¶7; Declaration of Charles J. LaDuca ("LaDuca Decl."), ¶4.)

**E.      Plaintiffs' Consolidated Amended Class Action Complaint**

On November 4, 2011, Plaintiffs filed their Consolidated Amended Class Action Complaint against LivingSocial and Jack's Boathouse.  The Complaint asserts six causes of action against Defendants: violations of the CARD Act (Count I); violations of "State Gift Certificate Statutes" (Count II); violations of the District of Columbia Consumer Protection Statute, D.C. Code Ann. §28-

3901 *et seq.* ("CCPA") (Count III); breach of contract (Count IV); quasi-contract, restitution, or unjust enrichment (Count V); and declaratory or injunctive relief (Count VI).

Plaintiffs assert claims for all counts on behalf of a class of "[a]ll persons in the United States who purchased or otherwise acquired a . . . voucher . . . issued by LivingSocial, on or after August 22, 2010, with an expiration date of less than five years from the date of purchase." (CC, ¶120.) Similarly, for all counts except the CPPA claim, Plaintiffs seek to represent a class of "[a]ll persons in the United States who purchased or otherwise acquired a . . . voucher . . . issued by LivingSocial with an expiration date that is earlier than the expiration period provided under applicable state gift certificate laws." (*Id.*)

## F.    Defendants' Motion to Dismiss and Strike the Complaint

On November 18, 2011, Defendants moved to dismiss and strike portions of the Complaint ("Motion to Dismiss"). (Dkt. No. 12.) Among other things, Defendants argued that the Complaint should be dismissed because Plaintiffs lacked Article III standing. (*Id.* at 10.) Defendants also contend that Plaintiffs failed to allege that they had sustained any harm as the result of LivingSocial's alleged misconduct. Specifically, Defendants argued that the Complaint did not state: (1) the reasons that Plaintiffs were allegedly unable to redeem their vouchers; (2) whether Defendants' conduct (*e.g.*, purported expiration dates on the vouchers) played any role in Plaintiffs' alleged inability to redeem their vouchers; (3) whether Plaintiffs made any attempt to redeem their vouchers before or after the purported expiration date and were denied by the merchant the opportunity to recoup the voucher's bargain; and (4) whether Plaintiffs' recouped the paid or promotional value of their vouchers through a refund from LivingSocial. (*Id.* at 11.)

Plaintiffs filed their opposition to the motion to dismiss on December 9, 2011. Plaintiffs argued that the Complaint sufficiently alleged standing under both the federal CARD Act and

various state gift certificate statutes and that they suffered damages as a result of LivingSocial's imposition of allegedly illegal expiration terms.

### G.      Discovery Process

The Parties also engaged in extensive written discovery and conducted the depositions of three of the eight named plaintiffs. Plaintiffs served Defendants with their first set of interrogatories and requests for production on November 8, 2011. (LaDuca Decl., ¶5.) Defendants served their responses and objections to Plaintiffs' discovery requests on December 23, 2011, and began its review and production of responsive documents. (Rhodes Decl., ¶3.) Among the documents produced by Defendants to Plaintiffs are:

- publicly disclosed terms relating to the expiration of LivingSocial vouchers;

- publicly disclosed versions of LivingSocial's Terms and Conditions;

- the total number of LivingSocial vouchers sold in the United States, broken down by state and type for each month, quarter, year, and cumulatively between August 22, 2010 and December 31, 2011;

- the net billings that LivingSocial has generated and retained on average as a result of sales of LivingSocial vouchers in the United States, broken down by state and type for each month, quarter, year, and cumulatively between August 22, 2010 and December 31, 2011;

- the total number and dollar amount of refunds that LivingSocial has provided to customers relating to LivingSocial vouchers sold in the United States, broken down by state and type for each month, quarter, year, and cumulatively between August 22, 2010 and December 31, 2011;

- representative versions of agreements between LivingSocial and merchants regarding LivingSocial vouchers sold between August 22, 2010 and November 4, 2011; and

- existing final executed versions of agreements between LivingSocial and merchants for deals identified in the consolidated complaint.

(*See* Dkt. No. 21 at 12–13 (Defendants' Opposition to Motion to Compel).)

Plaintiffs also prepared and served responses to Defendants' interrogatories and produced documents concerning their purchases of LivingSocial's Deals. The Parties engaged in a lengthy

meet-and-confer process in an attempt to resolve disagreements over the scope of Plaintiffs' discovery requests. The Parties, however, were unable to reach an agreement, and on April 16, 2012, Plaintiffs filed a motion to compel. (Dkt. No. 20.) The motion to compel was fully briefed by the Parties in May 2012.

