UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re LIVINGSOCIAL MARKETING AND SALES PRACTICES LITIGATION | ) ) ) | Misc. Action No. 1:11-mc-0472 (ESH) MDL No. 2254 |
| This Document Relates To: | ) ) ) | |
| ALL CASES | ) ) ) | DATE:     March 7, 2013 TIME:      9:30 a.m. JUDGE:   Hon. Ellen S. Huvelle |

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD PAYMENTS**

Pursuant to the Court's Preliminarily Approval and Provisional Class Certification Order, entered October 25, 2012, Plaintiffs Melissa Forshey, Mandy Miller, Kimberly Pullman Sarah Gosling, Dawn Abbott, Barrie Arliss, Cara Lauer and Amy Schultz (collectively, "Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and on behalf of each of the Settlement Class Members, hereby move, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure and in accordance with the applicable case law, for an order: (1) awarding attorneys' fees and expenses to Plaintiffs in the amount of $3,000,000; and (2) awarding incentive awards to the Named Plaintiffs who were deposed in the amount of $2,500 each and $500 each for those that were not deposed, for a total of $10,000.

This motion is based upon the parties' Joint Motion for Preliminary Approval of Settlement and the exhibits attached thereto; Plaintiffs' Memorandum of Law in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award Payments; the Declarations of Charles J. LaDuca and Thomas R. Merrick in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award Payments and the exhibits attached thereto; the Declarations of Plaintiffs' Counsel[1] in Support thereof and the exhibits attached thereto, which are filed concurrently herewith; the Expert Report of Alexander J. Hoinsky, MBA, CPA, which is filed concurrently herewith; the Joint Motion for Final Approval of Settlement, and submissions in support thereof, which the parties intend to file on January 18, 2013; the papers, records and pleadings of the action; and such other written or oral argument as may be presented or required by the Court.

---

[1]     The following firms submitted declarations: Audet & Partners, LLP; Bolen Robinson & Ellis, LLP; Bonnett Fairbourn Friedman & Balint, P.C.; Carlson Legal; Carney Gillespie Isitt PLLP; Cuneo Gilbert & LaDuca, LLP; Halunen & Associates; Levin Fishbein Sedran & Berman; Myles A. Schneider & Associates, LTD; Robbins Geller Rudman & Dowd LLP; Van Eyk & Moore, PLLC; and Wites & Kapetan, P.A. (collectively "Plaintiffs' Counsel").

This motion is made on the grounds that, *inter alia*: (1)  the requested fees and expenses are reasonable and fair and were necessarily incurred to achieve the excellent results on behalf of the Settlement Class; (2) the requested fees and expenses are the product of lengthy arms' length negotiations between the parties and mediation before the Honorable Edward A. Infante (Ret.) of JAMS; (3) the Settlement obtained by Class Counsel confers substantial and valuable economic benefits to Class Members in the form of cash refunds, *cy pres* relief, and injunctive relief; and (4) a service award of $2,500 for each Class Representative that was deposed and $500 for each that was not deposed is reasonable and fair for the time and effort they expended in pursuing this Action.

DATED:  January 18, 2013

CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA (DC Bar 476134)
WILLIAM H. ANDERSON (DC Bar 502380)


s/ Charles J. LaDuca
CHARLES J. LADUCA

507 C Street, NE
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

DATED:  January 18, 2013

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR. (*pro hac vice*)
RACHEL L. JENSEN
THOMAS R. MERRICK
PHONG L. TRAN


s/ John J. Stoia, Jr.
JOHN J. STOIA, JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

WITES & KAPETAN PA
MARC A. WITES
JONATHAN STEPHEN BURNS
4400 N Federal Highway
Lighthouse Point, FL  33064
Telephone:  954/570-8183
954/354-0205 (fax)

CARNEY GILLESPIE ISITT PLLP
CHRISTOPHER ROBERT CARNEY
100 W. Harrison Street, Suite N440
Seattle, WA  98119
Telephone:  206/445-0220

MYLES A. SCHNEIDER & ASSOCIATES,
   LTD.
MYLES A. SCHNEIDER
710 Dodge Avenue, NW, Suite A
Elk River, MN  55330
Telephone:  763/315-1100
877/294-4254 (fax)

BONNETT FAIRBOURN FRIEDMAN
   & BALINT
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602-798-5825 (fax)

AUDET & PARTNERS, LLP
MICHAEL A. McSHANE
221 Main Street, Suite 1460
San Francisco, CA  94105
Telephone:  415/568-2555
415/576-1776 (fax)

HALUNEN & ASSOCIATES
CLAYTON D. HALUNEN
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  612/605-4098
612/605-4099 (fax)

805787_1

BOLEN ROBINSON & ELLIS, LLP
CHRISTOPHER M. ELLIS
202 S. Franklin, 2nd Floor
Decatur, IL  62523
Telephone:  217/429-4296
217/329-0034 (fax)

LEVIN, FISHBEIN, SEDRAN & BERMAN
CHARLES E. SCHAFFER
510 Walnut Street, Suite 500
Philadelphia, PA  19106-3697
Telephone:  215/592-1500
215/592-4663 (fax)

VAN EYK & MOORE, PLLC
SHAUN VAN EYK
100 W. Harrison Street, Suite N440
Seattle, WA 98119
Telephone:  206/445-0223
206/452-0722 (fax)

CARLSON LEGAL
JAY S. CARLSON
100 W. Harrison Street, Suite N440
Seattle, WA 98119
Telephone:  206/445-0214
206/260-2486 (fax)

Attorneys for Plaintiffs

## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this

document from the signatories to this document.

Dated:  January 18, 2013                     By:    s/ John J. Stoia, Jr.
                                                              JOHN J. STOIA, JR.

805787_1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re LIVINGSOCIAL MARKETING AND SALES PRACTICES LITIGATION | ) ) ) | Misc. Action No. 1:11-mc-0472 (ESH) MDL No. 2254 |
| This Document Relates To: | ) ) ) | |
| ALL CASES | ) ) ) | DATE:     March 7, 2013 TIME:     9:30 a.m. JUDGE:   Hon. Ellen S. Huvelle |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD PAYMENTS**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ......................................................................................................... 1

II.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND ...................................... 6

III.  PLAINTIFFS' REQUESTED AWARD FOR ATTORNEYS' FEES AND
EXPENSES IS REASONABLE AND SUPPORTED BY CIRCUIT
PRECEDENT ............................................................................................................... 12

    A.  The Requested Fee Award Is Reasonable under the "Constructive
Common Fund" Percentage of Recovery Analysis ............................................... 14

        1.  The Court May Consider the Value of the Injunctive Relief in
Determining the Common Fund Amount .................................................... 15

        2.  Plaintiffs' Requested Award Is Reasonable in Light of the
*Lorazepam* Factors ...................................................................................... 19

        3.  The Size of the Fund and Number of Persons Benefitted Justify the
Requested Fee Award .................................................................................. 19

        4.  The Class Was Represented by Skilled Attorneys Who Efficiently
Litigated the Case and Achieved an Impressive Early Resolution ............ 20

        5.  This Complexity and Duration of This Litigation Support the
Requested Fee Award .................................................................................. 21

        6.  The Risk of Nonpayment Was Significant .................................................. 22

        7.  Class Counsel Devoted Substantial Time and Resources to This
Litigation ..................................................................................................... 23

        8.  The Fee and Expense Award Sought Here Is Consistent With
Precedent ...................................................................................................... 25

    B.  Plaintiffs' Fee and Expense Request Is Also Fair and Reasonable Under
the Lodestar Analysis ........................................................................................... 26

        1.  Plaintiffs' Counsel Devoted a Reasonable Number of Hours to
This Litigation ............................................................................................. 26

        2.  Plaintiffs' Counsel's Hourly Rates Are Reasonable .................................. 27

        3.  Plaintiffs' Counsel Invested a Significant Amount of Time and
Resources into This Case ............................................................................. 29

**Page**

    4.      Plaintiffs' Fee Request Is Reasonable in Light of the Contingent
            Nature of the Fee and Class Counsel's Ongoing Work ............................30

IV.    PLAINTIFFS' EXPENSES ARE REASONABLE AND NECESSARILY
       INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE
       CLASS ....................................................................................................................30

V.     THE COURT SHOULD APPROVE THE INCENTIVE AWARDS OF $2,500
       FOR EACH NAMED PLAINTIFF WHO WAS DEPOSED AND $500 FOR
       THOSE THAT WERE NOT DEPOSED ........................................................................31

VI.    CONCLUSION.....................................................................................................................32

804800_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..................................................................................12

*Brayton v. Office of the U.S. Trade Representative*,
    641 F.3d 521 (D.C. Cir. 2011)..................................................................13

*Cobell v. Salazar*,
    679 F.3d 909 (D.C. Cir. 2012)..................................................................32

*Cohen v. Warner Chilcott Pub. Ltd., Co.*,
    522 F. Supp. 2d 105 (D.D.C. 2007) ..................................5, 14, 15, 32

*Copeland v. Marshall*,
    641 F.2d 880 (D.C. Cir. 1980) ..........................................................15, 16

*Covington v. District of Columbia*,
    57 F.3d 1101 (D.C. Cir. 1995)..................................................................27

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ..........................................................28

*DL v. District of* Columbia, ..................................................................27
    256 F.R.D. 239 (D.D.C. 2009)

*First State Orthopaedics v. Concentra, Inc.*,
    534 F. Supp. 2d 500 (E.D. Pa. 2007) ..............................................17, 18

*Fresh Kist Produce, L.L.C. v. Choi Corp*,
    362 F. Supp. 2d 118 (D.D.C. 2005) ........................................................13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..........................................................................12, 26

