UNITED STTES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: LIVINGSOCIAL MARKETING AND | ) | Misc. Action No. 11-0472 (ESH) |
| SALES PRACTICE LITIGATION | ) | MDL Docket No. 2254 |
| This document Relates To: | ) | |
| ALL CASES | ) | Honorable Judge Ellen S. Huvelle |

**OBJECTION OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**

Jeremy de la Garza objects to the settlement for the reasons stated below. His address is 5334 Everhart, Suite 203, Corpus Christi, Texas 78411. His phone is (361) 688-2383. His email address is jdremax@me.com and his class member number is 10694776. De la Garza joins any other objection not inconsistent with this one.

**I.      The Cy Pres Is Illegal.**

De la Garza objects to the cy pres. Many courts permit *cy pres*. *E.g., Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011). Judge Jones, however, has argued that there is no authority for it. *Klier v. Elf Atochem*, 658 F.3d 468, 480-82 (5th Cir. 2011) (Jones, J., concurring); Martin H. Redish et al., Cy Pres Relief & the Pathologies of the Modern Class Action: A Normative and Empirical Analysis, 62 Fla. L. Rev. 617, 621 (2010). Cy pres should escheat to the U.S. government rather than to the attorneys' favorite charities. 28 U.S.C. § 2042.

**II.     Even If Cy Pres Is Permissible, It Is Unfair to Compensate Cy Pres Recipients Before Class Members.**

Though the class complaint sought punitive damages and other damages in excess of pure compensatory damages, class recovery is capped at the amount of the unused voucher, with no option for pro rata distribution upwards. Instead, money will go to cy pres recipients. This is wrong: as the majority held in *Klier*, class members must be fully compensated for all alleged damages before money is distributed to *cy pres*. 658 F.3d 468. *See also* ALI *Principles of Aggregate Litigation* § 3.07.

**III.    The Fee Award Is Impermissibly High.**

The settlement establishes a $7.5 million fund,[1] but class counsel asks for fees and expenses of $3 million—40% of the total. This 40% number is artificially low, because it includes substantial sums that will not go to class members. But even if one takes it face value, it violates the D.C. Circuit benchmark of 20% to 30%--a benchmark the fee request fails to mention once. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993). The fee request is especially abusive because the settlement terms are *worse* than the one the same class counsel won in the same type of class litigation over the same type of consumer abuses in *In re Groupon Inc. Marketing and Sales Pract. Lit.*, No. 3:11-md-2238-DMS-RBB (S.D. Cal. Dec. 18, 2012)— but class counsel received only $2.125 million of a *larger* $8.5 million fund in that case. It would be unfair if Living Social class members received a smaller share of the settlement than similarly injured Groupon class members because the case was in the D.C. Circuit instead of the Ninth Circuit.

Class counsel tries to get away with this by claiming the injunctive relief is worth $54 million. This is false for two reasons. *First,* under the terms of the settlement, the injunctive relief is entirely illusory. The defendant is permitted to make any changes that are "more consumer friendly" *without notice to the class or the class counsel* even if they are contrary to the settlement. *See* Section 2.4(c). The injunction is completely toothless. *Second*, the injunctive is only *prospective*. It does not benefit the class of people injured by LivingSocial's previous violations of the law. Indeed, it affects non-class members and class-members equally. It thus cannot be considered a class benefit. "The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel Technologies v. DHL Express (USA),* 463 F.3d 646, 654 (7th Cir. 2006) (Wood, J.). Prospective injunctive relief does not compensate class members for past injuries.

---

[1] Though the settlement establishes two funds, any money put in the $3 million fund for fees reverts to the $4.5 million fund for settlement if the Court awards less than $3 million. It is thus economically indistinguishable from a $7.5 million fund where class counsel gets first dibs.

