# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### CASE NO.: 1:09-MD-02036-JLK

E S Hurdle

**LET THIS BE FILED**

2/12/13

| | |
|---|---|
| In re LivingSocial Marketing and Sales Practices Litigation, MDL No. 2254 | |

| |
|---|
| **THIS DOCUMENT RELATES TO:** <br><br> **ALL ACTIONS** |

**FREDERIC FLETCHER'S [CLASS MEMBER NO. 9843434] OBJECTION TO CLASS ACTION SETTLEMENT AND ATTORNEYS FEES AWARD; AND**

**NOTICE OF INTENT TO APPEAR AND PRESENT ORAL ARGUMENT AT THE FAIRNESS HEARING; AND**

**REQUEST THAT ALL DOCUMENTS FILED IN SUPPORT OF SETTLEMENT AND ATTORNEYS FEES AWARD AND ALL ORDERS REGARDING SETTLEMENT AND ATTORNEYS FEES AWARD BE PROPERLY AND TIMELY SERVED ON CLASS MEMBER NO. 9843434**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................... 1

II.    STANDING TO OBJECT ...................................................................... 3

III.   OBJECTIONS TO SETTLEMENT ....................................................... 4

      A)  The Court has a Fiduciary Duty to Ensure the Settlement is Fair and Not the

          Product of Collusion. ..................................................................... 4

      B)  The Proposed Exchanged Consideration in the Settlement is

          Unfair .............................................................................................. 5

      C)  The Three Year Moratorium is a Guised Attempt to Circumvent the Five Year

          Expiration Period Mandated in the CARD Act .......................................... 7

      D) Due to LivingSocial's Unusual Preferred Status in this District the Court should

          Recuse Itself .................................................................................. 8

      E)  Class Counsel's Requested Fee Award is Improper and

          Excessive ...................................................................................... 9

IV.   NOTICE OF INTENT TO APPEAR AND PRESENT ORAL ARGUMENT AT THE

     FAIRNESS HEARING ......................................................................... 10

V.    REQUEST THAT ALL FILINGS IN SUPPORT OF SETTLEMENT AND CLASS

     COUNSEL'S FEE AWARD, AND ALL ORDERS BE SERVED UPON

     OBJECTOR .......................................................................................... 10

VI.   CONCLUSION ..................................................................................... 10

i

# TABLE OF CITATIONS

**Cases**:

*Brown v. Legal Foundation of Washington*

538 U.S. 216 (2003)................................................................................................ 7

*Culver v. City of Milwaukee,*

277 F.3d 908 (7th Cir. 2002)................................................................................. 4

*Evans v. Jeff D.,*

475 U.S. 717 (1986)............................................................................................... 8

*Goldberger v. Integrated Resources,*

209 F.3d 43 (2nd Cir., 1999)........................................................................... 9-10

*Grant v. Bethlehem Steel Corp.,*

823 F.2d 20 (2d Cir.1987).................................................................................... 4

*Grunin v. International House of Pancakes,*

513 F.2d 114 (8th Cir.)......................................................................................... 4

*In re Cendant Corp. Litigation,*

264 F.3d 201 (3d Cir.2001)................................................................................... 4

*In Re Murchison,*

349 U.S. 133 (1955)............................................................................................... 9

*Mirfahisi v. Fleet Mortgage Corp.,*

356 F.3d 781 (7th Cir. 2004).......................................................................... 2, 4

*Plummer v. Chemical Bank,*

668 F.2d 654, 658 (2d Cir.1982).......................................................................... 4

*Reynolds v. Beneficial Nat'l Bank,*

288 F.3d 277(7th Cir.2002). ................................................................................ 2, 4

*Uhl v. Thoroughbred Technology & Telecommunications, Inc.,*

309 F.3d 978 (7th Cir.2002) ................................................................................ 4

**Constitution:**

7th Amendment ................................................................................ 7

5th Amendment ................................................................................ 9

**Statutes:**

15 U.S.C. § 1693 ................................................................................ 2, 6-9

28 U.S.C § 1713 ................................................................................ 7

*Fed. R. Civ. P.* 23(h) Advisory Committee Notes ................................................ 9

**Secondary Sources:**

Bill Frook, *LivingSocial Tax Bill Wins Final Approval,* Washington Business Journal, (July 10,

2012) ................................................................................ 8

Bill Frook, *LivingSocial Expected to Lay Off 400 in U.S,* Washington Business Journal, (November

28, 2012) ................................................................................ 8-9

*Manual for Complex Litigation 4th ed* ................................................................ 7

## I.    INTRODUCTION

This Multi District Litigation ("MDL") action is comprised of six (6) separate class actions filed in Federal venues across the United States which were consolidated at the request of Defendant Hungry Machine, Inc. d/b/a LivingSocial.com ("LivingSocial"). The Settlement if approved would prevent LivingSocial from misleading consumers for three (3) years but releases the Class' right to sue LivingSocial for the same egregious conduct into perpetuity. In short, LivingSocial is agreeing to pay 7.5 million dollars (7,500,000) and to behave for (3) three years in exchange for a release, or insurance policy, which grants LivingSocial indefinite immunity against the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq. ("CARD Act"), and similar state laws. The Settlement is anything but fair, and for this reason approval must be withheld.