In addition to engaging in written discovery, defendants served deposition notices on all eight named plaintiffs and ultimately took the depositions of three of the named plaintiffs. (Rhodes Decl., ¶¶5-6.) Plaintiffs also served Rule 30(b)(6) deposition notices on defendants and engaged in several telephonic conferences with defendants concerning the scope of those depositions. Had the Parties failed to resolve this matter, the Parties would have proceeded with those depositions and other discovery, including expert discovery.

### H.    Parties' Second Mediation Attempt

On June 14, 2012, the Parties attended a second in-person mediation before Judge Infante. While the Parties were unable to reach a settlement, they were able to substantially narrow the areas of dispute and discussed a workable structure for settlement. (LaDuca Decl., ¶9.) Following the in-person mediation attempt, the Parties continued to engage in settlement discussions with the assistance of Judge Infante. (*Id.*) These discussions ultimately resulted in the Proposed Settlement. (*Id.*) The Proposed Settlement reflects careful consideration by the parties of the benefits, burdens, and risks associated with continued litigation of this case.

## III.   TERMS OF THE PROPOSED SETTLEMENT

The complete terms of the Proposed Settlement are set forth in the concurrently filed Settlement Agreement (Exhibit 1), and are summarized below.

A.      **The Settlement Class**

The "Settlement Class" includes all persons in the United States who purchased or received any LivingSocial Deal Voucher prior to October 1, 2012 ("Settlement Class").   (Settlement Agreement and Release, §1.32.)

B.      **Monetary Relief to Settlement Class Members**

The Proposed Settlement creates a settlement fund of $4,500,000 ("Settlement Fund"). (*Id.* at §1.33.) These funds will be used exclusively: (1) to pay the claims of Authorized Claimants (this is the "Net Settlement Fund"), and (2) to pay a limited portion of the expenses of the Settlement Administrator. (*Id.* at §2.1.)

The Proposed Settlement provides that Settlement Class Members who timely complete a valid Claim Form will be entitled to a pro rata share of the Net Settlement Fund up to 100% of the purchase price (also known as the "paid value") of any LivingSocial Deal that is unredeemed and unrefunded and whose promotional value has expired. (*Id.* at §2.2.) Upon receipt of the settlement check, Authorized Claimants will have 180 days to cash the issued check. (*Id.* at §2.2(d).) Funds from checks that are not cashed within this time period will be returned to the Net Settlement Fund. (*Id.*)

C.      *Cy Pres* **Distribution**

Under the proposed settlement, the Parties have designated the National Consumers League and the Consumers Union as the *cy pres* recipients. They are both not-for-profit organizations that represent consumers on marketplace and technology issues, among other things.

Payment to the designated *cy pres* recipients will be made *only* if there are undelivered residual amounts in the Settlement Fund after payments have been made to all Authorized Claimants and the Settlement Administrator. (*Id.* at §2.1.) Put differently, no money from the Settlement Fund will be distributed to the *cy pres* recipients unless and until all Settlement Class Members who were

unable to redeem a LivingSocial Deal Voucher because it expired and who submitted valid claims have been paid—there is no predetermined minimum amount for *cy pres* distribution.  (*Id.*)  This *cy pres* disbursement will take place within forty-five (45) days after the deadline for Authorized Claimants to cash their settlement checks.  (*Id.* at §2.3.)

### D.      Injunctive Relief

In addition to the monetary relief provided to those Settlement Class Members who were unable to redeem their LivingSocial Deal Vouchers because of the expiration date, LivingSocial has agreed to revise several portions of its business practices as part of the Proposed Settlement.

First, under the Proposed Settlement, Plaintiffs contend LivingSocial will change its practices to make its terms and conditions more clear and understandable to consumers.  For Deals that can have their value split into "paid value" and "promotional value" portions, LivingSocial will: (1) specifically identify the "promotional" and "paid" portions on the Deal Voucher and on its website, and (2) include the terms "promotional" and "paid" and capitalize the associated expiration dates in at least 10-point font on the Deal Voucher and on its website.  (*Id.* at §2.4(a)(i).)

Second, for Deals that can be broken into these two components, the paid value will not expire prior to the expiry period provided for gift certificates by the CARD Act or the applicable state law, whichever period is longer.  (*Id.* at §2.4(a)(ii).)