*In re Baan Co. Sec. Litig.*,
    288 F. Supp. 2d 14 (D.D.C. 2003) ......................................4, 19, 25, 30

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
    269 F.R.D. 468 (E.D. Pa. 2010)..............................................................28

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ....................................................28

*In re Kitec Plumbing Sys. Prods. Liab. Litig.*,
    No. 3:09-md-02098-F (N.D. Tex. 2011) ................................................28

**Page**

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D 369 (D.D.C. 2002) ..................................................................................... *passim*

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  No. MDL 1290(TFH), 2003 U.S. Dist. LEXIS 12344
  (D.D.C. June 16, 2003) ............................................................................................... *passim*

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................................12

*In re Shering-Plough/Merck Merger Litig.*,
  No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121
  (D.N.J. Mar. 26, 2010) ...................................................................................................15

*In re Telik Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................................28

*In re Vitamins Antitrust Litig.*,
  No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25067
  (D.D.C. July 16, 2001) ...............................................................................14, 18, 19, 25

*In re: Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................................12

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) ...................................................................................14

*Kattan by Thomas v. District of Columbia*,
  995 F.2d 274 (D.C. Cir. 1993) ...................................................................................27

*MacClarence v. Johnson*,
  539 F. Supp. 2d 155 (D.D.C. 2008) ...................................................................................27

*O'Keefe v. Mercedes-Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) ...................................................................................15

*Radosti v. Envision EMI, LLC*,
  760 F. Supp. 2d 73 (D.D.C. 2011) ...................................................................................15, 25

*Rooths v. District of Columbia*,
  802 F. Supp. 2d 56 (D.D.C. 2011) ...................................................................................5

*Sheppard v. Consol. Edison Co. of New York, Inc.*,
  No. 94-CV-0403(JG), 2002 WL 2003206
  (E.D.N.Y. Aug. 1, 2002) ...................................................................................4, 15

**Page**

*Swedish Hosp. Corp. v. Shalala*,
 1 F.3d 1261 (D.C. Cir. 1993) ..............................................................................4, 13, 18, 26

*Trombley v. Nat'l City Bank*,
 826 F. Supp. 2d 179 (D.D.C. 2011) ............................................................................ *passim*

*Vista Healthplan, Inc. v. Warner Holdings Co., III, Ltd.*,
 246 F.R.D. 349 (D.D.C. 2007)....................................................................................4, 13, 15

*Wells v. Allstate Ins. Co.*,
 557 F. Supp. 2d 1 (D.D.C. 2008) .................................................................................. *passim*

*Yamanouchi Pharm. Co. v. Danbury Pharm., Inc.*,
 51 F. Supp. 2d 302 (S.D.N.Y. 1999).......................................................................................28

*Yurman Designs, Inc. v. PAJ, Inc.*,
 125 F. Supp. 2d 54 (S.D.N.Y. 2000).......................................................................................28

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §1693.......................................................................................................................................2, 8

28 U.S.C.
 §1407..........................................................................................................................................7

D.C. Code Ann.
 §28-3901, *et seq.* .......................................................................................................................8

Federal Rules of Civil Procedure
 Rule 23 .....................................................................................................................................12
 Rule 23(h) ...........................................................................................................................12, 15

804800_1

Plaintiffs Melissa Forshey ("Forshey"), Mandy Miller ("Miller"), Kimberly Pullman ("Pullman"), Sarah Gosling ("Gosling"), Dawn Abbott ("Abbott"), Barrie Arliss ("Arliss"), Cara Lauer ("Lauer") and Amy Schultz ("Schultz") (collectively, "Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and on behalf of each of the Settlement Class Members,[1] by and through their court-appointed Class Counsel,[2] respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of expenses, and incentive awards for their hard work and skill in prosecuting this Action and securing a very favorable settlement for Plaintiffs and the Settlement Class.

## I.    INTRODUCTION

Despite facing significant legal challenges, Class Counsel have achieved a comprehensive class settlement that resolves this multi-district litigation ("MDL") proceeding encompassing six lawsuits against LivingSocial, Inc. ("LivingSocial" or the "Company"), and Jack's Canoes and Kayaks, LLC, d/b/a Jack's Boathouse ("Jack's Boathouse") (collectively "Defendants").   The Settlement, which was achieved after multiple mediation sessions before the Honorable Edward A. Infante (Ret.) of JAMS, and almost a year of hard-fought negotiations directly between the parties, provides valuable monetary relief and other tangible benefits to consumers all over the country who purchased LivingSocial Deal Vouchers ("Deal Vouchers") with allegedly illegal expiration dates and other restrictions.   The Settlement requires LivingSocial to establish a Settlement Fund of $4,500,000 to provide cash payments to Class Members with expired and unredeemed Deal

---

[1]      Unless otherwise indicated, all capitalized terms shall have the same meaning ascribed to them in the Settlement Agreement and Release ("Settlement" or "Settlement Agreement") submitted to the Court on October 19, 2012 (Dkt. No. 24-1).  All "§" or "§§" references are to the Settlement Agreement.  All emphasis is added and citations omitted, unless noted otherwise.

[2]      On October 25, 2012, this Court appointed the firms of Cuneo Gilbert & LaDuca, LLP ("Cuneo Gilbert") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as Class Counsel.

Vouchers and to cover certain settlement administration costs.  §2.1(a).  Qualified Class Members may then obtain cash payments of up to *100%* of the purchase price (also known as "paid value") of any unredeemed and expired Deal Voucher.  Class Members therefore may potentially receive *complete* relief for the Deal Vouchers they purchased.  Should any money remain in the Settlement Fund after the payment of all valid claims, the remaining money will be divided equally between the National Consumers League and the Consumers Union, two non-profit organizations dedicated to educating and protecting consumers against internet and e-commerce fraud, among other things. §2.3.  LivingSocial therefore has agreed under the Settlement to contribute a sum certain, and there is no return of funds to LivingSocial.

In addition to providing direct cash payments to the Class, the Settlement provides substantial injunctive relief that requires LivingSocial to reform its business practices concerning the marketing and sale of Deal Vouchers.  §2.2 Due to LivingSocial's use of restrictive expiration terms prior to Settlement, Plaintiffs and Class Members all over the country were harmed and lost money after their Deal Vouchers expired and they were therefore unable to redeem them.  Consolidated Amended Class Action Complaint ("Complaint") (Dkt. No. 10), ¶¶7-8.  The expiration periods imposed by LivingSocial were much shorter than the five-year minimum period of expiry mandated by the federal Credit Card Accountability Responsibility and Disclosure Act ("CARD Act"), 15 U.S.C. §1693 *et seq.  Id.*, ¶5.  Had no settlement been achieved, LivingSocial and its Merchant Partners presumably would have continued to use restrictive expiration periods on Deal Vouchers for their own financial advantage, to the ongoing detriment of consumers.  This Settlement, however, directly addresses LivingSocial's harmful expiration policies and imposes companywide reforms that bring Deal Vouchers into compliance with the CARD Act and state gift certificate laws. Because of the extremely valuable injunctive relief provided under the Settlement, Class Members and purchasers of Deal Vouchers will be protected in the years to come.

Specifically, the Settlement requires LivingSocial to implement the following business reforms: (i) provide clear and conspicuous disclosures on its Deal Vouchers and its website explaining the difference between the dates of expiration of the Promotional Value and the Paid Value;[3] and (ii) for a period of three years following the Effective Date of Settlement: (a) ensure that no expiration date is imposed on the customer purchase price of any LivingSocial Deal Voucher that is shorter than the expiration minimum contained in the CARD Act (five years) or any applicable state law, whichever is longer; and (b) explain in its Terms and Conditions that purchasers of LivingSocial Deal Vouchers may request a full refund of any unredeemed LivingSocial Deal Voucher within seven days of purchase. §2.4(a). These companywide reforms directly address the concerns raised by Plaintiffs over LivingSocial's use of deceptive and restrictive expiration terms and serve to protect consumers against such conduct moving forward. Even by decidedly conservative analysis, the value of this injunctive relief adds between ***$54 million and $216 million*** to the value of this Settlement, as explained below. *See* Expert Report of Alexander J. Hoinsky, MBA, CPA of Heffler, Radetich & Saitta, LLP ("Hoinsky Report"), ¶¶15-16, filed concurrently herewith.

For achieving substantial economic and injunctive relief on behalf of Class Members nationwide, Plaintiffs respectfully request a reasonable award of attorneys' fees and expenses. Following final agreement on the material terms of Settlement, the parties negotiated Plaintiffs' attorneys' fees and expenses, as well as the Class Representatives' incentive awards, under the supervision and guidance of Judge Infante. Ultimately, Defendants agreed to pay fees and expenses to Plaintiffs not to exceed $3,000,000, separate and apart from the monies and other relief available to the Class under the Settlement Fund. §2.5(a).

---

[3]     Under the Settlement, LivingSocial must provide these disclosures in at least 10-point font in capital letters. §2.4(a)(i).

The requested fee award is fair and reasonable when examined as a percentage of the total recovery, the preferred method of fee analysis in this Circuit. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993). Taking into consideration the value of the cash relief available to the Settlement Class and certain administrative costs ($4,500,000), the additional administration costs borne by LivingSocial (approximately $80,000), the agreed-upon amount of attorneys' fees and expenses ($3,000,000) and the value of the injunctive relief ($54 million at the low end), the total constructive common fund in this case is approximately $62,000,000. Accordingly, the requested award of $3,000,000 accounts for ***less than 5%*** of the common fund – well within the generally-accepted range of percentage-of-recovery in this Circuit. *Vista Healthplan, Inc. v. Warner Holdings Co., III, Ltd.*, 246 F.R.D. 349, 364 (D.D.C. 2007) (common fund fee awards in the District of Columbia typically "'range from fifteen to forty-five percent'"). The requested fee award is certainly warranted given the complexity of the litigation, the substantial risks faced by Plaintiffs and Class Counsel, the full cash recovery possible for Class Members, and the valuable injunctive relief provided under the Settlement. Given the exemplary results achieved through the Settlement, Plaintiffs' request for a common fund award of less than 5% is fair and reasonable. *See Sheppard v. Consol. Edison Co. of New York, Inc.*, No. 94-CV-0403(JG), 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (awarding fees and including injunctive component in calculation of common fund).