Moreover, even the cash fund is not really worth $7.5 million to the class. Its size is exaggerated by including the claims processing costs in the settlement fund—costs that are totally undisclosed. If those costs exceed $1.5 million, then the attorneys will be receiving more than 50% of the total benefit to the class, i.e., more than the class is receiving. Such disproportionality between attorney recovery and actual class recovery should not be countenanced. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-49 (9th Cir. 2011); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009) ("[a]s a matter of public policy, it would be unseemly for the rewards to Class Counsel to exceed those to Class Members, the ones for whom the litigation is ostensibly contested") (reducing attorney award from $5 million requested to $3.3 million so that the award did not exceed the $3.7 million value to class members).

Finally, the fee request acts as if the class is indifferent whether payments go to National Consumers Union *cy pres* or to class members. This is not true, and any amounts that are awarded to *cy pres* should be discounted in calculating the settlement benefit. *ALI Principles of Aggregate Litigation* § 3.13 comment a; *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1076-77 (S.D. Tex. 2012).

The fees should not be calculated until the amount actually going to the class is known, and then limited to the same 25% awarded in *Groupon*. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."); *id.* ("One fundamental focus is the result actually achieved for class members."); *In re Giant Interactive Group, Inc. Secs. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997) (staging the fee award based on actual value created for the class); *Bowling*

*v. Pfizer Inc.*, 922 F. Supp. 1261, 1283-84 (S.D. Ohio. 1996) (delaying a fee award in order to account for claims experience), *aff'd* 102 F.3d 777 (6th Cir. 1996).

This is especially problematic where, as here, class counsel obtained a "clear sailing" provision that "by its very nature deprives the court of the advantages of the adversary process" and "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.3d 518, 525 (1st Cir. 1991); *Sobel v. Hertz*, No. 3:06-cv-00545, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011) (clear sailing undermines any benefit of separate negotiation of fees and terms).

Class counsel argues that the low number of objections supports the fee request. It would be an error of law and common sense for the court to disregard legally cognizable objections because class members were silent. Silence is not acquiescence—especially when it would cost more money to object (here, postage to three parties, even aside from lawyer and objector time) than any class member could hope to improve their settlement stake by objecting. *Parker,* 631 F. Supp. 2d at 258 ("[T]he Court does not attribute a great deal of significance to the number [of objectors and opt-outs] given the low stakes of a $5 settlement and the burden on each objector to provide their written objections in triplicate."). "Acquiescence to a bad deal is something quite different than affirmative support." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1137 (7th Cir. 1979). *See also* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1561 (2004) ("Common sense dictates that apathy, not decision, is the basis for inaction.").

**IV.     The Quickpay Provision Is Unfair to the Class.**

The Settlement requires attorneys' fees to be paid "within 5 days" of the Final Judgment. Settlement §2.5(e). This payment of attorneys' fees occurs whether or not an appeal is taken. In contrast, cash payments need only be distributed within 45 days of the Final Settlement Date. The Final Settlement Date does not occur until after all appeals have been resolved. Settlement

§1.17. Plaintiffs' counsel have therefore ensured that appeals will not delay their own payment, although they are apparently indifferent to the date and time value of class recovery. Unless settlement proceeds are reduced pro rata—an unlikely scenario given the expectation of the settlement that there will be *cy pres*—class members will not receive any interest for the delay. This is yet another example of how class attorneys have negotiated a settlement to benefit themselves, rather than the class. As one class action expert argues, this is a breach of class counsel's fiduciary duty.

> [If] judges fail to account for the net present value of the difference between when the class gets its money and when the attorneys do, it means that class attorneys will be systematically overcompensated vis-a-vis their clients. … [C]lass attorneys have a fiduciary duty to their clients, and attorneys negotiating a quick-pay provision to themselves means that they are putting their own interests ahead of their clients--and to the extent appeals happen anyway, it means that class members can expect to be paid, on average, later than they would have otherwise, because their attorneys have no incentive to settle sooner rather than later.

Ted Frank, *Point of Law* (June 30, 2010). The Court should discount the attorney-fee award to reflect the fact that, if there is an appeal, class counsel's entitlement to money months or years ahead of the class means that they will receive an even higher percentage than the over 40% to the Court. Given the breach of fiduciary duty to put the class's interests ahead of their own in negotiating a settlement agreement, the self-dealing quickpay clause should be held presumptively unfair.