§ 2.2(a) of the Settlement acknowledges that the 4.5 million dollars (4,500,000) allocated to the Settlement Class may not adequately reimburse the Settlement Class and the payouts, if any, will be reduced pro rata, meaning the Court has been left in the dark regarding the true value of these six (6) consolidated actions. *Mirfahisi v. Fleet Mortgage Corp., 356* F.3d 781, 784 (7th Cir. 2004); citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-280 (7th Cir.2002) ("[W]e emphasized the district judge's duty in a class action settlement situation to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that value.") Class Counsel appointed by this Court is seeking a fee award of 3 million dollars ($3,000,000) which represents thirty-four percent (34%) of the total payout by LivingSocial and is grossly excessive considering the defects in the Settlement, and the resultant injustice and unfairness that will result to the Settlement Class if the Settlement is approved and upheld on appeal.

## II.    STANDING TO OBJECT

Frederic Fletcher, class member No. 9843434, (hereinafter, "Objector") resides in Laguna Niguel, California and Objector's mailing address and phone number are provided below the undersigned, infra.   The address associated with Objector's LivingSocial account is 1100 Calle Del Cerro 195, San Clemente, California, 92672.

On January 24, 2011, Objector received an email from LivingSocial to fredrfletcher@yahoo.com offering entrance for six (6) to the ZooMar petting zoo, two baskets of animal feed ("goods"), and a train ride for two ("services") in exchange for $18.  (See, Exhibit "A" attached to the Declaration of Frederic Fletcher, filed concurrently.)  As Objector and his wife adore animals, Objector purchased the deal with the expectation Objector would be permitted use the voucher indefinitely as the LivingSocial email contained no reference to an expiration date.   As Objector anticipated a future visit from his wife's nieces and nephew, Objector intended to use the voucher at that time.  After purchasing the deal, Objector received a confirmation email from LivingSocial on January 25, 2011, with no reference to the expiration date.  (See, Exhibit "B" attached to the Declaration of Frederic Fletcher, filed concurrently.) The email referenced an additional receipt stored on the LivingSocial website which also made no mention of an expiration date.   (See, Exhibit "C" attached to the Declaration of Frederic Fletcher, filed concurrently.)   On November 27, 2012, Objector downloaded the voucher from the LivingSocial website and discovered the transaction had expired on July 25, 2011.  (See, Exhibit "D" attached to the Declaration of Frederic Fletcher, filed concurrently.)   On the same date, Objector accessed the "my account" link on the LivingSocial website which confirmed this voucher had expired, despite language on the Voucher stating, "If the state or province where the merchant is located prohibits earlier termination, then the amount you paid for the voucher will

2

expire five (5) years from the date the voucher is issued. The prepaid portion of the voucher will

not expire in states and provinces where it is prohibited by law." (See, Exhibit "E" attached to

the Declaration of Frederic Fletcher, filed concurrently.) Objector received notice of the

proposed Settlement by email on November 25, 2012. (See, Exhibit "F" attached to the

Declaration of Frederic Fletcher, filed concurrently.)

## III.    OBJECTIONS TO SETTLEMENT

### A) The Court has a Fiduciary Duty to Ensure the Settlement is Fair and Not the Product of Collusion.

"In approving the proposed settlement of a class action, a District Court has the

fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and

that the class members' interests were represented adequately." *Plummer v. Chemical Bank*, 668

F.2d 654, 658 (2d Cir.1982); *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th

Cir.), cert. denied, 423 U.S. 864, (1975); *In Reynolds v. Beneficial National Bank, supra*, 288

F.3d at 279-280. (District Courts should "exercise the highest degree of vigilance in scrutinizing

proposed settlements of class actions"…the court's role is akin "to the high duty of care that the

law requires of fiduciaries.") *See also, Mirfahisi v. Fleet Mortgage Corp., 356* F.3d 781, 784

(7th Cir. 2004); *citing, Uhl v. Thoroughbred Technology & Telecommunications, Inc.,* 309 F.3d

978, 985 (7th Cir.2002); *Culver v. City of Milwaukee,* 277 F.3d 908, 915 (7th Cir. 2002); *In re*

*Cendant Corp. Litigation,* 264 F.3d 201, 231 (3d Cir.2001); *Grant v. Bethlehem Steel Corp.,* 823

F.2d 20, 23 (2d Cir.1987). ("Because class actions are rife with potential conflicts of interest

between class counsel and class members [citation omitted] district judges presiding over such

actions are expected to give careful scrutiny to the terms of proposed settlements in order to

make sure that class counsel are behaving as honest fiduciaries for the class as a whole.")

3

**B) The Proposed Exchanged Consideration in the Settlement is Unfair.**

§ 5.1 of the Settlement provides the Settlement Class is releasing LivingSocial for all claims relating to the operative complaint, including claims "unaccrued" [sic]. § 2.4(a) of the Settlement provides that LivingSocial may begin misleading consumers again after three (3) years. After LivingSocial's three (3) year *probation period*[1] is over then Living Social may undertake the same schemes and practices that resulted in these six (6) class actions being filed without fear of reprisal because the Settlement Class will be precluded from petitioning their government for redress pursuant to the Releases.