Third, LivingSocial will revise its practices to make it easier for customers to obtain refunds for unredeemed Deal Vouchers.  LivingSocial will state in its terms and conditions that a person can request a refund for the amount paid for any unredeemed Deal Voucher within seven days of the purchase.  (*Id.* at §2.4(a)(iii).)  Additionally, LivingSocial will include in its terms and conditions a mechanism to allow a person to request a refund for the paid value of their Deal if the Deal is unredeemed and the merchant has gone out of business before the promotional expiration date.  (*Id.* at §2.4(a)(v).)

### E.      Incentive Awards and Attorneys' Fees

Defendants agree to not oppose Plaintiffs counsel's application for attorneys' fees and costs, as long as it does not exceed $3,000,000. (*Id.* at §2.5(a).) If the Court awards less than $3,000,000, the difference between $3,000,000 and the amount awarded will be added to the Settlement Fund. (*Id.* at §2.5(f).)

Defendants further agree to not oppose a petition for an incentive award of no more than $500 for each Named Plaintiff who did not provide deposition testimony, and $2,500 for each Named Plaintiff who did provide deposition testimony. (*Id.* at §2.6.)

### F.      Release

Upon the Court's entry of the Fairness Hearing Order and Final Judgment, each Releasing Party shall be deemed to have released and forever discharged the Defendants and Merchants from liability for any and all actions or claims of any nature, arising out of or in any way relating to conduct that was or could have been alleged in this Action. (*Id.* at §5.)

### G.      Notice and Right to Opt Out

No later than thirty days after the Court's preliminary approval of the Proposed Settlement, the Settlement Administrator will provide notice to the Settlement Class. (*Id.* at §3.3.) Notice of the Proposed Settlement will be sent to the email addresses of Settlement Class Members contained in LivingSocial's records. (*Id.* at §3.3(b).) As email is the primary form of communication between LivingSocial and its customers, the Parties agree that email is the best practicable means by which LivingSocial can provide direct notice. (CC, ¶¶ 26, 29.) The content of the email notice is subject to Court approval.

In addition, Settlement Class members will receive publication notice through a comprehensive, dedicated website. (Settlement Agreement and Release, §3.3(a).) The Settlement Administrator will create a website containing all pertinent settlement information, including: (1) a

copy of the Long-Form Notice, which contains instructions on how to submit a Claim Form, opt-out from the Proposed Settlement, and object to the Proposed Settlement; (2) a copy of the Claim Form; and (3) relevant pleadings (*i.e.*, Complaint, Settlement Agreement, Preliminary Approval Order, briefing in support of the Preliminary Approval Order; and Class Counsel's fee and costs petition). (*Id.* at §3.3(a)(i)–(iv).)

Settlement Class Members have 75 calendar days from the Notice Deadline to object or opt out of the Settlement.  (*Id.*, §§3.7–3.8.)

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    Legal Standard for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions.  *Freeport Partners, LLC v. Allbritton*, No. Civ. A. 04-2030(GK), 2006 WL 627140, at *8 (D.D.C. Mar. 13, 2006) ( "Public policy in this Circuit favors settlement of class actions . . . ."); *In re Vitamins Antitrust Litig.* ("*Vitamins II*"), 305 F. Supp. 2d 100, 103 (D.D.C. 2004 (noting "long-standing judicial attitude favoring class action settlements"). Court approval of a settlement of a class action involves a three-step process.  Manual for Complex Litigation, §13.14, 173 (4th ed. 2004); *see Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124–25 (E.D. Cal. 2009).   First, a court analyzes the parties' request for preliminarily approval to determine whether the settlement is within the range of acceptable settlements. *Vasquez*, 670 F. Supp. 2d at 1124–25.  Second, notice of the settlement and its terms are provided to class members, who are then given a period of time to comment on the settlement, opt out of the settlement, object to the settlement, or participate in the settlement.  *Id.*  Third, the court conducts a "Fairness Hearing," at which all interested parties are afforded an opportunity to be heard as to whether the settlement is "fair, reasonable and adequate" as required by Federal Rules of Civil Procedure 23(e).  *Id.*

This case is now at the first step of the process.  At this stage, the questions presented are whether the Proposed Settlement (1) "appears to be the product of serious, informed, non-collusive negotiations," (2) "has no obvious deficiencies," (3) "does not improperly grant preliminary preferential treatment to class representatives or segments of the class," and (4) "falls within the range of possible judicial approval." *In re Vitamins Antitrust Litig.* ("*Vitamins I*"), No. MISC. 99-197(TFH), 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (internal citation, quotations, and alteration omitted); *accord In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

As demonstrated below, the Parties' Proposed Settlement meets these criteria for preliminary approval.