Additionally, the requested fee award is appropriate when examined under the lodestar method. Here, the requested award represents only a modest multiplier of less than 1.5 times the lodestar incurred thus far by Plaintiffs' Counsel in the course of litigating this Action to its successful conclusion. *See In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 19-20 (D.D.C. 2003) (finding that "a multiplier of 2.0 or less falls well within a range that is fair and reasonable"). Class Counsel and the other Plaintiffs' Counsel involved in the prosecution of this case (collectively "Plaintiffs' Counsel") have submitted sworn declarations and detailed time records that support the

- 4 -

total lodestar amount claimed in this case, therefore establishing the presumptive reasonableness of Plaintiffs' fee request. *See Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 60 (D.D.C. 2011). Thus, under either the common fund or the lodestar approach, the fee and expense award sought by Plaintiffs is fair and reasonable.

Plaintiffs' requested award is certainly warranted in light of Class Counsel's hard work, skill, and ultimate success in achieving a valuable settlement on behalf of the Class Members. Class Counsel persisted in their efforts to advance the litigation, despite the substantial risk of non-payment due to the uncertain outcome and risks involved. Notably, the requested fee does not include the time spent researching and preparing the instant fee request, nor the substantial work that Class Counsel must shoulder going forward, such as preparing for the final approval hearing, overseeing claims administration, responding to Class Member communications, and responding to any objections and related appeals – further substantial work benefitting the Settlement Class that could easily last for many months, and for which Class Counsel will not receive any compensation in addition to the requested fee and expense award sought here.

Finally, pursuant to the Settlement, Defendants have agreed to pay incentive awards of $2,500 to each Named Plaintiff who was deposed, and $500 to each Named Plaintiff who was not deposed, for their time and effort in participating in this Action. §2.6. The total service award amount of $10,000 is entirely reasonable given the commitment and efforts undertaken by the Named Plaintiffs, as class representatives, on behalf of the Settlement Class. *See Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 207 (D.D.C. 2011) (approving incentive awards of $5,000 each for named plaintiffs); *Cohen v. Warner Chilcott Pub. Ltd., Co.*, 522 F. Supp. 2d 105, 124 (D.D.C. 2007) (approving incentive awards of $7,500 each to named plaintiffs); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) (approving incentive awards of $10,000 each to named plaintiffs).

For the reasons set forth herein, Plaintiffs respectfully submit that the requested award of attorneys' fees and expenses and incentive awards are fair and reasonable and, in light of the comprehensive settlement relief achieved on behalf of millions of Class Members nationwide, should be fully awarded by this Court pursuant to the agreed-upon terms of Settlement.

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Beginning in 2009, LivingSocial marketed and sold, through its website, Deal Vouchers, redeemable for goods and services with Merchants throughout the United States.  *See, e.g.*, Complaint, ¶2.  Plaintiffs have alleged that LivingSocial sold millions of Deal Vouchers with unreasonably short expiration dates and other restrictive terms, in violation of the federal CARD Act, various state gift certificate laws, and other consumer protection statutes.  Complaint, ¶¶5, 9-10.

This MDL proceeding is comprised of six separate actions against LivingSocial, the first of which was filed almost two years ago.  *See* Dkt. Nos. 1 and 3.  These actions include the following:

1.  *Abbott, et al. v. Hungry Machine, Inc., d/b/a LivingSocial*, No. 11-cv-00253-RSL, United States District Court for the Western District of Washington ("*Abbott* Case") (filed February 14, 2011) (Dkt. No. 1);

2.  *Miller v. LivingSocial, Inc., et al.*, No. 11-cv-60519-WPD, United States District Court for the Southern District of Florida ("*Miller* Case") (filed March 11, 2011) (*id.*);

3.  *Forshey v. LivingSocial, Inc., et al.*, No. 11-cv-00745-HHK, United States District Court for the District of Columbia ("*Forshey* Case") (filed April 19, 2011) (*id.*);

4.  *Pullman v. Hungry Machine, Inc, d/b/a LivingSocial.com.*, No. 11-cv-00846-LAB-JMA, United States District Court for the Southern District of California ("*Pullman* Case") (filed April 21, 2011) (*id.*);

5.  *Gosling v. Hungry Machine, Inc., d/b/a/ LivingSocial.com*, No. 11-cv-02094-LB, United Stated District Court for the Northern District of California ("*Gosling* Case") (filed April 28, 2011) (*id.*); and

6.  *Schultz v. Hungry Machine, Inc.*, No. 11-cv-01136-JNE-SER, United States District Court for the District of Minnesota ("*Schultz* Case") (filed April 29, 2011) (Dkt. No. 3).

Prior to the filing of the complaints, and throughout the course of the litigation, Plaintiffs' Counsel conducted an extensive analysis of the factual and legal issues in this Action. Specifically, Plaintiffs' Counsel researched and investigated the CARD Act, a relatively new federal statute enacted by Congress to address, *inter alia*, misleading and unfair practices concerning gift certificates, and the statute's application to Deal Vouchers. Merrick Decl.,[4] ¶11. Plaintiffs' Counsel also conducted extensive due diligence on numerous state gift certificate statutes and the application of those statutes to Defendants' conduct, as well as application of various state consumer protection statutes to the conduct at issue. *Id.* Plaintiffs' Counsel also spoke to potential witnesses and Class Members in investigating the practices at issue here. *See* LaDuca Decl.,[5] ¶10**,** Merrick Decl., ¶11.

On May 2, 2011, LivingSocial petitioned the Judicial Panel on Multidistrict Litigation ("JPML") to transfer the actions pursuant to 28 U.S.C. §1407 for coordinated or consolidated proceedings in the District of Columbia. Merrick Decl., ¶16. Attorneys from the firms of Cuneo Gilbert and Robbins Geller, later appointed as Class Counsel, reached out to the other Plaintiffs' Counsel, representing 12 different law firms to quickly and efficiently coordinate litigation efforts and establish an appropriate leadership structure. *Id.*, ¶14. Plaintiffs' Counsel were therefore able to organize themselves and each of the Plaintiffs filed responses supporting LivingSocial's petition for transfer and consolidation or coordination of their individual cases. *See* LaDuca Decl., ¶¶14-15**,** Merrick Decl., ¶¶15-16.

On August 22 and September 7, 2011, the JPML transferred the Actions to the United States District Court for the District of Columbia before the Honorable Ellen S. Huvelle, No. 11-mc-00472-

---

[4]   Declaration of Thomas R. Merrick filed on behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Merrick Decl.").

[5]   Declaration of Charles J. LaDuca in Support of Application for Award of Attorneys' Fees and Expenses ("LaDuca Decl.").

ESH-AK, under the title *In re LivingSocial Marketing and Sales Practices Litigation*. *See* LaDuca Decl., ¶15**,** Merrick Decl., ¶16.

On or about August 30, 2011, in an effort to reach a prompt resolution of the case, representatives of the parties attended mediation before Judge Infante in San Francisco, California. Merrick Decl., ¶18. While the mediation provided a constructive forum for settlement discussions, it did not result in a settlement. Thereafter, additional settlement efforts were attempted between the parties through a series of ongoing direct discussions and negotiations under the guidance of Judge Infante. *See* LaDuca Decl., ¶17**,** Merrick Decl., ¶18.

On October 20, 2011, the parties appeared before Judge Huvelle for an initial status conference. At that time, Judge Huvelle set a schedule for the filing of a consolidated amended complaint, discovery and briefing on class certification. *See* LaDuca Decl., ¶19**,** Merrick Decl., ¶¶19-20.

On November 4, 2011, after working to combine the facts and claims from the various complaints in a coherent manner, Plaintiffs filed the Complaint. Plaintiffs alleged causes of action for:

1.  Violations of the CARD Act, 15 U.S.C. §1693 *et seq.*;

2.  Violations of State Gift Card Statutes ("State Statutes");

3.  Violations of the District of Columbia Consumer Protection Statute, D.C. Code Ann. §28-3901, *et seq.*;

4.  Breach of Contract;

5.  Quasi Contract/Restitution/Unjust Enrichment; and

6.  Declaratory and Injunctive Relief.

*See* LaDuca Decl., ¶20**,** Merrick Decl., ¶21.

Defendants at all times have denied the allegations raised by Plaintiffs and dispute liability under any of the legal theories asserted by Plaintiffs. Specifically, Defendants dispute that Deal

Vouchers are gift certificates or gift cards within the meaning of the CARD Act, or any other gift certificate or consumer protection statute, and dispute that Plaintiffs are entitled to any form of damages.  *See* LaDuca Decl., ¶12**,** Merrick Decl., ¶13.