V.   **Rule 23(h) Does Not Permit Lead Class Counsel to Privately Divide a Lump Sum Fee Award.**

Section 2.5(d) of the settlement provides that two plaintiffs firms "shall have joint control… to distribute any payment of fees and costs to any other attorney or law firm that may claim entitlement to fees and costs under this settlement." This violates Rule 23(h), and requires the settlement to be struck down.

Rule 23(h) authorizes the Court to award "reasonable" attorneys' fees only when notice of the fee request is "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h),

(h)(1) "Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances." Notes of Advisory Committee on 2003 Amendments to Rule 23."[A]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." *Id.* The settlement impermissibly attempts to delegate the Court's role to Lead Class Counsel, without any oversight from absent class members.

It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). The fee request in this case lacks basic information; it fails to provide even the bare bones of who seeks what, instead providing for lump sum for the firms to distribute at their sole discretion. This extra-judicial award undermines Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee." *Id*.

As the Fifth Circuit recently noted: "In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). The district court "must not … delegate that duty to the parties." *Id.* at 228 (internal quotation omitted). The appellants in *High Sulfur* complained that the district court had sealed the fee allocation list, such that they could not compare their fee awards to those of other attorneys. The Fifth Circuit agreed: "One cannot compare apples to oranges without knowing what the oranges are." *High Sulfur*, 517 F.3d at 232.

That court also held that it was impermissible for the district court to defer to the allocation proposed by the attorneys themselves.

> "It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our

6

> precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because 'counsel have inherent conflicts.' As Judge Ambro of the Third Circuit had noted earlier, 'They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'" [*Id.* at 234-35 (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005).]

Furthermore, given the case at hand, the *High Sulfur* fee agreement is comparatively inoffensive: in *High Sulfur,* at least the district court judge had the fee committee's recommendation available. Here, both the Court and class members have only the sole future discretion of the two lead firms to rely on.

The Second Circuit agrees. In *Agent Orange*, the court "reject[ed] this authority… to the extent it allows counsel to divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement." 818 F.2d 216, 223 (2d Cir. 1987). "Such a division overlooks the district court's role as protector of class interests under Fed. R. Civ. P. 23(e) and its role of assuring reasonableness in awarding of fees in equitable fund cases." *Id.* The Second Circuit decreed that "in all future class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated." *Id.* at 226.

This Court must inquire whether there is any fee-division agreement between Lead Class Counsel and ancillary class counsel; if so, it must be revealed both to the Court and to the class. Fed. R. Civ. P. 23(h); *see also* Fed. R. Civ. P. 23(e)(3) (requiring the parties seeking approval to file a statement identifying any agreement made in connection with the proposal). A Rule 23(h) deficiency is grounds for rejecting the settlement; approving such notice would constitute reversible error. *Mercury Interactive*, 618 F.3d 988.

                                              Respectfully submitted,

By:      /s/ Christopher A. Bandas
            Christopher A. Bandas
            Texas State Bar No. 00787637
            BANDAS LAW FIRM, P.C.
            500 North Shoreline, Suite 1020
            Corpus Christi, Texas 78401-0353
            Telephone (361) 698-5200
            Facsimile (361) 698-5222
            ATTORNEY FOR OBJECTOR
            JEREMY DE LA GARZA

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system thus effectuating service of such filing to all ECF registered attorneys in this case. I further certify that I caused the foregoing document to be sent via U.S. Mail with prepaid postage to the following participants, at the addresses below:

Chambers of the Honorable Ellen Segal Huvelle
E. Parrett Prettyman
United States Courthouse
333 Constitution Avenue NW
Washington, DC 20001

Cuneo Gilbert & LaDuca, LLP
Charles J. LaDuca
William H. Anderson
507 C. Street, NE
Washington, DC 20002
Class Counsel

Cooley LLP
Michael G. Rhodes
Michelle C. Doolin
101 California St., 5th Floor
San Francisco, CA 94111
Defendants' Counsel

                                      /s/ Christopher A. Bandas
                                      Christopher A. Bandas