The Settlement is unfair because the value paid to the Class, if any, is grossly disproportionate to the proposed infinite insurance policy granted to LivingSocial. § 1.32 defines the Settlement Class as "all persons in the United States who purchased or received any Deal Vouchers prior to October 1, 2012," [Emphasis Added] which encompasses 100% of LivingSocial's customers prior to the execution of the Settlement, meaning the Releases will bind approximately 100% of LivingSocial's current costumers, who after three (3) years will have no redress. Disturbingly, the Releases seek to restrict the legal rights of LivingSocial customers who currently have no claim against LivingSocial, and no incentive to object, assuming the Notice was reasonably calculated to reach these unsuspecting consumers, which it was not. The Settlement favors LivingSocial to such an unprecedented degree that collusion must have occurred.

---

[1] The Joint Motion for Preliminary Approval of Settlement represents to the Court that LivingSocial's agreement to refrain from misleading consumers is indefinite and there is no mention of the three (3) year limitation. This strategic and material omission demonstrates Class Counsel should not be trusted or given the benefit of the doubt.

Assuredly all attorneys reviewing this Settlement are aware that the class action device is intended to deter the type of conduct that LivingSocial has undertaken. Utilizing the class action device to provide indefinite immunities for claims not accrued, and parties presently unaffected, turns the class action device on its head. *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977) (observing that "the number and cumulative size of the massed cases created a penumbra of class-type interest on the part of all the litigants and of public interest on the part of the court and the world at large.")

From this class member's perspective, who happens to be an attorney, it appears this litigation is driven by LivingSocial as the company plans a massive expansion over the next 10 years,[2] and cannot find an insurer comfortable with the forecasted risks given the enactment of "the CARD Act, a relatively new federal statute which became effective in 2010."[3] LivingSocial is seeking to circumvent the CARD Act and avoid liability by judicial enforcement of the Releases in this sprawling class action which would preclude nearly 100% of LivingSocial customers from attempting to invoke the Card Act indefinitely. Any company the size and worth of LivingSocial would jump at the opportunity of purchasing immunity against future liability for the relatively paltry sum of 7.5 million dollars ($7,500,000), and thirty-six months (36) of good behavior.

LivingSocial is an immensely profitable corporation who convinces consumers by email solicitation that during a short period of time the consumer may purchase a deal not available to consumers who did not receive the email solicitation. Convincing the consumer of a sense of urgency is what makes LivingSocial profitable. The success of LivingSocial depends entirely on

---

[2] The Joint Motion for Preliminary Approval of Settlement correctly characterizes LivingSocial as a "rapidly growing company" at pg. 2 §II –A.

[3] Quoted from the Joint Motion for Preliminary Approval of Settlement at pg. 14 §IV- C-1.

the representations it makes to consumers.   Whereas BP profits by selling consumers oil, LivingSocial profits by selling consumers representations.  No Court would grant BP the right to spill indefinite amounts of oil in the future in exchange for three years of no oil spills.  While representations may seem abstract when compared to oil, the impact to the injured consumer can be measured in monetary value and is therefore a calculable harm which must not be so easily discounted as proposed in the Settlement.

The proposed Settlement, if approved, will guarantee LivingSocial a competitive edge for the indefinite future and drive consumer friendly companies who adhere to the law out of business, assuming LivingSocial does not buyout all of its competitors if the Settlement becomes final.  Such a scenario would all but guarantee consumers will be flagrantly wronged after the three (3) year moratorium is lifted resulting in a net loss for many class members.  *Brown v. Legal Foundation of Washington* 538 U.S. 216, 237 (2003) ("[A]ny pecuniary compensation must be measured by [ ] net losses" incurred by property owner.)  28 U.S.C § 1713. (A class action settlement cannot result in "a net loss to the class member," unless the court makes a "written finding that non-monetary benefits to the class outweigh the monetary loss.")

In short, LivingSocial has become a master of the misrepresentation and the Settlement is simply another example of LivingSocial's ability to characterize an unfair deal as a fair deal, whether to consumers or Federal Courts.  As the Manual for Complex (4th) points out, "[c]lass actions certified solely for settlement, particularly early in the case, sometimes make meaningful judicial review more difficult and more important."  § 21.612.

### C) The Three Year Moratorium is a Guised Attempt to Circumvent the Five Year Expiration Period Mandated in the CARD Act.

At this juncture LivingSocial is purportedly uncertain if the CARD Act applies to

6

transactions between itself and its customers.   LivingSocial obviously decided moving for summary judgment was too risky, meaning there is a high likelihood the CARD Act reaches the facts alleged in the operative complaint.   The Joint Motion for Preliminary Approval of Settlement argues the claims alleged by the class are "novel" which fails to comport with the fact that six (6) separate actions were filed across the United States alleging similar claims. Hindsight demonstrates LivingSocial realized its profits would be impacted negatively in the deals LivingSocial offers customers if the deals are not allowed to expire for five years, as mandated by the CARD Act.   The three (3) years of good behavior mandated in the Settlement is less painful for LivingSocial than what the CARD Act or the status quo currently requires. The CARD Act was passed by the legislature and is law.   It is improper and illegal for a Court to render the recently enacted CARD Act inapplicable to a particular party by judicial enforcement of the Releases. *U.S. CONST*, amend. VII; *Evans v. Jeff D.,* 475 U.S. 717, 726-727 (1986) ("the District Court might have advised petitioners and respondents that it would not approve their proposal unless one or more of its provisions was deleted or modified...")