**B.     The Proposed Settlement Is the Product of Serious, Informed and Non-Collusive Negotiations**

As an initial matter, the Proposed Settlement was the product of fully-informed, arms-length negotiations, and grew out of both sides' intense and adversarial litigation of the case.

Both Parties were fully informed of the factual and legal issues because they engaged in extensive discovery and dispositive motion practice.  Plaintiffs were provided with documents relating to the expiration dates and terms and conditions placed on LivingSocial's Deal Vouchers during the relevant time period. (LaDuca Decl., ¶6.)  In addition, Plaintiffs received documents detailing LivingSocial's agreements with merchants, as well as the amount of refunds issued by LivingSocial during the relevant time period. (*Id.*)  Thus, Plaintiffs' counsel received and reviewed documents pertaining to the heart of their claims—whether Defendants imposed illegal terms on the LivingSocial Deal Vouchers.  On the other hand, Defendants received responses to their interrogatories and documents concerning Plaintiffs' LivingSocial Deal purchases.  Defendants also deposed three of the eight named plaintiffs. (Rhodes Decl., ¶5.)  Finally, both Parties were thoroughly familiar with the complex legal issues of the case, having fully briefed the motion to

dismiss and participating in two separate mediations. (LaDuca Decl., ¶¶4, 7, 9; Rhodes Decl., ¶¶5-8.) As such, both Parties were fully informed of the key factual and legal issues of the case when they reached the Proposed Settlement.

Moreover, counsel for both Parties have extensive experience with nationwide consumer class actions. Plaintiffs' counsel has substantial experience with consumer class actions in general and gift-certificate litigation specifically. (LaDuca Decl., ¶8.) Indeed, Robbins Geller Rudman & Dowd LLP is currently lead counsel for plaintiffs in *In re Groupon Marketing and Sales Practices Litigation*, No. 11-md-02238-DMS-RBB (S.D. Cal.). (*Id.*) Similarly, Defendants' counsel has significant experience defending putative class actions alleging violations of laws regulating company's interactions with consumers and has defended numerous actions regarding gift certificate laws. (Rhodes Decl., Exhibits A, C.) Because the Parties' counsel are experienced and informed about the facts of the case, their support of the Proposed Settlement is entitled to considerable weight. *See Lorazepam v. Mylan Labs., Inc.*, Nos. MDL 1290 (TFH), 99MS276 (TFH), 2003 WL 22037741, at *6 (D.D.C. June 16, 2003) (stating the opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement").

Also supporting preliminary approval of the Proposed Settlement is the fact the Parties reached the Proposed Settlement through deliberate, and at times, highly contentious, arm's-length negotiations between the attorneys for the Parties, under the supervision and guidance of an experienced mediator, Hon. Edward A. Infante. (LaDuca Decl., ¶10.) The Proposed Settlement was reached only after the Parties engaged in *two separate rounds* of formal mediations. As such, there is good reason for the fairness of the settlement to be presumed. *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375–76 (D.D.C. 2002); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("[T]he fact that

the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."); Newberg on Class Actions §11:41 (4th Ed. 2002) ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").

### C.    The Proposed Settlement Contains No Obvious Deficiencies and Is Within the Range of Possible Approval

In light of the claims asserted by Plaintiffs and the nature of the litigation, the terms of the Proposed Settlement are reasonable and well within the range of possible approval.  The gravamen of Plaintiffs' case is that Defendants marketed and sold millions of LivingSocial Deal vouchers with overly restrictive expiration dates that are prohibited under federal and state gift certificate statutes. The Proposed Settlement therefore directly addresses these allegations by establishing a $4.5 million settlement fund from which all Settlement Class Members who allegedly sustained actual harm— *i.e.*, those who did not redeem their LivingSocial Deal Vouchers before the expiration date, may seek and obtain substantial monetary relief (up to 100% of the paid value of the Deal).  Moreover, the Proposed Settlement provides meaningful injunctive relief by requiring LivingSocial to modify its terms and conditions so that the expiration dates on its vouchers and website are more clear and understandable to consumers.   The Proposed Settlement is more than adequate under the circumstances and contains no deficiencies.