On November 18, 2011, Defendants moved to dismiss and strike portions of the Complaint ("Motion to Dismiss") (Dkt. No. 12).  Defendants argued, *inter alia,* that the Complaint failed to allege that Plaintiffs suffered any harm as the result of LivingSocial's alleged misconduct. Specifically, Defendants contend that Plaintiffs failed to explain why they allegedly were unable to redeem their Deal Vouchers; whether Defendants' imposition of expiration dates on the Deal Vouchers played any role in Plaintiffs' alleged inability to redeem their Deal Vouchers; whether Plaintiffs made any attempt to redeem their Deal Vouchers before or after the purported expiration date and were denied by the Merchant the opportunity to recoup the Deal Voucher's bargain; and whether Plaintiffs' recouped the paid or promotional values of their Deal Vouchers through a refund from LivingSocial.  *See* LaDuca Decl., ¶21**,** Merrick Decl., ¶20.

Class Counsel, on behalf of Plaintiffs, prepared and filed the opposition to the Motion to Dismiss on December 9, 2011.  Plaintiffs argued that the Complaint sufficiently alleged standing under both the CARD Act and various state gift certificate statutes and that they suffered damages as a result of LivingSocial's imposition of allegedly illegal expiration terms. Defendants filed their reply on December 19, 2011.  *See* LaDuca Decl., ¶22**,** Merrick Decl., ¶23.

During the pendency of the Motion to Dismiss, the parties engaged in a discovery process that was hard fought and contentious.  Class Counsel prepared and served extensive written discovery, in the form of interrogatories and document requests, on both LivingSocial and Jack's Boathouse.  Merrick Decl., ¶24.  Defendants likewise propounded, on the Named Plaintiffs, eight sets of interrogatories, totaling 32 individual interrogatories, and eight sets of document requests, totaling 272 individual requests.  *Id.*, ¶25.  Class Counsel coordinated with the other Plaintiffs'

- 9 -

Counsel and prepared responses on behalf of each of the Named Plaintiffs to Defendants' written discovery. *Id.*, ¶26. Class Counsel also produced over 400 pages of responsive documents on behalf of all Plaintiffs. *See* LaDuca Decl., ¶25**,** Merrick Decl., ¶26.

The parties engaged in a lengthy meet-and-confer process, beginning on December 29, 2011, in an effort to resolve disagreements over the scope of Plaintiffs' requests, particularly with respect to certain financial information held by LivingSocial and the Company's internal communication. Merrick Decl., ¶27. Despite concerted efforts spanning more than four months, the parties were unable to resolve all points of disagreement. As a result, Class Counsel, on behalf of Plaintiffs, filed a motion to compel further responses from Defendants on April 16, 2012 ("Motion to Compel") (Dkt. No. 20). The Motion to Compel was fully briefed by the parties in May 2012. *See* LaDuca Decl., ¶26**,** Merrick Decl., ¶27.

While Defendants objected to a number of Plaintiffs' document requests, Defendants produced 29,000 documents, in excess of 73,000 pages, and more than 100 megabytes of electronically stored information. Merrick Decl., ¶28. Class Counsel reviewed and analyzed these materials, which concerned the expiration of LivingSocial Deal Vouchers and LivingSocial's Terms and Conditions; financial information relating to the Deal Vouchers sales and billings; representative versions of agreements between LivingSocial and Merchants regarding Deal Vouchers sold between August 22, 2010 and November 4, 2011; and various agreements between LivingSocial and Merchants for the deals identified in the Complaint. *See* LaDuca Decl., ¶27**,** Merrick Decl., ¶28.

In addition to engaging in written discovery, Defendants sought the depositions of all of the eight Named Plaintiffs. Merrick Decl., ¶29. After the parties were able to resolve a dispute concerning the proper venues for the depositions, Defendants ultimately elected to proceed with depositions of three of the Named Plaintiffs. Class Counsel coordinated with other Plaintiffs' Counsel to prepare the Named Plaintiffs for the depositions and defend the depositions. Plaintiff

Dawn Abbott was deposed in Seattle, Washington on May 28, 2012.  Plaintiff Melissa Forshey was deposed in Washington, DC on May 30, 2012.  Plaintiff Cara Lauer was deposed in Seattle, Washington on June 5, 2012.  *See* LaDuca Decl., ¶28, Merrick Decl., ¶29.

On or about June 14, 2012, representatives of the parties attended a second in-person mediation before Judge Infante in San Francisco, California.  Merrick Decl., ¶31.  While the parties were unable to reach a settlement, they were able to substantially narrow the areas of dispute and discussed a workable structure for settlement.  Thereafter, additional settlement efforts were attempted between the parties with assistance from Judge Infante, which resulted in the parties agreeing to the major settlement terms.  *See* LaDuca Decl., ¶30, Merrick Decl., ¶31.

Over the course of the months that followed, Class Counsel and Defendants' Counsel worked tirelessly to finalize the terms of the Settlement, exchanging numerous versions of the draft Settlement Agreement and multiple versions of the motions and memoranda in support of preliminary approval and motions and memoranda in support of conditional class certification, as well as related Settlement exhibits, including the email and long-form class notices, claim form, opt-out/exclusion request form, proposed fairness hearing order, and proposed final judgment.  In the process of drafting the Settlement Agreement and preparing the exhibits, numerous disagreements concerning the terms of the Settlement arose and the Settlement came close to collapsing on multiple occasions.  After protracted negotiations, the parties were able to finalize all details of the Settlement Agreement, as well as a mutually acceptable Joint Motion for Preliminary Approval of Settlement, which were filed with accompanying supporting documents on October 19, 2012 (Dkt. Nos. 23 and 24).  *See* LaDuca Decl., ¶32, Merrick Decl., ¶¶33-34.

Notably, the parties' negotiations throughout the settlement discussions were contentious and at arms' length over the course of many months.  *See* LaDuca Decl., ¶35, Merrick Decl., ¶36.  The parties conducted themselves with utmost professionalism, ethics, and competence throughout the

process. *Id.* It was only after the parties were able to reach an agreement on the material terms of the Settlement did they negotiate fees and expenses. *Id.* After considerable deliberation, Defendants agreed to pay attorneys' fees and expenses to Plaintiffs not to exceed $3,000,000, separate and apart from the Settlement Fund. *Id.* Defendants also agreed to pay incentive awards of $2,500 to each of the Named Plaintiffs who were deposed and $500 to the Named Plaintiffs who were not deposed for their time and effort in participating in this Action, for a total of $10,000. §2.6. *See* LaDuca Decl., ¶35.

On October 25, 2012, after a hearing, the Court entered the Preliminary Approval and Provisional Class Certification Order (Dkt. No. 28) requiring notice to the Settlement Class and establishing the remaining deadlines for the litigation, including the final approval hearing scheduled for March 7, 2013. *See* LaDuca Decl., ¶37, Merrick Decl., ¶38.

## III.   PLAINTIFFS' REQUESTED AWARD FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE AND SUPPORTED BY CIRCUIT PRECEDENT

Federal Rule of Civil Procedure 23 provides, in pertinent part, that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Awards of attorneys' fees serve to "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and therefore discourage future misconduct of a similar nature." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 356 (E.D.N.Y. 2010). "'It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to . . . attorneys' fees based upon the benefit obtained.'" *Trombley*, 826 F. Supp. 2d at 206 (quoting *In re: Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011)); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). As the U.S. Supreme Court has noted, the consensual resolution of attorneys' fees, as achieved here, is the ideal. *See Hensley v. Eckerhart*, 461 U.S. 424,

437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

An award of attorneys' fees by the district court is reviewed for abuse of discretion.  *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).  "'A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *See Trombley,* 826 F. Supp. 2d at 194.

"In the D.C. Circuit, there is no single test for determining whether a proposed class action settlement should be approved and the relevant factors may vary depending on the circumstances." *Id.*  "Two accepted methods for calculating attorneys' fees are the lodestar and the percentage-of-the-fund methods."  *See Fresh Kist Produce, L.L.C. v. Choi Corp*, 362 F. Supp. 2d 118, 127 (D.D.C. 2005).  However, courts in the D.C. Circuit have determined "that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Swedish Hosp.*, 1 F.3d at 1271.  In common fund cases, fee awards "range from fifteen to forty-five percent."  *Vista Healthplan*, 246 F.R.D. at 364; *Wells*, 557 F. Supp. 2d at 14 (finding request for attorneys' fees amounting to 45% of common fund to be reasonable); *In re Lorazepam & Clorazepate Antitrust Litig.* ("*Lorazepam I*"), 205 F.R.D 369, 383 (D.D.C. 2002).

Plaintiffs here seek an award of $3,000,000 for attorneys' fees and expenses, an amount which Defendants have agreed not to oppose.  *See* §2.5(a).  The requested fee amount is warranted, considering the comprehensive settlement benefits achieved on behalf of the Settlement Class, as well as the time, effort and resources expended by Plaintiffs' Counsel in successfully prosecuting this Action to conclusion.  As set forth below, the requested award is fair and reasonable under the percentage-of-recovery analysis, when examined as a percentage of the total constructive common

- 13 -

fund.  Moreover, although not required in this Circuit, the requested award is reasonable when examined under a lodestar cross-check.

A.    **The Requested Fee Award Is Reasonable under the "Constructive Common Fund" Percentage of Recovery Analysis**

Courts in the D.C. Circuit have determined that when funds for payment of claims, administration and attorneys' fees and expenses are separately paid, those amounts may be aggregated to calculate the "'constructive common fund.'"  *See, e.g.*, *Chilcott*, 522 F. Supp. 2d at 121.  A "constructive common fund" is a fund generated by a class action settlement agreement treated as the class fund for purposes of both: (1) determining whether to use the "percentage of the fund" method of computing a reasonable attorneys' fee (as opposed to the "lodestar" method); and also (2) determining the total value of the settlement to which the percentage is applied in computing a fee.  *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25067, at *36 (D.D.C. July 16, 2001).  The rationale for treating all amounts paid by the defendant as a result of the settlement as the common fund is that all amounts paid by the defendant represent a "package deal," best viewed as the total class recovery.  *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).[6]  Courts in this Circuit have determined that the separate payment of fees and/or administration costs does not preclude consideration of settlements as common fund settlements.