### D) Due to LivingSocial's Tax Preferred Status in this District the Court should Recuse Itself.

As reported in the Washington Business Journal on July 10, 2012, the D.C. Council voted to award as much as $32.5 million in property and income tax breaks to prevent LivingSocial from relocating to a "cheaper jurisdiction." Bill Frook, *LivingSocial Tax Bill Wins Final Approval,* Washington Business Journal, July 10, 2012. [4] (See Exhibit "G" attached the Declaration of Frederic Fletcher, filed and served concurrently.)   The deal mandates that LivingSocial expand its 1000-employee base in D.C., and to move into a new headquarters of at

---

[4] Available at http://www.bizjournals.com/washington/news/2012/07/10/livingsocial-tax-bill-wins-final.html.

least 200,000 square feet. Bill Frook, *LivingSocial Expected to Lay Off 400 in U.S,* Washington Business Journal, November 28, 2012.[5]   (See Exhibit "H" attached the Declaration of Frederic Fletcher, filed and served concurrently.)   This enormous and preferable tax break demonstrates that D.C.'s and LivingSocial's economic interests are closely tied, and D.C. would benefit by this Court's approval of the Settlement which so overtly favors LivingSocial at the expense of the Class.  Unfortunately, the Court must recuse itself and order the matter transferred to another venue due to this glaring conflict of interest, which is not the fault of this impeccable Court.  *In Re Murchison,* 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."); *U.S. CONST,* amend. VII. (no person shall be "deprived" of "property, without due process of law.")

Objector respectfully requests the Court take judicial notice of this District's, July 2012, 32.5 million dollar tax break to LivingSocial, as it is a matter of public record accessible to all.

### E) Class Counsel's Requested Fee Award is Improper and Excessive.

The Advisory Committee Notes to Rule 23(h) state in pertinent part:

> Subdivision (h) applies to "an action certified as a class action." This includes cases in which there is a simultaneous proposal for class certification and settlement even though technically the class may not be certified unless the court approves the settlement pursuant to review under Rule 23(e)...Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility.  Courts discharging this responsibility have looked to a variety of factors. One fundamental focus is the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members.

---

[5] *Available at* http://www.bizjournals.com/washington/blog/techflash/2012/11/major-layoffs-set-for-livingsocial.html?page=all.

*Goldberger v. Integrated Resources*, 209 F.3d 43, 52 (2nd Cir., 1999) ("Moreover, even a theoretical construct as flexible as a 'benchmark' seems to offer an all too tempting substitute for the searching assessment that should properly be performed in each case. Starting an analysis with a benchmark could easily lead to routine windfalls where the recovered fund runs into the multi-millions.")

As set forth in this Objection, Class Counsel has failed to provide a reasonable and fair compensation to the Class given the proposed consideration. Class Counsel's request for a 3 million ($3,000,000) fee award should be denied given the terms of the Settlement now under review.

## IV.   NOTICE OF INTENT TO APPEAR AND PRESENT ORAL ARGUMENT AT THE FAIRNESS HEARING

Objector intends to appear at the Fairness Hearing and present oral argument.

## V.   REQUEST THAT ALL FILINGS IN SUPPORT OF SETTLEMENT AND CLASS COUNSEL'S FEE AWARD, AND ALL ORDERS BE SERVED UPON OBJECTOR.

Objector respectfully requests all filings in support of the Settlement and Class Counsel's proposed fee award, and all Orders relating thereof, be served upon Objector at the undersigned address.

## VI.   CONCLUSION

Objector respectfully requests this Court deny Settlement approval and Class Counsel's Request for a Fee Award, and recuse itself and transfer the matter to a venue without the aforementioned conflict of interest.

Dated: February 4, 2013                    Class Member No. 9843434

By: _____
                    Class Member No. 9843434
                    Frederic Fletcher, Esq., *pro se*
                    30025 Alicia Parkway
                    # G340
                    Laguna Niguel, CA 92677
                    Phone: (816) 288-0528
                    Facsimile: (800) 605-3829
                    Email: speak@lawca.us

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2013, I served true and correct copies of the foregoing document by depositing said document with the United States Postal Service or Federal Express and paying postage charges with instructions to ship the documents with guaranteed delivery by February 7, 2013 on the parties in this action properly addressed to the persons whose names and addresses are listed below as follows:

> Chambers of the Honorable Ellen Segal Huvelle
> E Barrett Prettyman
> United States Courthouse
> 333 Constitution Avenue NW
> Washington, DC 20001

> Cuneo Gilbert & LaDuca, LLP
> Charles J. LaDuca
> William H. Anderson
> 507 C Street, NE
> Washington, DC 20002

> Cooley LLP
> Michael G. Rhodes
> Michelle C. Doolin
> 101 California St., 5th Floor
> San Francisco, CA 94111

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on February 4, 2013.