### 1.    Plaintiffs and the Class Face a Substantial Risk of Recovering Nothing

Plaintiffs' claims are based primarily on novel theories of liability under the CARD Act, a relatively new federal statute which became effective in 2010, and other similar state gift certificate laws.  Defendants contend that it is unlikely that Plaintiffs can succeed on the threshold matter of establishing that LivingSocial's Deal Vouchers are (or should be) regulated as "gift certificates"

- 14 -

under federal or state law.  The CARD Act provides, among other things, that a gift certificate is an "electronic promise" redeemable at a "single merchant or an affiliated group of merchants," is "issued in a specified amount," and is redeemable "for goods or services."  15 U.S.C. §1693*l*-1(a)(2)(B); *see also* 12 C.F.R. §205.20(a).  Defendants contend that, notwithstanding this broad definition, many of LivingSocial's Deal Vouchers are redeemable at *unrelated* merchants or are redeemable for a specific item or experience—*not* a specific amount or value.  Defendants therefore believe that such vouchers clearly fall outside the CARD Act's definition of a "gift certificate." Moreover, according to Defendants, many other Deals are for entry into venues or events, exempting these Deals from the CARD Act.  15 U.S.C. §1693*l*-1(a)(2)(D).  As such, Defendants contend that Plaintiffs will be unable to demonstrate that LivingSocial's Deal Vouchers violate the federal CARD Act.  For similar reasons, Defendants contend that it is unclear (at best) whether LivingSocial's Deal Vouchers meet the definition of a "gift certificate" under the various state laws.

Assuming *arguendo* that LivingSocial Deal Vouchers are gift certificates, Defendants contend that placement of expiration dates on the vouchers' *promotional* value is permissible as it is expressly permitted by gift-certificate regulations.  *See, e.g.*, 15 U.S.C. §1693*l*-1(a)(2)(D)(iii) (stating that term "gift certificate" does not include "a loyalty, award, or *promotional* gift card") (emphasis added); Cal. Civ. Code §1749.5(d)(1) (stating section does not apply to gift certificates distributed pursuant to promotional program); Wash. Rev. Code §19.240.030 (same); Fla. Stat. §501.95(2)(a) (same); Minn. Stat. §325G.53(3) (same).  Accordingly, it is Defendants' position that even if Plaintiffs successfully establish that LivingSocial Deal Vouchers are gift certificates, they cannot establish that the Deal Vouchers violated any law.

Because Plaintiffs face a substantial risk that they will not succeed with their claims (whether at the class certification stage, summary judgment stage, or at trial), preliminary approval of the

Parties' Proposed Settlement is appropriate.[2]  *See In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) ("'The fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement: rather, the percentage should be considered in light of the strength of the claims.'" (internal citation omitted)). Stated simply, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).  Given these considerations, preliminary approval of the Proposed Settlement is warranted to avoid the uncertainties and risks of continued litigation.

### 2.   If the Litigation Proceeds, It May Be Years Before the Class Recovers, If at All

Also supporting approval of the settlement is the fact that absent a settlement, it would likely be years before the class obtained any relief—and Settlement Class Members might ultimately get nothing.  Prior to reaching judgment, in addition to trial and trial-related preparations and motions, the Parties would have to litigate, at least: (a) LivingSocial's renewed motion to dismiss and strike; (b) a vigorously contested class certification motion; (c) summary judgment; (d) a trial on the merits, and (e) the issue of the amount of damages and/or penalties to award.  Appellate proceedings are also likely especially given the many issues of first impression raised by this case.  As was recognized by this Court in *In re Lorazepam & Clorazepate Antitrust Litigation*, avoiding future contentious litigation and the risk and delay that litigation entails favors settlement:

---

[2]    Examination of the strength and weaknesses of the claims should not become a trial on the merits.  *See United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996) ("'It is precisely the desire to avoid protracted examination of the parties' legal rights which underlies consent decrees.'" "And 'it is therefore inappropriate for the judge to measure the remedies in the decree as if they were fashioned after trial.'") (internal citations and alterations omitted).  Moreover, "'complaining that a settlement should be 'better' is not a valid objection.'"  *O'Brien v. Brain Research Labs*, No. 12-201, 2012 WL 3242365, at *15 (D.N.J. Aug. 9, 2012) (internal alterations and citation omitted).

> [S]everal additional factors should be taken into consideration.  Continued litigation of these lawsuits would undoubtedly require substantial additional pretrial preparation and expense, as the defendants have denied all liability.   Such preparation would likely involve dozens of witnesses, including several experts, and thousands of pages of documents.  Further litigation also entails substantial risks; given the defendants' denial of liability, monetary recovery certainly cannot be assumed.