---

[6]    The court in *Johnston* found that defendant's payment of attorneys' fee directly to plaintiffs' counsel, rather than those fees being deducted from a common fund, did not change the character of the settlement as a common fund because:

> Although under the terms of each settlement agreement, attorneys fees technically derive from the defendants rather than out of class' recovery, in essence the entire settlement amount comes from the same source.  The award to the class and the agreement on attorneys fees represent a package deal.  Even if the fees are paid directly to the attorneys, those fees are best still viewed as an aspect of the class' recovery.

*Johnston*, 83 F.3d at 246.

*See, e.g.*, *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 77 (D.D.C. 2011); *Vista Healthplan*, 246 F.R.D. at 364; *Chilcott*, 522 F. Supp. 2d at 122.  Courts have also determined that the value of injunctive relief may be considered part of a common fund.  *See Sheppard*, 2002 WL 2003206, at *7.

Here, the constructive common fund includes $4,500,000 for the payment of claims to the Settlement Class and certain settlement administration costs, the requested award of $3,000,000 for attorneys' fees and expenses, approximately $80,000 (LaDuca Decl., ¶46) in additional settlement administration costs separately borne by LivingSocial, and the value of the injunctive relief, conservatively valued at $54 million at a minimum.  *See* Hoinsky Report, ¶¶15-16.  As discussed below, the injunctive relief provisions of the Settlement provide a clear and tangible benefit to Class Members and purchasers of LivingSocial Deal Vouchers that should be considered by the Court in determining the common fund amount and the reasonableness of the percentage of recovery.

### 1.    The Court May Consider the Value of the Injunctive Relief in Determining the Common Fund Amount

Both the D.C. Circuit and the Federal Rules Advisory Committee have recognized that injunctive relief may properly figure in a reasonable award of attorneys' fees.  *See Copeland v. Marshall*, 641 F.2d 880, 907 (D.C. Cir. 1980) ("That this litigation sought and obtained substantial equitable relief is highly relevant to the award of a large fee."); Advisory Committee Notes to Fed. R. Civ. P. 23(h) (2003 Amendments) ("[I]t is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fee award."); *see also In re Shering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *45 (D.N.J. Mar. 26, 2010) ("'Attorneys' fees are awardable even though the benefit conferred is purely nonpecuniary in nature.'").  Indeed, it is well-settled that "[t]he settlement fund should be based on the ***benefit*** to the class and not the cost to the defendant."  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 305 (E.D. Pa. 2003).

- 15 -

Where, as here, the injunctive relief achieved under the Settlement advances an important public interest, the Court should duly consider such relief in its determination of the attorneys' fee award. *Copeland*, 641 F.2d at 907. In this case, Class Counsel, after extensive, hard-fought litigation, were able to negotiate and achieve important business practice reforms that directly address LivingSocial's systematic use of misleading and overly restrictive expiration terms on its Deal Vouchers. Before settlement was achieved, LivingSocial typically imposed expiration dates of less than a year on its Deal Vouchers. Complaint, ¶¶4-6, 31. As a result of this Settlement, LivingSocial must now ensure that ***no expiration date*** is imposed on the purchase price (paid value) of any Deal Voucher that is shorter than the five-year period of expiry set forth by the CARD Act or any applicable state law, whichever is longer, for a period of three years following the Effective Date of Settlement. §2.4(a). This injunctive relief effectively ensures that Deal Vouchers sold to consumers will be in compliance with the five-year period of expiry set forth by the federal CARD Act, as well as the period of expiry of the applicable state gift certificate law. In other words, LivingSocial must now honor the paid value of its Deal Vouchers for a minimum of five years, or even longer, depending on the state gift certificate laws (some of which, like California, forbid expiration). Moreover, LivingSocial must provide clear and conspicuous disclosures explaining the difference between the paid value and promotional value on its Deal Vouchers, as well as on its Company website. *Id.* Because the injunctive relief provisions provide a meaningful and tangible benefit to Class Members, as well as to prospective purchasers, and advances an important public interest (*i.e.*, the enforcement of federal and state gift certificate statutes), the value of such relief should be considered in the determination of fees. *Copeland*, 641 F.2d at 907 ("Where, as here, the relief sought is generally nonmonetary, a substantial fee is particularly important if that statutory purpose is to be fulfilled.").

As set forth in the Hoinsky Report, the benefit conferred by the Settlement's injunctive relief provisions is subject to an accurate and reliable valuation using established accounting and business valuation principles. *See First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 523 (E.D. Pa. 2007) (district court relies on plaintiffs' expert's $68 million valuation of business practice reforms in determining award of attorneys' fees). Here, Mr. Hoinsky applies a straightforward present value discount analysis to determine the current dollar value of the ***additional redemptions*** that will ensue from the imposition of the injunctive relief provision requiring LivingSocial to honor the paid value of its Deal Vouchers for the extended period of five years, consistent with the CARD Act. Hoinsky Report, ¶¶12-16. Mr. Hoinsky first determines LivingSocial's projected revenue growth over the next five years, using publicly available information concerning LivingSocial and the "Daily Deal" industry. *Id.*, ¶¶13-14. Because LivingSocial's total revenue is largely based on the revenue the Company records from each Deal Voucher sold, *i.e.,* the Deal Voucher's "paid value" (*Id.*, ¶¶9-11, 13-14), Mr. Hoinsky is then able to ascertain the aggregate value of the five-year extended period of redemption applicable to the paid value of Deal Vouchers, as mandated by the Settlement. *Id.*, ¶¶15-17. Mr. Hoinsky values the benefit from the extended period of redemption at three levels of additional redemption – 2.5%, 5%, and 10% – which is a reasonable and conservative approach, given that the rates of non-redemption in the Daily Deal industry are documented to be higher. *Id.*, ¶15. Mr. Hoinsky finds that at the lowest, most conservative level of additional redemption, 2.5%, the present value of the benefit from the extended five-year period of redemption is $54,040,699.[7] *Id.* This present value calculation yields the current dollar value of the additional redemptions that are projected to occur once LivingSocial is required under the Settlement to honor

---

[7]      Mr. Hoinsky finds that at the 5% level of additional redemption, the present value of the benefit from the extended five-year period of redemption is $108,081,397, and at 10%, the present value of the benefit is $216,162,793. *Id.*, ¶14.

the paid value of its Deal Vouchers for at least five years, consistent with the minimum expiration period set forth by the CARD Act. *Id.*, ¶16.

The projections contained in the Hoinsky Report are particularly conservative considering that Mr. Hoinsky only considers the value of additional redemptions resulting from the minimum five-year expiration period under the CARD Act. *Id.*, ¶7. Certain states have expiry periods that well exceed five years; indeed, in some states like California, gift certificates never expire. Complaint, ¶¶137-164; Hoinsky Report, ¶6. Likewise, the Hoinsky Report does not project or assign a value to the component of the Settlement that requires LivingSocial to permit purchasers to receive a no-questions-asked refund within seven days of purchase, which certainly provides another tangible benefit to consumers. *Id.*, ¶8.

Accordingly, when the value of the injunctive relief (at the low end of $54 million) is aggregated with the fund for the payment of claims $4,500,000, the additional notice costs (roughly $80,000) and the agreed-upon amount for attorney's fees and expenses ($3,000,000), the total constructive common fund is approximately $62,000,000. *See, e.g.*, *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *36. Plaintiffs' requested fee award of $3,000,000 amounts to less than 5% of the common fund, which is well below the range of acceptable percentage-of-recovery in this Circuit, and therefore is fair and reasonable. *See Swedish Hosp.*, 1 F.3d at 1272 (noting "a majority of common fund class action fee awards fall between twenty and thirty percent"); *Wells*, 557 F. Supp. 2d at 14 (fee award of 45% of common fund was reasonable).

The appropriateness of Plaintiffs' requested fee award is further highlighted when examined under the reasonableness factors set forth in *In re Lorazepam & Clorazepate Antitrust Litig.* ("*Lorazepam II*"), No. MDL 1290(TFH), 2003 U.S. Dist. LEXIS 12344, at 27* (D.D.C. June 16, 2003), discussed below.

### 2.     Plaintiffs' Requested Award Is Reasonable in Light of the *Lorazepam* Factors

Although the D.C. Circuit has not developed a formal list of factors to consider in evaluating

fee requests in percentage-of-the-fund cases, former Chief Judge Hogan identified a list of seven,

non-exclusive factors relevant to the fee inquiry in *Lorazepam II*.  These factors include:

> (1) The size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the
> attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of
> nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and
> (7) the awards in similar cases.

*Id.* (cited in *Baan Co.*, 288 F. Supp. 2d at 17); *see also Vitamins*, 2001 U.S. Dist. LEXIS 25067, at

*60-*61 (applying same reasonableness factors).

The *Lorazepam* factors, when applied to the particular circumstances of the case, counsel in

favor of granting the full fee award sought by plaintiffs.

### 3.     The Size of the Fund and Number of Persons Benefitted Justify the Requested Fee Award

There is no question that Class Counsel achieved an exceptional result on behalf of Plaintiffs

and the Settlement Class.  The Settlement negotiated by Class Counsel provides for comprehensive

monetary and injunctive relief, both on a retroactive and prospective basis, to millions of consumers

nationwide who were harmed by LivingSocial's practice of marketing and selling Deal Vouchers

with restrictive expiration periods.  In the aggregate, the economic and injunctive relief achieved on

behalf of the Class is conservatively valued at more than $50 million dollars.  *See* Section III.A.1.