By: _____
      Class Member No. 9843434
      Frederic Fletcher, Esq., *pro se*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.: 1:09-MD-02036-JLK

In re LivingSocial Marketing and
Sales Practices Litigation,
MDL No. 2254

THIS DOCUMENT RELATES TO:

ALL ACTIONS

## DECLARATION OF FREDERIC FLETCHER [CLASS MEMBER NO. 9843434] FILED CONCURRENTLY WITH OBJECTION TO CLASS ACTION SETTLEMENT AND ATTORNEYS FEES AWARD

I, Frederic Fletcher,  (hereinafter, "Objector") have personal knowledge of the matters discussed below except as to those matters declared on information and belief, and as to those matters, I am informed and believe them to be true:

1.    Objector resides in Laguna Niguel, California with a mailing address of 30025 Alicia Park, Ste # G340, Laguna Niguel, CA 92677 and may be contacted by phone at (816) 288-0528.  At all times relevant, Objector has been a resident of Orange County, California.

2.    On January 24, 2011, Objector received an email from LivingSocial to fredrfletcher@yahoo.com offering entrance for six (6) to the ZooMar petting zoo, two baskets of animal feed ("goods"), and a train ride for two ("services") in exchange for $18, and a true and correct copy is attached hereto as Exhibit "A".

1

3.      After purchasing the deal, Objector received a confirmation email from

LivingSocial on January 25, 2011, with no reference to the expiration date and a true and correct

copy is attached hereto as Exhibit "B". The email referenced an additional receipt stored on the

LivingSocial website which also made no mention of an expiration date.  A true and correct copy

of the receipt is attached as Exhibit "C".

4.      On November 27, 2012, Objector downloaded the voucher from the LivingSocial

and discovered the transaction had expired on July 25, 2011, and a true and correct copy of the

voucher is attached hereto as Exhibit "D".  On the same date, Objector accessed the "my

account" link on the LivingSocial website which confirmed this voucher had expired and a true

and correct copy of the "my account" webpage is attached hereto as Exhibit "E" which Objector

printed on November 27, 2012.

5.      Attached hereto as Exhibit "F" is a true and correct copy of the class action notice

sent to Objector's email address fredrfletcher@yahoo.com on November 25, 2012, wherein

Objector was designated Class Member No. 9843434.

6.      Attached hereto as Exhibit "G" is a true and correct copy of an article from the

Washington Business Journal, by staff reporter, Bill Flook entitled: *Livingsocial Tax Bill Wins*

*Final Approval*, dated July 10, 2012; located at http://www.bizjournals.com/washington/news/

2012/07/10/livingsocial-tax-bill-wins-final.html; printed January 4, 2013.

7.      Attached hereto as Exhibit "H" is a true and correct copy of an article from the

Washington Business Journal, by staff reporter, Bill Flook entitled: *LivingSocial expected to lay*

*off 400 in U.S*, dated November 28, 2012; located at http://www.bizjournals.com/washington/

blog/techflash/2012/11/major-layoffs-set-for-livingsocial.html?page=all; printed January 4,

2013.

2

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 4, 2013, by_____.
                                    Frederic Fletcher

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2013, I served true and correct copies of the foregoing document by depositing said document with the United States Postal Service or Federal Express and paying postage charges with instructions to ship the documents with guaranteed delivery by February 7, 2013 on the parties in this action properly addressed to the persons whose names and addresses are listed below as follows:

> Chambers of the Honorable Ellen Segal Huvelle
> E Barrett Prettyman
> United States Courthouse
> 333 Constitution Avenue NW
> Washington, DC 20001
>
> Cuneo Gilbert & LaDuca, LLP
> Charles J. LaDuca
> William H. Anderson
> 507 C Street, NE
> Washington, DC 20002
>
> Cooley LLP
> Michael G. Rhodes
> Michelle C. Doolin
> 101 California St., 5th Floor
> San Francisco, CA 94111

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 4, 2013.

By: _____
       Class Member No. 9843434
       Frederic Fletcher, Esq., *pro se*

4

**EXHIBIT "A"**

11/27/12

Subject:   Petting Zoo Package

From:      LivingSocial Deals (deals@livingsocial.com)

To:        fredrfletcher@yahoo.com;

Date:      Monday, January 24, 2011 6:19 AM



**1 Deal Location**
31791 Los Rios St. San Juan Capistrano,
California 92675
San Juan Capistrano, CA, 92675

# ZOOMARS Petting Zoo

### Admission for Six People, Two Baskets of Feed, and Two Train Rides

$**18**   view deal

Get today's deal for free!

Kids are pretty cute, but kids petting kids? Priceless. And by "kids," we don't mean other children. That would be weird. Get 65% off a trip to ZOOMARS Petting Zoo when you buy today's deal. For just $18 (regularly $52), get a package that includes admission for six, two baskets of feed, and two train rides. Home to hundreds of friendly animals -- including llamas, pigs, ostriches, cows, parrots, horses, rabbits, guinea pigs, and yes, baby goats -- this low-key petting zoo in San Juan Capistrano is great not only for curious children, but for animal-loving adults as well. And if there's anything that little tykes love more than animals, it's trains. Climb aboard and take a few laps on ZOOMARS' choo-choo. We take it back, kids on a miniature train might be even cuter.