205 F.R.D. at 377; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007)

("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays

and complexities presented by the nature of the case, the benefits of a settlement are clear.");

*Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C.1981) ("[T]he delay in providing relief to the class if

this case were to be litigated is a factor strongly supporting the compromise reached by the

parties.").

### 3.     The Proposed Settlement Provides the Settlement Class with Substantial Monetary Relief

Although "full compensation is not a prerequisite for a fair settlement[,]" *Careccio v. BMW*

*of N. Am. LLC*, No. 08–2619, 2010 WL 1752347, at * 6 (D.N.J. Apr. 29, 2010)[3] the Proposed

Settlement is nevertheless structured in a way to permit each Settlement Class Member who submits

a timely and valid Claim Form to receive a pro rata cash-payment from the Net Settlement Fund *up*

*to and including 100% out-of-pocket money they have spent on unredeemed, expired LivingSocial*

*Deal Vouchers*.  When viewed against the backdrop of the substantial legal obstacles Plaintiffs face,

the relief provided by the Proposed Settlement is more than adequate.

---

[3]      *See Parker v. Time Warner Entm't Co.*, LP, 631 F. Supp. 2d 242, 261–62 (E.D.N.Y 2009) ("'[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'") (internal citation omitted).

**D.      The Proposed Settlement Does Not Grant Preferential Treatment to Plaintiffs or Segments of the Class**

In addition to being reached after a procedurally proper process, being free of obvious deficiencies, and being within the range of reasonableness, the Revised Settlement also avoids granting preferential treatment to Plaintiffs or segments of the Class.

Plaintiffs contend the proposed incentive awards are intended to recognize the time and efforts expended by them on behalf of the putative Class and the risks they undertook in bringing this lawsuit.  It is well recognized that payment of incentive awards under such circumstances is acceptable.  *See Lorazepam & Clorazepate*, 205 F.R.D. at 400 (stating that courts routinely approve incentive awards to "'compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation'") (internal citation omitted); *Radosti v. Envision EMI, LLC,* 760 F. Supp. 2d 73, 79 (D.D.C. 2011) ("[I]ncentive awards are not uncommon in common fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").

Likewise appropriate is requesting Settlement Class Members to complete a claim form to receive payment under the Proposed Settlement.  Class actions often require a claims process to ensure money is fairly distributed for valid claims.  *See, e.g.*, *Bynum v. Gov't of D.C.*, 384 F. Supp. 2d 342, 363 (D.D.C. 2005); *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.,* 266 F. Supp. 2d 44, 47 (D.D.C. 2003); *Lorazepam & Clorazepate*, 205 F.R.D. at 381.  Further appropriate is limiting the monetary recovery to persons who (a) have not used their LivingSocial Deal Voucher, and (b) have been unable to use their vouchers "paid value" following the "promotional value" expiration date. This is because persons who have redeemed their LivingSocial Deal Voucher have not suffered out-of-pocket monetary harm due to Defendants' alleged misconduct.

Earlier this year, the Northern District of California addressed an objection made to a settlement of a class action that contained similar allegations regarding allegedly unlawful periods of

expiry on vouchers the plaintiff contended were gift certificates. *See Farrell v. OpenTable, Inc.*, No. C 11-1785 SI, 2012 WL 1379661, at *1 (N.D. Cal. Jan 30, 2012). The objector argued that the *Farrell* settlement should not be approved because only class members who had not used their Spotlight tickets (the alleged gift certificate) were able to receive monetary relief. *Id.* at *3.

The court overruled the objection, finding: "[t]he settlement provides significant monetary relief in the form of reviving Spotlight tickets that otherwise would have expired, and the Ninth Circuit has held that it is permissible to award different relief to class members based upon objective differences in the positions of the class members." *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000)). The ruling in *Farrell* is equally applicable here, as the D.C. Circuit likewise has held that it is permissible to award different relief to class members. *See Pigford v. Glickman*, 206 F.3d 1212, 1215 (D.C. Cir. 2000) (affirming approval of settlement that provided different levels of compensation based on evidence submitted by claimant); *see also SEC v. Certain Unknown Purchasers*, 817 F.2d 1018, 1020-21 (2d Cir. 1987) (affirming approval of settlement which provided compensation only to class members with out-of-pocket losses); *Careccio*, 2010 WL 1752347, at *6 ("These objections essentially criticize the way relief is tiered in the settlement. Fashioning relief this way, lines inevitably are drawn. At the end of the day, the appropriate test on the adequacy of the settlement terms is whether they are 'fair and reasonable,' . . . and not whether every member of the class is fully compensated.") (internal citation omitted); *In re TD Ameritrade Account Holder Litig.*, Nos. C 07-2852, 2011 WL 4079226 SBA, C 07-4903 SBA, at *9 (N.D. Cal. Sept. 13, 2011) ("The fundamental flaw in [objector]'s argument is that it ignores that the Settlement is a *compromise,* which balances the possible recovery against the risks inherent in litigating further. The possibility that the Settlement does not provide for a payout to every conceivable [class member] . . . does not establish that the Settlement is unfair or unreasonable.") (emphasis in original).