Under the terms of the Settlement Agreement, Class Members with expired, unredeemed Deal

Vouchers (*i.e.*, all consumers who did not receive the benefit of their bargain) will be entitled to

receive a cash payment for up to 100% of the paid value of their Deal Voucher – essentially the full

and complete value of their purchase.  It is questionable – even if this case were successfully

prosecuted through trial – whether Class Members would be able to obtain anything more than all of

the expired paid value of their Deal Vouchers.  Additionally, millions of Class Members will benefit

from the enhanced disclosures explaining the distinction between paid value and promotional value,

the substantially extended expiration terms, and the improved refund policies that are provided under

the Settlement.

        **4.**      **The Class Was Represented by Skilled Attorneys Who Efficiently Litigated the Case and Achieved an Impressive Early Resolution**

As detailed in the declarations of Class Counsel and Plaintiffs' Counsel submitted herewith,[8]

the attorneys representing the Settlement Class are highly skilled class action lawyers possessing

decades of experience, who have collectively recovered billions of dollars for consumers.  *See*

LaDuca Decl., Merrick Decl., Plaintiffs' Counsel Decls.  The attorneys representing the Settlement

Class managed to achieve an excellent resolution of the case with relative speed and efficiency.  As

detailed in the LaDuca Decl., ¶13 and Merrick Decl., ¶14, Class Counsel made a concerted effort

early on in the litigation to make sure that redundancy and duplication of effort were avoided.  Due

to Class Counsel's skilled advocacy and persistence, the parties were able to achieve a global

resolution of the MDL before the onset of expensive and protracted summary judgment and expert

proceedings.  And, had no settlement been achieved, the parties would have continued with costly

discovery and would have conducted numerous depositions all over the country.  Courts in this

Circuit have recognized that one of the benefits achieved here – the expeditious and efficient

resolution of the case – is an important consideration in determining a reasonable percentage-of-the-

fund recovery because it aligns the interest of counsel with the interests of the class.  *See, e.g.,*

---

[8]      In addition to the declarations of Class Counsel, other Plaintiffs' Counsel submitted supporting declarations, including the following firms: Halunen & Associates; Bonnett Fairbourn Friedman & Balint, P.C.; Audet & Partners, LLP; Carney Gillespie & Isitt PLLP; Bolen Robinson & Ellis, LLP; Levin, Fishbein, Sedran & Berman; Wites & Kapetan, P.A.; Carlson Legal; Van Eyk & Moore, PLLC; and Myles A. Schneider & Associates, LTD.

*Lorazepam I*, 205 F.R.D. at 383; *Trombley*, 826 F. Supp. 2d at 205.  Also indicative of the skill employed by the lawyers here is the outstanding result achieved:  Settlement Class Members may seek up to 100% return of their payment for their expired Deal Vouchers for any reason; they have no obligation to do further business with LivingSocial; and they have no obligation to request that the Merchant honor all or part of the LivingSocial Deal Voucher.  Indeed, the transformative injunctive relief was so exhaustively negotiated to the extent that even the minimum font size for the paid value and promotional value of Deal Vouchers was a term of the Settlement Agreement.  The Settlement therefore provides an effective and straightforward mechanism for consumers harmed by Defendants' conduct to recover the complete monetary value of their losses.

### 5.  This Complexity and Duration of This Litigation Support the Requested Fee Award

This Action involved highly complex litigation in an area of untested law, potentially requiring the application of not only the CARD Act, a relatively new federal law, but the laws of at least 27 states with gift certificate statutes.  Indeed, liability has always been in dispute here, as Defendants argued from the outset that Deal Vouchers were not gift certificates or gift cards under federal and state gift certificate laws and therefore such laws were not applicable to their business practices.  Defendants also argued that the Named Plaintiffs (and Class Members by extension) were unable to demonstrate cognizable damages in support of their claims.  Because the jurisprudence concerning the application of the CARD Act and other gift certificate statutes to "Daily Deal" vouchers is unresolved and non-dispositive, the parties would have likely continued to litigate this Action through trial and even beyond had no settlement been achieved.

Moreover, while Class Counsel were able to achieve this Settlement in an efficient manner before summary judgment and the completion of discovery, this certainly was not a situation where resolution of the case was readily achieved soon after the case was filed.  Quite the contrary, the litigation was contentious and difficult, from the outset through the settlement negotiations.  Indeed,

by the time of the Fairness Hearing, Plaintiffs will have spent two years litigating this Action against sophisticated and aggressive defense counsel,[9] who filed a complex Motion to Dismiss and engaged in a hotly-contested, protracted discovery process.  Clearly, "'this settlement does not come too early to be suspicious nor too late to be a waste of resources.'"  *Lorazepam II*, 2003 U.S. Dist. LEXIS 12344, at *16-*17.  The complexity and duration of this litigation thoroughly support the requested fee and expense award.

<h4 style="text-align:center">6.      The Risk of Nonpayment Was Significant</h4>

Class Counsel also assumed a high degree of risk in bringing and pursuing this Action to a successful conclusion.  From the beginning, Class Counsel was confronted with a number of complexities and challenges, including: (i) the novel question as to whether the federal CARD Act and other gift certificate statutes applied to the LivingSocial Deal Vouchers, which Defendants vehemently dispute; (ii) potential caps on damages for the CARD Act claims; (iii) as this Court noted at the scheduling conference in November 2011, the existence of varying state laws that potentially applied to the claims of the named Plaintiffs and Class Members, which Defendants argued would be unmanageable if pursued as a nationwide class action; and (iv) the number of cases that were initially filed and number of counsel involved, which Class Counsel effectively coordinated and organized.  LaDuca Decl., ¶39.  Class Counsel deftly navigated these challenges to achieve an outstanding result for the Class.  As detailed in the section below and the discussion of lodestar in Section III.B., *supra*, the successful resolution of this litigation required Class Counsel to commit a significant amount of time, personnel and expenses to this litigation on a contingency basis with absolutely no guarantee of being compensated in the end.

---

[9]      Defendants were represented by Cooley LLP, one of the "world's top litigation firms," with 700 lawyers worldwide.  www.cooley.com/67335.

### 7.     Class Counsel Devoted Substantial Time and Resources to This Litigation

As set forth in the supporting declarations and detailed in Section III.B., *supra*, Plaintiffs' Counsel have collectively spent more than 4,012 hours of attorney and litigation support time on this Action.  LaDuca Decl., ¶53 & Table 1; Plaintiffs' Counsel Decls.  The number of hours that Plaintiffs' Counsel has devoted to pursuing this litigation is appropriate and reasonable, considering, among other factors:  (1) the scope and high-stakes nature of this large, nationwide MDL proceeding; (2) the novelty and complexity of the claims asserted, including the federal CARD Act and state gift certificate law claims; (3) the hard-fought and lengthy nature of the settlement negotiations; (4) the discovery that the parties engaged in; and (5) the number of cases, parties, and law firms involved.  LaDuca Decl., ¶51.

The extensive and persistent efforts of counsel to bring this litigation to a successful resolution are described at length and in detail in the LaDuca and Merrick Declarations, as well as those of Plaintiffs' Counsel.  *See generally*, LaDuca Decl., Merrick Decl., and Plaintiffs' Counsel Decls.  From the outset of the litigation, Class Counsel endeavored to coordinate the efforts of counsel, so as to maximize the impact of their collective resources, while minimizing duplication of efforts and streamlining the prosecution of the case.  LaDuca Decl., ¶13.  This was not a simple task given the six federal class actions that were consolidated as part of the MDL proceedings before this Court.  *Id.*, ¶34.  Class Counsel carefully supervised and managed the efforts of the other Plaintiffs' Counsel, consulted appropriate counsel concerning litigation and settlement strategies and positions, assigned discrete tasks to various counsel and kept Plaintiffs and counsel abreast of developments in the litigation and settlement negotiations.  *Id.*, ¶14.

Prior to, and during the course of the litigation, Class Counsel, with the assistance of other Plaintiffs' Counsel, conducted an extensive investigation into the legal and factual issues involved in this Action.  *Id.*, ¶44.  Notably, Plaintiffs' central claim was brought under the federal CARD Act – a

- 23 -

new and largely untested statute enacted by Congress to address, *inter alia*, misleading and unfair practices concerning the sale and marketing of gift certificates. *Id.* Class Counsel therefore were required to conduct extensive due diligence on the legislative history and application of that statute to the particular circumstances of the case. *Id.* Moreover, Plaintiffs asserted claims based on a host of state gift certificate laws nationwide, each with different statutory language and penalties. *Id.* And, as a further complication, the scope of litigation encompassed millions of Deal Vouchers sold by LivingSocial, involving a host of different products and services sold around the country with variances in their terms and conditions. *Id.*

Further, Class Counsel engaged in extensive and contentious arm's-length negotiations with Defense Counsel for nearly a year to achieve the proposed Settlement. *Id.*, ¶45. This included two full-day sessions with Judge Infante and numerous follow-up telephonic mediation sessions with Judge Infante, as well as significant direct communications with defense counsel. *Id.* Even after the substantive terms of the Settlement were set, the parties exchanged numerous versions of the Settlement Agreement and the exhibits thereto and conducted multiple teleconferences to resolve a variety of issues prior to filing for preliminary approval with the Court. *Id.* Class Counsel also worked extensively with defense counsel and the Settlement Administrator on the launch of the settlement website, preparing the electronic Claim Form, addressing notice issues, addressing software programming issues on the website and answering inquiries from Class Members. *Id.*, ¶46.