## Find out more »

**365 things to do**

**More deals near you**

Best        **Los Angeles**

place to scrub away the stain? 

**Four-Week Weight-Loss Program**



New in 2011: a slimmer, happier, healthier you. With today's deal, sticking to your weight-loss resolution is a breeze. For $179, get a four-week weight-loss program from Lindora Clinic (a $505 ...

**Find the deal, buy, and send - it's easy!**

**Learn more about the app.**

Have a question?                    or call us: 877-521-4191 (US/CA), 0-800-014-8431 (UK), 877-498-0128 (Français), 353-1-234-2557 (Ireland), or 1800 586 766 (Australia).

Please add deals@livingsocial.com to your address book or safe sender list so our emails get to your inbox.
This message was sent by LivingSocial, 829 7th St NW, Third Floor, Washington, DC 20001.

You are receiving this email because you have an existing relationship with                    . If you no longer wish to receive marketing communications, you can                .

**EXHIBIT "B"**

Subject:  Your LivingSocial deal to ZOOMARS Petting Zoo is Ready!

From:     LivingSocial (orders@livingsocial.com)

To:       fredrfletcher@yahoo.com;

Date:     Tuesday, January 25, 2011 7:25 AM

## Hey Frederic!

We've got exciting news: Your LivingSocial deal is ready!

You will find your 1 deal voucher attached to this email. **Simply open and print!**

Remember: You can access/print your voucher anytime by visiting My Deals — located in the top right-hand corner of our website. (You must be logged in to see your deals.) Or, access your deals with our iPhone or Android apps and skip the printing.

You can see the details of your order on your receipt

If you have any questions or comments, email us at help@livingsocial.com and you'll receive a prompt reply from a real person!

Thanks for LivingSocial

- The LivingSocial Team

Have a question? Visit our support portal or call us: 877-521-4191 (US/CA), 0-800-014-8431 (UK), 877-498-0128 (Français),353-1-234-2557 (Ireland), or 1800 586 766 (Australia).

Please add deals@livingsocial.com to your address book or safe sender list so our emails get to your inbox. This message was sent by LivingSocial, 829 7th St NW, Third Floor, Washington, DC 20001.

You are receiving this email because you have an existing relationship with LivingSocial. If you no longer wish to receive marketing communications, you can unsubscribe.

**EXHIBIT "C"**



# Receipt for Purchase 5304701

| Description | Quantity | Unit Price | Total Price |
|---|---|---|---|
| Voucher for Admission for Six People, Two Basktes of Feed, and Two Train Rides at ZOOMARS Petting Zoo | 1 | $18.00 | $18.00 |
| **TOTAL** | 1 | | $18.00 |

## Payment Details

**Total Price** $18.00
**Paid On:** 01/25/2011
**Cardholder Name:** Frederic Fletcher
**Card Number:** XXXX-XXXX-XXXX-████
**Card Expiration Date:** ████████

EXHIBIT "D"

# living**social**

## Voucher for Admission for Six People, Two Basktes of Feed, and Two Train Rides at ZOOMARS Petting Zoo

### Instructions

1) Print out voucher and bring to establishment or display iPhone/Android voucher
2) Present when you arrive
3) Enjoy!

**Voucher Number:**
**10006579216**

Purchased by: **Frederic Fletcher**

Expiration: **July 25, 2011**

### The Fine Print

Passes are transferable and may be redeemed over multiple visits

Except where noted in the Fine Print:
- No cash value/cash back
- Tax and gratuity are not included
- Entire value must be used in one visit
- Cannot be combined with any other offer or promotion
- LivingSocial Terms and Conditions - livingsocial.com/terms

### Location

31791 Los Rios St. San Juan
Capistrano, California 92675
San Juan Capistrano, CA
92675
**949-831-6550**

**NEED ASSISTANCE?**    **Call LivingSocial:** 877-521-4191    **Email:** help@livingsocial.com

If the state or province where the merchant is located prohibits earlier termination, then the amount you paid for the voucher will expire five (5) years from the date the voucher is issued. The prepaid portion of the voucher will not expire in states and provinces where it is prohibited by law.

**EXHIBIT "E"**

# North Orange County

## Set this as my home city

- My cities

# LivingSocial
  - South Orange County
    - View all my cities »
- Near north orange county
  - deals inland empire
  - escapes long beach
  - fun & events los angeles
  - shop san gabriel valley
    - south orange county
    - Browse all cities & countries »

# my account

- my vouchers
- Free Vouchers
- purchase history
- deal bucks
- email preferences
- account

- date
- merchant
- amount

-

**24 Jan** 2011

$18

# ZOOMARS Petting Zoo

Admission for Six People, Two Baskets of Feed, and Two Train Rides

## About This Purchase

Quantity Purchased
  - 1

Payment Information
  Paid with card ending in **5984** | view receipt

Expiration Date
  25 Jul 2011

# Vouchers for this Purchase (1)



o

Petting Zoo Package

expired

- Voucher #10006579216

expired

Show original voucher.