Finally, the *cy pres* relief in the settlement is appropriate.  Under the Proposed Settlement, there is a *cy pres* distribution *only* if fully compensating Settlement Class Members for their alleged harm does not exhaust the Net Settlement Fund or if settlement checks are not cashed or are returned as undeliverable.  Moreover, the proposed *cy pres* recipients—the National Consumers League and Consumers Union—are dedicated to addressing the issues underlying this litigation: protecting consumers against fraud in the electronic marketplace, among other things.  The Court has approved use of *cy pres* distributions under the circumstances provided for in the Proposed Settlement.  *See Radosti*, 760 F. Supp. 2d at 76 (approving *cy pres* distribution of unclaimed settlement funds); *see also In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394 (N.D. Ga. 2001) ("Where settlement funds remain after distribution to class members, courts have approved charitable donations to organizations geared toward 'combating harms similar to those that injured the class members.  Such a donation may serve the cy pres principle of indirectly benefitting all class members.'") (internal citation omitted); *see also McCall v. Facebook, Inc.*, No. 10-16380, 2012 U.S. App. LEXIS 19767, at *17 (9th Cir. Sept. 20, 2012) (*cy pres* relief is appropriate where it bears a direct and substantial nexus to the interests of absent class members).

## V.   THE PROPOSED NOTICE SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23.

### A.   Legal Standard for Approval of a Notice Plan

"The court must direct notice in a reasonable manner to all Settlement Class Members who would be bound by the [settlement] proposal."  Fed. R. Civ. P. 23(e)(1).  Additionally, notice of certification of a Rule 23(b)(3) class must be given "to all members who can be identified through reasonable effort" and describe "(i) the nature of the action"; (ii) "the definition of the class certified"; (iii) "the class claims, issues, or defenses"; (iv) "that a class member may enter an appearance through an attorney if the member so desires"; (v) "that the court will exclude from the class any member who requests exclusion"; (vi) "the time and manner for requesting exclusion"; and

(vii) "the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Parties have agreed that notice will be administered by the Garden City Group, Inc. (Settlement Agreement and Release, §1.31); *see Parker*, 631 F. Supp. 2d at 257 (noting the Garden City Group acted as the settlement administrator).  No later than thirty (30) calendar days after entry of the Preliminary Approval Order, LivingSocial through the Garden City Group, Inc. will provide the Settlement Class with notice of the Proposed Settlement by the following methods.  (*Id.*, §3.3) Short-form notice will be sent directly to Settlement Class Members at the email address contained in LivingSocial's records.  (*Id.*, §3.3(b).)  The content of the email notice will be that which is before the Court for approval.  (*Id.*, Ex. C.)  Publication notice will also be directed to Settlement Class Members through a comprehensive, dedicated settlement website.  (*Id.*, §3.3(a).)  The website shall contain copies of all relevant documents and information, including but not limited to: (1) a copy of the Long-Form Notice, which contains instructions on how to submit a Claim Form, opt-out from the Proposed Settlement, and object to the Proposed Settlement; (2) a copy of the Claim Form; and (3) relevant pleadings (*i.e.*, Complaint, Settlement Agreement, Preliminary Approval Order, briefing in support of the Preliminary Approval Order; and Class Counsel's fee and costs petition).  (*Id.* at §3.3(a)(i)–(iv) & Ex. B.)  The notice plan set forth in the Proposed Settlement satisfies the requirements of Rule 23(e)(1).

## B.     The Content of the Notice Is Appropriate

This notice complies with Rule 23 and due process because, among other things, it informs the Settlement Class of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class and claims asserted; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that

Settlement Class Members may make an appearance through counsel; (5) information regarding the named plaintiffs' request for an incentive award and reimbursement of their attorneys' fees and costs; (6) the procedure for submitting Claims to receive settlement benefits; and (7) how to contact Class Counsel to make inquiries. Fed. R. Civ. P. 23(c)(2)(B). As such, the Court should approve Exhibits B and C to the Proposed Settlement.