Class Counsel's responsibilities will not end with final approval. Class Counsel will assist with Class Member inquiries and work with the Settlement Administrator and Defendants on any issues that may arise with respect to the Settlement. *Id.*, ¶47. Further, Class Counsel may expend further time and effort to resolve any objections that are lodged and litigate any appeals that result. *Id.* Past experience demonstrates that this ongoing work will add significant time to the work already undertaken in this case. *Id.*

804800_1

In short, the hours that Class Counsel and the other Plaintiffs' Counsel devoted to this Action were reasonable and necessary, particularly given the contentious nature of the settlement negotiations with Defendants.  *Id.*, ¶51.  Indeed, their hard work and commitment ultimately paid off, resulting in a comprehensive settlement that offers what essentially amounts to **complete** relief to Class Members all across the country who purchased LivingSocial Deal Vouchers.  *Id.*, ¶34.

### 8.     The Fee and Expense Award Sought Here Is Consistent With Precedent

As this Court has noted, attorneys' fee awards of one-third were the median in a study of 289 settlements ranging from $1 million to $50 million.  *Baan Co.*, 288 F. Supp. 2d at 19 n.1.  Numerous courts in this Circuit have awarded fees of 30% or more.  *See Wells*, 557 F. Supp. 2d at 7 (approving 45% attorneys' fee award); *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *72 (awarding 34%); *Radosti*, 760 F. Supp. 2d at 78 (awarding 33%); *Lorazepam II*, 2003 WL 22037741, at *9 (awarding 30%).  As detailed above, Plaintiffs seek an award of fees and expenses of $3,000,000, which represents **less than 5%** of the common fund – well within the acceptable range of percentage of recovery allowed in this Circuit.

Accordingly, in light of the foregoing *Lorazepam* factors,[10] Plaintiffs' fee and expense request is amply justified by the particular circumstances of this case and the exemplary settlement achieved on behalf of the Class.

_____

[10]      Another factor to be considered in determining the reasonableness of the fee amount is the presence or absence of substantial objections.  *Lorazepam II*, 2003 U.S. Dist. LEXIS, at *27.  Here, the deadline to object is February 8, 2013; Plaintiffs therefore will address in detail any objections in their subsequent reply and their final approval brief.  To date, only four objections have been submitted to the Settlement Administrator – only one of which appears to challenge Plaintiffs' fee request.  In addition to improperly serving the objection, this objector argues, without any analysis or support, that attorneys' fees should only be $2,000.  Again, Plaintiffs will substantially address this and other objections on reply.

**B.**     **Plaintiffs' Fee and Expense Request Is Also Fair and Reasonable Under the Lodestar Analysis**

Plaintiffs' requested award of $3,000,000 is also justified when viewed in light of Plaintiffs' Counsel's lodestar.  *See Swedish Hosp.*, 1 F.3d at 1271.  Under the lodestar method, a presumptively reasonable fee award can be determined by multiplying the number of hours reasonably expended by plaintiffs' counsel by their reasonable hourly rate.  *See Hensley*, 461 U.S. at 433.  Plaintiffs in this case are requesting a fee award that reflects only a modest multiplier of less than 1.5 times their counsel's actual lodestar incurred.

**1.**     **Plaintiffs' Counsel Devoted a Reasonable Number of Hours to This Litigation**

Under the lodestar method, courts first looks at the number of hours spent by counsel on the case.  *Id.*  Here, in support of the lodestar determination, Plaintiffs have submitted the sworn declarations of Class Counsel and 10 other Plaintiffs' Counsel, attesting to their total hours devoted to the case, their hourly rates, their experience, and describing their efforts to prosecute this Action. Table 1 in the LaDuca Decl. summarizes the total hours worked, the hourly rates, and fee amounts for each of the law firms involved in the prosecution of this Action.  In addition, at the Court's request, Plaintiffs' Counsel have submitted detailed time records demonstrating how those hours were spent.

As set forth in the supporting declarations, Plaintiffs' Counsel have spent more than 4,012 hours of attorney and litigation support time on this Action.  LaDuca Decl., ¶53 & Table 1.  As detailed in Section III.A.6., *infra*, the hours spent by Plaintiffs' Counsel on this litigation may be significant, but are appropriately and reasonably incurred, given the scope and high-stakes nature of this large, nationwide MDL proceeding, the novelty and complexity of the claims asserted, including the federal CARD Act and state gift certificate law claims, the hard-fought and lengthy nature of the

settlement negotiations, the discovery that the parties engaged in, and the number of cases, parties, and law firms involved.  *Id.*, ¶51.

## 2.  Plaintiffs' Counsel's Hourly Rates Are Reasonable

The hourly rates of Class Counsel and other Plaintiffs' Counsel, as detailed in their declarations, are also fair and reasonable.  Under the lodestar method, "an attorney's usual billing rate is presumptively the reasonable rate, provided that the rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993).

An attorney's actual billing rate is presumptively appropriate to use for lodestar analysis.  *See MacClarence v. Johnson*, 539 F. Supp. 2d 155, 158 (D.D.C. 2008).  Affidavits indicating "'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'" are typically sufficient to establish the reasonableness of the rates.  *Covington v. District of Columbia*, 57 F.3d 1101, 1108 (D.C. Cir. 1995).  Courts may also use survey data in evaluating the reasonableness of attorneys' fees.  *See, e.g.*, *DL v. District of* Columbia, 256 F.R.D. 239, 242 (D.D.C. 2009).

As set forth in Table 1 of the LaDuca Decl., counsel's hourly rates in this litigation range from $225 to $850, with the high-end reserved for only the most senior attorneys working on the case.  Further, the hourly rates submitted by Class Counsel and other Plaintiffs' Counsel reflect their actual billing rates; thus, their hourly rates are presumptively appropriate.  *See* Plaintiffs' Counsel Decls.; *see also MacClarence*, 539 F. Supp. 2d at 158.  Class Counsel and other Plaintiffs' Counsel are highly-respected members of the bar with extensive experience in prosecuting high-stakes complex litigation who have collectively recovered billions of dollars in class actions.  *See* Exhibit 1 to LaDuca Decl.; *see also* Plaintiffs' Counsel Decls.  Indeed, Plaintiffs' Counsel's rates are

appropriate for complex, nationwide litigation and reflect a high level of experience and skill necessary for success in this litigation.

Survey data also supports the reasonableness of the hourly rates sought here. PricewaterhouseCoopers ("PwC") recently published a comprehensive survey of the billing rates and salaries of associates and partners of law firms nationwide. LaDuca Decl., Ex. 2 (PwC's 2011 Billing Rate & Associate Salary Survey). Courts rely on such survey data as evidence of prevailing hourly rates. *See Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharm., Inc.*, 51 F. Supp. 2d 302, 305 (S.D.N.Y. 1999). Class Counsel's rates are comparable to the established law firm rates documented in PwC's survey. *See* LaDuca Decl., Ex. 2 at 6 (partners in large firms charge up to $925 per hour).

Notably, Class Counsel's customary rates have been previously approved by the courts. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 778-80, 804-05 (S.D. Tex. 2008) (approving Robbins Geller's hourly rates after reviewing them for reasonableness); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 492 (E.D. Pa. 2010) (approving entire settlement including attorneys' fees as fair reasonable and adequate); *In re Kitec Plumbing Sys. Prods. Liab. Litig.*, No. 3:09-md-02098-F, Order Certifying Class for Settlement and Approving Class Action Settlement (N.D. Tex. 2011) (Dkt. No. 155) (approving attorneys' fee award after review); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 324-25 (W.D. Tex. 2007) (approving hourly rates of Robbins Geller and Bonnett Fairbourn); *In re Telik Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (approving hourly rates of Robbins Geller).

Plaintiffs' Counsel's hourly rates, which are on par with the prevailing market rates of attorneys in this Circuit, are reasonable, particularly given counsel's demonstrated skill, experience and reputation in the area of complex class action litigation. As such, Plaintiffs Counsels' hourly rates are reasonable for purposes of lodestar consideration.

### 3.  Plaintiffs' Counsel Invested a Significant Amount of Time and Resources into This Case

To date, Plaintiffs' Counsel have collectively expended more than ***4,012.50 hours***, totaling more than ***$2,037,278 in lodestar***, and have incurred more than ***$43,297 in expenses*** prosecuting this Action for the benefit of the Settlement Class. *See* LaDuca Decl., ¶5 & Table 1 and Table 2. As discussed above, and detailed in the LaDuca Declaration submitted concurrently herewith, Plaintiffs' Counsel vigorously litigated this Action and were challenged by aggressive, skilled and well-funded Defense Counsel every step of the way. *See generally*, discussion, *supra*, at Section II.

To effectively prosecute this very large and complex class action, Class Counsel had to commit a significant amount of time, personnel and expenses to this litigation on a contingency basis with absolutely no guarantee of being compensated in the end. Such efforts included, but were certainly not limited to: (1) investigating the factual and legal claims and filing this Action; (2) coordinating the large number of law firms that filed actions; (3) propounding and responding to discovery; (4) moving to compel discovery after a protracted meet and confer process; (5) preparing clients for and defending depositions; (6) engaging in an intensely-contested and costly mediation before achieving this Settlement; (7) engaging in hard-fought settlement negotiations with Defendants spanning almost a year; (8) negotiating the Settlement Agreement and the exhibits thereto; (9) answering many Class Member inquiries regarding the Action, the Settlement, Claims Forms and other matters concerning their claims; and (10) assisting the Claims Administrator with the settlement website, electronic Claim Form and notice issues. LaDuca Decl., ¶51. Despite the significant risks and uncertainty, Class Counsel obtained an outstanding result on behalf of Class Members who purchased LivingSocial Deal Vouchers nationwide.