- 

**17 Nov** 2010

$30

# Merlin's Magic Dinner Show

Two-Hour Magic and Comedy Show With Dinner for Two

- 

**21 Sep** 2010

$15

## En Fuego Cantina & Grill

$30 to Spend on Food and Drink

•

**17 Sep** 2010

$25

## Sage Grill

$50 to Spend on Food and Drink

•

**15 Sep** 2010

$15

## Wine Steals

$30 to Spend on Wine and Food and 10% Off Retail Wine

•

**11 Aug** 2010

$10

## O'Brothers Burgers

$25 to Spend on Food and Drink

•

**16 Jul** 2010

$20

## Greystone the Steakhouse

$40 to Spend on Food and Drink

# North Orange County

# Set this as my home city

- My cities
  - South Orange County
  - View all my cities »
- Near north orange county
  - inland empire
  - long beach
  - los angeles
  - san gabriel valley
  - south orange county
  - Browse all cities & countries »

- twitter
- facebook

- today's deals
- escapes
- shop
- live events

- how it works
- LivingSocial Plus
- gift cards
- mobile app
- credit card

- help
- research
- affiliates
- terms
- privacy policy

- about us
- jobs
- press
- for businesses
- merchant center

- **feature your business LEARN MORE »**
- **deals on your phone FREE DOWNLOAD »**
- **help us improve LEARN MORE »**

© 2012, LivingSocial, Inc. or its affiliated companies. All Rights Reserved.

EXHIBIT "F"

Subject  Re LEGAL NOTICE OF SETTLEMENT OF CLASS ACTION – LIVINGSOCIAL

From     LSLSettlementAdministrator@tgcginc.com (LSLSettlementAdministrator@tgcginc.com)

To       FREDRFLETCHER@YAHOO.COM.

Date     Sunday, November 25, 2012 9 07 PM

### NOTICE OF PENDING CLASS ACTION AND NOTICE OF PROPOSED SETTLEMENT
*IN RE LIVINGSOCIAL MARKETING AND SALES PRACTICES LITIGATION*

**You are receiving this e-mail because you may have purchased or received a LivingSocial Deal Voucher prior to October 1, 2012.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

**Why did I get this notice?** A settlement ("Settlement") has been proposed in a class action lawsuit pending in the United States District Court for the District of Columbia ("Court") titled *In re LivingSocial Marketing and Sales Practices Litigation*, Case No. 11-mc-00472-ESH-AK ("Action"). According to available records, you may be a "Settlement Class Member." The purpose of this notice is to inform you of the Action and the Settlement so that you may decide what steps to take in relation to it.

**What is the Action about?** The Action was filed against LivingSocial and one merchant who offered a LivingSocial Deal named Jack's Boathouse (collectively, "Defendants"). The Action claims the Vouchers used to redeem LivingSocial Deals are "gift certificates" and that expiration dates and other conditions applied to the Vouchers violate state and federal gift card and gift certificate regulations. The Action also asserts related claims for breach of contract, false advertising and unjust enrichment. Defendants deny any wrongdoing and any liability whatsoever, and no court or other entity has made any judgment or other determination of any liability.

**What relief does the Settlement provide?** If the Court gives final approval to the Settlement, LivingSocial will create a fund of four million, five hundred thousand dollars from which each Settlement Class Member who submits a timely and valid Claim Form may receive monetary relief for a LivingSocial Deal that has expired, has not been redeemed and has not been refunded. Settlement Class Members each have the ability to recover a pro rata share of that fund up to 100% of the amount they paid for any LivingSocial Deal Voucher that they still hold and have been unable to redeem. Any funds left over after payment of Settlement Class Members' claims will be distributed to the National Consumers League and Consumers Union, two not-for-profit organizations that represent consumers on marketplace and technology issues, among other things. An award of attorneys fees to Class Counsel will not be paid out of the four million, five hundred thousand dollars from the settlement fund. The Settlement website at www.livingsocialvouchersettlement.com contains a complete description of the proposed Settlement and what you must do to receive a share of the Settlement fund.

|  | **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT** |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to get a payment. Visit the Settlement website located at www.livingsocialvouchersettlement.com to obtain a Claim Form. |
| **EXCLUDE YOURSELF** | If you exclude yourself from the Settlement, you will not be able to submit a claim for monetary relief. Excluding yourself is the only option that allows you to c lawsuit against LivingSocial and Merchants who offered Deals through LivingSocial, regarding Deals sold before October 1, 2012 ever again. |
| **OBJECT** | You may write to the Court about why you object to (*i.e.*, don't like) the Settlement and think it shouldn't be approved. Lodging an objection does not exclu |
| **GO TO THE "FAIRNESS HEARING"** | The Court will hold a "Fairness Hearing" to consider the Settlement, Class Counsel's request for attorneys' fees and expenses of the lawyers who brought the million dollars, and the representative plaintiffs' request for service awards for bringing the Action in an amount up to two thousand five hundred dollars per rep You may, but are not required to, speak at the Fairness Hearing about any Objection you filed to the Settlement. If you intend to speak at the Fairness Hearing "Notice of Intention to Appear" to the Court and the parties' attorneys, indicating your intent to do so. |
| **DO NOTHING** | You will get no payment, you will give up your right to object to the Settlement, and you will not be able to be part of any other lawsuit about the legal claims i |