### C.     The Manner of Providing Notice Is Appropriate

Here, Rule 23's notice requirement is satisfied by the proposed two-tiered notice plan: (i) short-form notice by email, with such notice directing potential Settlement Class Members to (ii) the long-form notice on the Internet. The type of tiered notice proposed here is similar to that which has been approved by other courts. *See Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006) (finding notice by email directing class members to official settlement website particularly appropriate where class members' "allegations arise from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are familiar with and comfortable with email and the Internet"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203–04 (D. Me. 2003) (approving notice program that included short notices directing class to Internet and mailing addresses for further information); *In re Diet Drugs Prods. Liab. Litig.*, 226 F.R.D. 498, 520 (E.D. Pa. 2005) (holding that individualized notice plus Internet publication fulfilled the "'best notice practicable'" requirement of Rule 23(c)(2)) (internal citation omitted); *In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 85 (D. Mass. 2005) (noting effectiveness of settlement website as means of publication).[4]

---

[4]     The Settlement Administrator, with the assistance of the Parties, will convert the Long-Form Notice into "frequently asked questions" (or "FAQs"), and corresponding answers. (Settlement Agreement and Release, §§3.3(a)(i), 3.5.) The FAQs and answers will be posted on the Settlement Website and will be available through an interactive voice response system that Settlement Class Members can reach by calling a toll-free telephone number. (*Id.* at §3.5.) The Settlement

## VI.   THE COURT SHOULD SCHEDULE THE FAIRNESS HEARING

The last step in the settlement approval process is a Fairness Hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Fed. R. Civ. P. 23(e)(2); *Vasquez*, 670 F. Supp. 2d at 1124–25. Proponents of the settlement may offer argument in support of final approval. In addition, Settlement Class Members who have properly objected to the Proposed Settlement may be heard at this hearing. The Court will determine after the Fairness Hearing whether the Proposed Settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).[5]

So that the Parties and the Settlement Administrator have enough time to prepare for and transmit notice to the Settlement Class (30 calendar days), the Settlement Class Members have enough time to file a Claim Form, object to the Proposed Settlement or opt-out from it (75 calendar days), the Parties' have enough time to submit briefs to support approval of the Proposed Settlement at Fairness Hearing, including responding to any objections (15 calendar days), and the Court to review the Parties' papers (14 calendar days), the Parties request that the Court set a date for a hearing on final approval at the Court's convenience, no less than one-hundred and thirty-four (134) calendar days after the Court's preliminary approval of the Proposed Settlement.

---

Administrator will maintain an email box and P.O. Box for Settlement Class Members to submit questions. (*Id.*)

[5]   Once the Proposed Settlement reaches the third step of the process, the factors the Court will investigate at the Fairness Hearing are: "(a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Lorazepam & Clorazepate*, 205 F.R.D. at 375.

## VII.   CONCLUSION

For the reasons stated above, the Parties respectfully request that the Court grant this motion

for preliminary approval of the class action settlement.

<div style="margin-left:40%">

Respectfully submitted,

</div>

DATED:  October 19, 2012                                 CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA (DC Bar 476134)
WILLIAM H. ANDERSON (DC Bar 502380)


/s/ Charles J. LaDuca
                       CHARLES J. LADUCA

507 C Street, NE
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

DATED:  October 19, 2012                                 ROBBINS GELLER RUDMAN
    & DOWD LLP
JOHN J. STOIA, JR. (*pro hac vice*)
RACHEL L. JENSEN
THOMAS R. MERRICK
PHONG L. TRAN


/s/ John J. Stoia, Jr.
                       JOHN J. STOIA, JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Counsel for Plaintiffs

**[SIGNATURES CONTINUED ON THE NEXT PAGE]**

DATED:  October 19, 2012

COOLEY LLP
MICHAEL G. RHODES (*pro hac vice*)


/s/ Michael G. Rhodes
       Michael G. Rhodes

101 California Street, 5th Floor
San Francisco, CA 94111
415/693-2181
415/693-2222 (fax)
Email:  rhodesmg@cooley.com

Attorneys for Defendants LivingSocial, Inc. and
Jack's Canoes & Kayaks, LLC


## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated:  October 19, 2012

By:   /s/ Charles J. LaDuca
       CHARLES J. LaDUCA

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 19, 2012.

/s/ Charles J. LaDuca
CHARLES J. LADUCA

CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)
E-mail:   charlesl@cuneolaw.com