4.    **Plaintiffs' Fee Request Is Reasonable in Light of the Contingent Nature of the Fee and Class Counsel's Ongoing Work**

Finally, Plaintiffs' fee request is reasonable in light of the risk that Plaintiffs' Counsel would receive nothing and all of the future work and expenses that will be incurred by Class Counsel under the Settlement, which is not included in their current lodestar.  This includes all pre- and post-approval work such as overseeing claims administration, responding to Class Member communications, addressing any claims disputes, appeals, and handling any other issues that may arise under the Settlement.  *Id.*, ¶47.  This future work is substantial and could potentially last for many months, and it will undoubtedly erode the modest multiplier requested.  *Id.*

In sun, Plaintiffs' requested award of $3,000,000 represents a modest multiplier of less than 1.5 times the actual lodestar of $2,037,278 – well within the range that is fair and reasonable in this Circuit.  *See Baan Co.*, 288 F. Supp. 2d at 19-20 (holding that a "multiplier of 2.0 or less falls well within a range that is fair and reasonable"); *Lorazepam II*, 2003 U.S. Dist. LEXIS 12344, at *33 (noting "multiples ranging up to four are frequently awarded in common fund cases when the lodestar method is applied").  This is a reasonable and appropriate multiplier for Plaintiffs' Counsel's efforts, given the exemplary settlement benefits (both monetary and injunctive) achieved on behalf of millions of Class Members; the size, complexity and hard-fought nature of the litigation; and the substantial additional work Plaintiffs' Counsel must undertake to implement the Settlement and conclude the litigation.  *Id.* at *17 ("'Courts have regarded exceptional benefits to a large class as grounds for a higher fee award.'").

IV.    **PLAINTIFFS' EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS**

Included within the $3,000,000 sought by Plaintiffs to be awarded to Class Counsel are expenses necessarily incurred in connection with the prosecution of this Action.  Although Plaintiffs

do not seek an award of expenses in addition to the requested $3,000,000 in attorneys' fees, they have provided an accounting of more than $43,297 incurred by Plaintiffs' Counsel.  *See* LaDuca Decl., ¶54 & Table 2.  Plaintiffs' Counsel incurred reasonable costs during the course of the litigation, including expenses relating to mediation fees advanced by Class Counsel, filing fees, travel expenses, computer research expenses, photocopies, postage, costs of transcripts, and telephone charges, among others detailed in the declarations submitted in support herewith.  *See id.*, ¶55; Plaintiff's Counsel Decls.  All of these costs were necessary and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for the various categories of expenses incurred.  *See id.*, ¶58; Plaintiff's Counsel Decls.  Further, Plaintiffs' Counsel advanced these necessary and reasonable expenses without assurance that they would ever be recouped. Plaintiffs' request for these expenses is fair and reasonable.

**V.     THE COURT SHOULD APPROVE THE INCENTIVE AWARDS OF $2,500 FOR EACH NAMED PLAINTIFF WHO WAS DEPOSED AND $500 FOR THOSE THAT WERE NOT DEPOSED**

Finally, Plaintiffs respectfully request that the Court approve incentive awards in the amount of $2,500 each for Named Plaintiffs Forshey, Lauer and Abbott, each of whom were deposed, and $500 each for the remaining five Named Plaintiffs, Miller, Pullman, Gosling, Arliss and Schultz, for a total of $10,000.

Incentive awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities of representing the class and recognize the time and effort spent in the case.  *See Lorazepam I*, 205 F.R.D. at 369; Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. L. Rev. 1303 (2006) (30% of class actions include incentive awards to class representatives).  Courts have discretion to approve incentive awards based on, *inter alia*, the amount of time and effort spent, the duration of the

litigation, any risk incurred and the personal benefit (or lack thereof) as a result of the litigation.  *See Cobell v. Salazar*, 679 F.3d 909, 922 (D.C. Cir. 2012).

The eight Named Plaintiffs have dedicated a significant amount of time assisting in the litigation of this Action.  Among other things, they assisted Plaintiffs' Counsel in: (1) providing evidence and gathering facts for this case, as well as assisting in the preparation of the complaints that were filed; (2) collecting their documents, and providing responses to Defendants' discovery requests; (3) sitting for deposition in the case of Named Plaintiffs Forshey, Abbott and Lauer; (4) staying abreast of the litigation and settlement negotiations; and (5) reviewing and approving the Settlement.  *See* LaDuca Decl., ¶35.  The requested incentive awards are rather modest in comparison to other awards approved in this District.  *See Trombley*, 826 F Supp. 2d at 207-08 (approving incentive awards of $5,000 each for named plaintiffs); *Chilcott*, 522 F. Supp. 2d at 124 (approving incentive awards of $7,500 each to named plaintiffs); *Wells*, 557 F. Supp. 2d at 9 (approving incentive awards of $10,000 each to named plaintiffs).

The Class Representatives' efforts and time should not go unrecognized.  Thus, Plaintiffs respectfully request that the Court approve the modest incentive award for each of the Class Representatives.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court award Class Counsel $3,000,000 in attorneys' fees and expenses, and award Named Plaintiffs Forshey, Abbott and Lauer $2,500 each, and Named Plaintiffs Miller, Pullman, Gosling, Arliss and Schultz $500 each, for their time and effort as class representatives in this litigation.

Respectfully submitted,

DATED:  January 18, 2013                    CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA (DC Bar 476134)
WILLIAM H. ANDERSON (DC Bar 502380)

s/ Charles J. LaDuca

CHARLES J. LADUCA

507 C Street, NE
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

DATED:  January 18, 2013

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR. (*pro hac vice*)
RACHEL L. JENSEN
THOMAS R. MERRICK
PHONG L. TRAN

s/ John J. Stoia, Jr.

JOHN J. STOIA, JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

WITES & KAPETAN PA
MARC A. WITES
JONATHAN STEPHEN BURNS
4400 N Federal Highway
Lighthouse Point, FL  33064
Telephone:  954/570-8183
954/354-0205 (fax)

CARNEY GILLESPIE ISITT PLLP
CHRISTOPHER ROBERT CARNEY
100 W. Harrison Street, Suite N440
Seattle, WA  98119
Telephone:  206/445-0220

MYLES A. SCHNEIDER & ASSOCIATES,
  LTD.
MYLES A. SCHNEIDER
710 Dodge Avenue, NW, Suite A
Elk River, MN  55330
Telephone:  763/315-1100
877/294-4254 (fax)

- 33 -

BONNETT FAIRBOURN FRIEDMAN
  & BALINT
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602-798-5825 (fax)

AUDET & PARTNERS, LLP
MICHAEL A. McSHANE
221 Main Street, Suite 1460
San Francisco, CA  94105
Telephone:  415/568-2555
415/576-1776 (fax)

HALUNEN & ASSOCIATES
CLAYTON D. HALUNEN
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  612/605-4098
612/605-4099 (fax)

BOLEN ROBINSON & ELLIS, LLP
CHRISTOPHER M. ELLIS
202 S. Franklin, 2nd Floor
Decatur, IL  62523
Telephone:  217/429-4296
217/329-0034 (fax)

LEVIN, FISHBEIN, SEDRAN & BERMAN
CHARLES E. SCHAFFER
510 Walnut Street, Suite 500
Philadelphia, PA  19106-3697
Telephone:  215/592-1500
215/592-4663 (fax)

VAN EYK & MOORE, PLLC
SHAUN VAN EYK
100 W. Harrison Street, Suite N440
Seattle, WA 98119
Telephone:  206/445-0223
206/452-0722 (fax)

- 34 -

CARLSON LEGAL
JAY S. CARLSON
100 W. Harrison Street, Suite N440
Seattle, WA 98119
Telephone:  206/445-0214
206/260-2486 (fax)

Attorneys for Plaintiffs

## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated:  January 18, 2013                     By:   s/ John J. Stoia, Jr.
                                                          JOHN J. STOIA, JR.

804800_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 18, 2013.

s/ John J. Stoia, Jr.
JOHN J. STOIA, JR.

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:         johns@rgrdlaw.com

# Mailing Information for a Case 1:11-mc-00472-ESH-AK

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **William H. Anderson**
  wanderson@cuneolaw.com,halunen@halunenlaw.com

- **Jonathan Stephen Burns**
  jburns@wklawyers.com

- **Jay S. Carlson**
  JayCarlson.legal@gmail.com

- **Christopher Robert Carney**
  christopher.carney@cgi-law.com

- **Michelle C. Doolin**
  mdoolin@cooley.com,bambrose@cooley.com

- **Christopher B Durbin**
  cdurbin@cooley.com

- **Christopher M. Ellis**
  cellis@brelaw.com

- **Shaun Van Eyk**
  shaun@vaneyk-moore.com

- **Sean P. Gillespie**
  sean.gillespie@cgi-law.com

- **Craig Alan Guthery**
  cguthery@cooley.com

- **Kenan Lee Isitt**
  kenan.isitt@cgi-law.com

- **Rachel L. Jensen**
  rachelj@rgrdlaw.com

- **Michael Joseph Klisch**
  mklisch@cooley.com,bnelson@cooley.com

- **Charles J. LaDuca**
  charlesl@cuneolaw.com

- **Thomas Robert Merrick**

tmerrick@rgrdlaw.com

- **Michael G. Rhodes**
  mrhodes@cooley.com,rlopez@cooley.com,pmoyes@cooley.com

- **Myles A. Schneider**
  myles@maschneider.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com,e_file_sd@rgrdlaw.com,ldeem@rgrdlaw.com

- **Patricia N Syverson**
  psyverson@bffb.com

- **Michael Ross Tein**
  tein@lewistein.com

- **Darcie Tilly**
  dtilly@cooley.com

- **Phong L. Tran**
  ptran@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)