**Your Class Member Number:** 9843434

**More information?** For complete information about the Settlement, to view the Settlement Agreement, related Court documents and Settlement Claim Form, and to learn more about how to exercise your various options under the Settlement, please visit www.livingsocialvouchersettlement.com or write to the Settlement Administrator at the email address of gcg.at.livingsocialvouchersettlement.com or postal mailing address: *In re LivingSocial Marketing & Sales Practices Litigation* Settlement c/o GCG, PO Box 35027, Seattle, WA 98124-3500. You may also call 1 (855) 590-8696 for answers to frequently asked questions about the Settlement or the attorneys for the Settlement Class: John J. Stoia, Jr. of Robbins Geller Rudman & Dowd LLP at 619-231-1058, or Charles J. LaDuca of Cuneo Gilbert & LaDuca, LLP at 202-789-3960.

If you wish to UNSUBSCRIBE from future email messages from the Settlement Administrator with regard to this Settlement, please click on this link

.

**EXHIBIT "G"**

**From the Washington Business Journal**
**:http://www.bizjournals.com/washington/news/2012/07/10/livingsocial-tax-bill-wins-final.html**

# LivingSocial tax bill wins final approval

**Washington Business Journal by Bill Flook, Staff Reporter**

Date: Tuesday, July 10, 2012, 2:35pm EDT



Bill Flook
   Staff Reporter- Washington Business Journal
   Email  | Twitter

A bill to grant LivingSocial Inc. as much as $32.5 million in property and income tax breaks easily won final approval from the D.C. Council Tuesday.

The measure, which saw preliminary approval late last month, is designed to lower the daily deal giant's tax burden enough to prevent it from moving to a cheaper jurisdiction.

LivingSocial would need to both become profitable and keeping hiring in the District to receive the full credit, although critics have challenged those hiring requirements as too easy to meet. The company employs about 1,000 in the District, roughly a fifth of its overall workforce.

In a statement, LivingSocial spokesman Brendan Lewis said the final vote "ensures our company will continue to grow and prosper with the District, while helping to create a tech hub here in the Nation's Capital."

A separate measure, which would have provided tax breaks to a wider cut of entrepreneurs and investors, didn't see the same success Tuesday, setting up a fight over the extent of the council's tech support in September.

   Bill Flook covers technology, biotech and venture capital.

EXHIBIT "H"

**From the Washington Business Journal**
**:http://www.bizjournals.com/washington/blog/techflash/2012/11/major-layoffs-set-for-livingsocial.html**

# LivingSocial expected to lay off 400 in U.S.

## Washington Business Journal by Bill Flook, Staff Reporter

Date: Wednesday, November 28, 2012, 2:55pm EST



Bill Flook
Staff Reporter- Washington Business Journal
Email | Twitter

LivingSocial Inc. is slated to launch a major round of layoffs Thursday, with as many as 400 job cuts expected across its U.S. workforce, according to sources with knowledge of the daily deal giant's plans.

Those cuts are expected to span a wide range of positions and markets, including in LivingSocial's home turf of D.C., the sources said. It is not known how many will occur in D.C., where LivingSocial maintains six offices downtown.

A LivingSocial spokesman declined to comment.

The layoffs raise a host of questions about the future. First and foremost: LivingSocial in July won an up-to $32.5 million tax break from the D.C. Council on the promise that it would stay based in D.C. The legislation calls on the company not only to maintain and expand its 1,000-employee base in the District, but to move into a new headquarters of at least 200,000 square feet. With a smaller local staff, opening up a larger D.C. office becomes far less practical, raising questions about whether LivingSocial will be able to claim that credit when it takes effect in 2016.

For the 5-year-old social commerce company, the long-rumored layoffs reflect a struggle to stabilize itself financially after a frenzied headcount expansion in 2011. LivingSocial, which has raised more than $800 million in funding, entered 2012 with a staff of roughly 5,000. The company's most recent publicly disclosed headcount stands at "more than 4,500 employees," according to its website.

LivingSocial posted a net loss of $566 million in the third quarter, $496 million of which stems

from a massive write-down of some of its acquisitions from 2011. Its revenue fell to $124 million in the three-month period, down from $138 million in the second quarter.

The cuts appear to be the first major round of U.S. layoffs for LivingSocial. In July, the company let go of Senior Vice President Dickson Chu, who led its nascent merchant services division, along with other executives. Those cuts came several months after co-founder Eddie Frederick stepped down from his role as president.

While the company has sought to bring in new revenue streams, the traditional daily deal remains its core business. The financial struggles of both LivingSocial and its chief competitor Groupon Inc., as well as a shrinking army of smaller niche players, raise fundamental doubts about a model that requires merchants to accept a steep discount on the promise of reaching a population of new customers. LivingSocial has seen some success diversifying beyond the daily deal, with newer products like LivingSocial Escapes and LivingSocial Families making up a quarter of its revenue as of June.

Get the day's technology news delivered to your inbox Monday through Friday mornings.Click here to sign up for our new TechFlash email.

Bill Flook covers technology, biotech and venture capital.