**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**In re LIVINGSOCIAL MARKETING AND SALES PRACTICE LITIGATION**

**Misc. Action No. 11-mc-0472 (ESH)**
**MDL Docket No. 2254**

**This Document Relates To:**
**ALL CASES**

# OBJECTIONS TO PROPOSED SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT FAIRNESS HEARING

Class member Katharine T. Schaffzin hereby objects to the proposed Settlement Agreement and Release in the above-captioned matter ("Proposed Settlement") on her own behalf and offers notice of her intention to appear at the fairness hearing. Ms. Schaffzin is a citizen of Tennessee, residing at 1362 Poplar Ridge Drive, Memphis, Tennessee, 38120. She maintains a LivingSocial account in the above-mentioned name associated with the above-mentioned address and the email address: kschaffzin@comcast.net. Her class member number is 8546102.

Ms. Schaffzin purchased several LivingSocial vouchers prior to October 1, 2012, putting her squarely within the provisionally certified class definition: "All persons in the United States who purchased or received any Deal Voucher prior to October 1, 2012." (Preliminary Approval and Provisional Class Certification Order at 3.) As explained below, the promotional values of three of these vouchers expired before she was able to redeem them. Each of these three vouchers maintained its paid value, which Ms. Schaffzin could have redeemed for the full paid value until she was asked to relinquish the paid value as part of the Online Claims Form.

On March 7, 2011, Ms. Schaffzin purchased two vouchers, each for a 16 x 20 inch personalized canvas print from MyPix2Canvas. (Exhibit 1, LivingSocial Voucher Number 10009415246; Exhibit 2, LivingSocial Voucher 10009415247.) The promotional value of each voucher was $46. (Exhibits 1 and 2.) The paid value of each voucher was $39. (Exhibits 1 and 2.) The promotional value of each voucher expired on September 7, 2011. (Exhibits 1 and 2.) The paid value "does not expire." (Exhibits 1 and 2.)

On March 23, 2011, Ms. Schaffzin purchased a voucher for $20 of food from Lunchbox Eats. (Exhibit 3, LivingSocial Voucher Number 100010469090). The promotional value of the voucher was $10. (Exhibit 3.) The paid value of the voucher was $10. (Exhibit 3.) The promotional value expired on September 25, 2011. (Exhibit 3.) The paid value will expire on March 23, 2016. (Exhibit 3.)

Ms. Schaffzin asserts several objections to the Proposed Settlement, all of which surround a unique cornerstone of the Proposed Settlement – the fact that class members must forfeit something of value (their vouchers with paid value remaining) to opt into the class. This factor renders this Proposed Settlement quite unusual in that class members actually have to voluntarily suffer greater damage than that already allegedly inflicted by LivingSocial's actions in the hope of recovering anything through the class action settlement. Stated another way, the Proposed Settlement requires potential class members to pay with their valuable vouchers to join the class in the hopes of recovering a pro-rata share of a settlement fund that will, at most, reimburse class members the value of the vouchers they had to relinquish to join the class. In the best case scenario, class members end up at the conclusion of the settlement in exactly the same position that they started the day they opted into the class. They will have traveled a great

distance to get nowhere. On that basis, Ms. Schaffzin objects to the Proposed Settlement as unfair, unreasonable, and inadequate.

Additionally, there exists a conflict of interest between the class representatives and class members that renders the representatives unable to fairly and adequately represent the class and violates the due process of absent class members. Finally, the Short-Form Notice, Long-Form Notice, and Online Claim Form each offer insufficient notice to potential class members in further violation of their due process rights. Each objection is explained in detail below.

## I. The Proposed Settlement Is Unfair, Unreasonable, and Inadequate

Pursuant to Rule 23(e)(2) of the *Federal Rules of Civil Procedure* a court may approve a settlement proposal that would bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In making such a determination, courts in this Circuit have considered the following factors, among others: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of plaintiffs' case; (3) the status of the litigation at the time of the settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 (D.D.C. 2010) (citing *In re Vitamins Antitrust Litig.*, 305 F.Supp.2d 100, 103 (D.D.C. 2004). Moreover, a class action settlement is only fair, reasonable, and adequate if it provides a benefit to class members. *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) ("The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants. . . . Nevertheless, the settlement may be approved *if it is clear that it secures some adequate advantage for the class.*") (emphasis added).

The Proposed Settlement is unfair, unreasonable, and inadequate in a number of ways, most significantly in the fact that it requires potential class members to pay to join the class. The most egregious facet of the Proposed Settlement lies in the fact that it forces class members to forfeit 100% of the paid value remaining in their vouchers to join a class, which, in the best possible scenario, will offer 100% of the paid value of the voucher back to the class member. Specifically, opting into the settlement class requires class members to forfeit any value remaining in their LivingSocial vouchers. (Settlement Agreement and Release at ¶ 4.3.) In return, class members will receive a pro-rata share of a $4,500,000 settlement "up to a maximum of 100%" of the amount they paid for any LivingSocial Deal Voucher. (Settlement Agreement and Release at ¶ 2.2.) To join the class, class members with remaining paid value in their vouchers must forfeit 100% of that paid value for the possibility of a settlement award of 100% of the paid value. Once the fund is divided among the class, there remains only the possibility of a class member receiving 100% of the paid value of his voucher.

Ms. Schaffzin's situation must be common to many potential class members. Moreover, her case can serve as a useful example of how the Proposed Settlement is unfair. To opt into this class, Ms. Schaffzin forfeited three vouchers for which she paid $88 total and in which $88 paid value remained. In the best case scenario, Ms. Schaffzin may receive up to $88 through the settlement, but she may receive much less than this depending on the number and amount of claims filed and the amount of costs deducted from the Settlement Fund. It will take months for Ms. Schaffzin to receive any payment under the Proposed Settlement and throughout that period, she will be deprived of the paid value that once remained in her vouchers. The Proposed Settlement offers no advantage and several inconveniences to class members and is, thus, unfair, unreasonable, and inadequate.

Two alternatives to the Proposed Settlement exist for class members like Ms. Schaffzin to achieve a similar, yet slightly more desirable outcome. Instead of joining the class and hoping to recoup what she has forfeited simply to do so, Ms. Schaffzin could have excluded herself from the class and simply redeemed her vouchers for their full paid value, totaling $88. That would instantly provide her a guaranteed benefit of 100% of the paid value of her vouchers, something the Proposed Settlement does not offer. Additionally, if the merchant has since gone out of business or refused to honor the voucher for some reason, Ms. Schaffzin could request a refund of 100% of the paid value from LivingSocial. Providing class members notice of these alternatives would greatly benefit the class, perhaps more so than the funds contemplated in the Proposed Settlement.

The Proposed Settlement is even less fair for those who purchased LivingSocial vouchers before October 1, 2012, in which the full face value (the promotional value plus the paid value) remains. To join the class in which they are included by definition, such class members must sacrifice the full face value of their vouchers in the hopes of receiving at best the full paid value in return under the Proposed Settlement. (Settlement Agreement and Release at ¶¶ 4.3, 2.2.) These class members will absolutely suffer a loss under the settlement because they will relinquish greater value than they are entitled be paid to under the Proposed Settlement. These class members would have been better off excluding themselves from the class and redeeming their vouchers for full face value.

Next is the inequity of forcing three discrete groups of class members to forfeit vouchers of different worth to receive identical treatment under the Proposed Settlement. "[D]isparate treatment of class members may be justified by a demonstration that the favored class members have different claims or greater damages. . ." *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880

F.Supp. 292, 300-01 (M.D. Pa. 1995). Generally, courts will find "reasonable" a plan of distribution that reimburses class members based on the type and extent of their injury. *See In re Ikon,* 194 F.R.D. 166, 184 (E.D. Pa. 2000).

In this case, class members fall into three groups: those who forfeited a voucher with full face value remaining; those who forfeited a voucher with paid value remaining to which no obstacle to its redemption existed; and those who forfeited a voucher with paid value remaining but who were unable to redeem the voucher due to forces beyond their control. The first group was asked to forfeit the full face value of their vouchers to join the class, even though they would receive at most the paid value of their vouchers; this group is guaranteed a loss under the Proposed Settlement. The second group has at least the possibility of breaking even by receiving 100% of the paid value under the Proposed Settlement after relinquishing the full paid value. The last group relinquishes a worthless voucher in the hopes of achieving a gain under the Proposed Settlement.

Each member of the above-identified groups forfeited their vouchers to opt into the class. (Settlement Agreement and Release at ¶ 4.3.) Those with vouchers with face value remaining forfeited a voucher of greater worth than those who had only paid value remaining or those holding worthless vouchers. Those with paid value remaining forfeited vouchers of greater worth than those who held essentially worthless vouchers because, for example, the merchant had gone out of business and LivingSocial had denied a requested refund. Nonetheless, each will receive a pro-rata share of the amount he or she paid for the voucher under the Proposed Settlement. (Settlement Agreement and Release at ¶ 2.2.) While each group may have been injured similarly by LivingSocial's alleged actions, the pro-rata disbursement of the settlement fund fails to recognize that each group was forced to relinquish a different value to take part in

the settlement. To be fair, each of these groups should be treated differently as sub-classes under any settlement based on the level of worth of the voucher they were forced to relinquish.

As explained above, class members *may* receive *up to* 100% of the paid value of their vouchers as a result of this Proposed Settlement; they may very well receive less than that. (Settlement Agreement and Release at ¶ 2.2.) However, all other constituencies in this litigation will be enriched under the settlement. The class representatives will each receive an incentive award for their participation. (Settlement Agreement and Release at ¶ 2.6.) Class counsel will potentially receive $3,000,000 in return for their efforts. (Settlement Agreement and Release at ¶ 2.5(a).) And LivingSocial will be able to void every outstanding voucher purchased prior to October 1, 2012, with the exception of those whose holders affirmatively excluded themselves, for the bargain price of $4,500,000. Class members will receive essentially a partial to full refund. The Proposed Settlement improves the status quo for all involved except the class itself, and there are no guarantees that the end result will not put class members in a position worse than the status quo.

As proof of the "excellent" settlement the class representatives, class counsel, and LivingSocial describe in their Brief in Support of Motion for Preliminary Approval of Settlement Agreement, they offer the Expert Report of Alexander J. Hoinsky, MPA, CPA. This report, however, is based on a significant false assumption and reaches a significant false conclusion and should, thus, be discounted. In his report, Mr. Hoinsky relies on the unattributed assumption that "LivingSocial did not permit the redemption of any portion of its Deal Vouchers beyond the expiration period." (Expert Report of Alexander J. Hoinsky, MPA, CPA, at ¶ 10.) There is simply no evidence that LivingSocial refused to honor the redemption of the paid value of vouchers after the expiration of the promotional value; the named Plaintiffs did not even allege

as much in their Consolidated Amended Class Action Complaint. Moreover, the Proposed Settlement includes no requirement that LivingSocial refused to honor the paid value of a voucher to be included in the settlement. (Settlement Agreement and Release at ¶ 2.2.) Relying on this false assumption, it is clear why Mr. Hoinsky did not consider the value lost to class members required to forfeit their vouchers to opt into the class in assessing the Proposed Settlement. He appears to be unaware that class members were asked to sacrifice anything of value to take part in the settlement.

Additionally, Mr. Hoinsky reaches the illogical conclusion that the declaratory terms of the Proposed Settlement will benefit class members by $54,040,699 to $216,162,793 over the life of vouchers purchased in 2013 and expiring in 2017. (Expert Report of Alexander J. Hoinsky, MPA, CPA, at ¶ 12.) By definition, class members purchased their vouchers before October 1, 2012 and before such declaratory terms take effect. (Preliminary Approval and Provisional Class Certification Order at 3.) Thus, the millions of dollars in benefits to the class that Mr. Hoinsky factored into his analysis of the Proposed Settlement will not in fact be realized by class members. This court should, thus, discount the significance of Mr. Hoinsky's Expert Report.

For the foregoing reasons, the Proposed Settlement is unfair, unreasonable, and inadequate and this Court should not approve it.

## II. The Class Representatives Cannot Fairly and Adequately Represent the Class

In a damages class action such as this, "due process requires: (1) adequate notice to the class; (2) an opportunity for class members to be heard and participate; (3) the right of class members to opt out; and (4) adequate representation by the lead plaintiff(s)." *Cobell v. Salazar*, 679 F.3d 909, 922 (DC Cir. 2012) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12

(1985)). Where a conflict exists between class representatives and absent class members, the class representatives cannot fairly and adequately represent the absent class members in violation of their due process rights. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940).

The class representatives cannot fairly and adequately represent the interests of the class members in the instant case because there exists a conflict of interest between the two groups. Specifically, each of the class representatives holds a voucher which promotional value has previously expired. (Consolidated Amended Class Action Complaint at ¶¶ 40-116.) None holds a voucher with the full face value remaining. (Consolidated Amended Class Action Complaint at ¶¶ 40-116.) Thus, no class representative had to forfeit a voucher worth more than the paid value. Nonetheless, the sweeping definition of the class includes those who hold the full face value of their vouchers, as long as those vouchers were purchased prior to October 1, 2012. (Preliminary Approval and Provisional Class Certification Order at 3.)

Those class members had to forfeit the full face value of their vouchers to opt into the class and can hope to receive only the paid value in return. The class representatives, however, at least have hope of receiving 100% of the value of the voucher forfeited to join the class. Moreover, the class representatives are guaranteed to receive more than 100% of the paid value of their vouchers pursuant to the Proposed Settlement because they will each receive an incentive award. (Settlement Agreement and Release at ¶ 2.6.) That incentive award, while not unreasonable in its size, guarantees that the representatives will receive a net gain under the Proposed Settlement; the incentive award will cover the paid value of the voucher they were forced to relinquish to opt into the class. Class members still run the risk of having forfeited a paid value greater than their recovery under the settlement and losing money by participating in the Proposed Settlement. Thus, the class representatives cannot fairly and adequately represent

the interests of the class. As such the due process of absent class members will be violated by this Court's certification of the class and approval of the Proposed Settlement.

### III. The Short-Form Notice, Long-Form Notice, and Online Claim Form Are Inadequate

Among other things, due process requires "adequate notice to the class." *Cobell*, 679 F.3d at 922 (citing *Phillips Petroleum*, 472 U.S. at 811-12). Sufficient notice to absent class members is a fundamental element of due process. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999); *Hansberry*, 311 U.S. at 40; *Cobell*, 679 F.3d at 922.

Plaintiffs have failed to provide sufficient notice to potential class members in violation of their due process rights. Most significantly, neither the Short-Form Notice nor the Long-Form Notice apprise potential class members that they must relinquish the vouchers they hold to opt into the class. Because requiring class members to relinquish something of value to join the class is such a novel and surprising concept, the best notice practicable under the circumstances should inform potential class members of this central facet of the Proposed Settlement. Unfortunately, even after careful review of the Short-Form and Long-Form Notices, potential class members would have no reason to know that they must relinquish their vouchers to join the class. They may still hold a reasonable expectation that they could both redeem the paid value of their vouchers and take part in the Proposed Settlement. After all, many vouchers have a promotional value equal to or greater than the paid value of the voucher – that is why it is called a "deal." It is reasonable that one might expect that she is entitled to keep the paid value of the voucher and may be entitled to an additional sum *up to* 100% of the paid value pursuant to the Proposed Settlement. This would still only bring the potential class member close to receiving the full value of her bargain, which is not an unreasonable expectation from a settlement. Nothing in either the Short-Form or Long-Form Notice would dispel this misunderstanding.

Similarly, there is no language in either Notice that one maintains the right to redeem the paid value of her voucher by excluding herself from the class. It is hardly in the best interests of the class to provide notice of the complicated and time-consuming process by which the holder of a LivingSocial voucher can pursue this litigation to receive, in essence, a delayed partial to full refund, without also informing the class of a more efficient alternative – namely, notifying the class that it can still redeem its vouchers for their full paid value even after the promotional value of the voucher has expired. When weighing a potential class member's options of joining the class or opting out, understanding that one option requires you to surrender your voucher and the other does not would seem to be central to an informed decision. Without this information, potential class members have not received the best notice practicable under the circumstances and proceeding to settlement would deprive these absent class members their due process rights.

The Online Claim Form is also inadequate. Specifically, the online form prepopulates a class member's claim with all the vouchers she has purchased from LivingSocial, including vouchers whose promotional value has not yet expired. The online form provides claimants no method for indicating that the promotional value has not yet expired. However, the hard copy claim form insists that claimants list only those deals that have expired. (Claim Form at 3.) This discrepancy encourages those opting in online to include unexpired claims, while discouraging those who complete the form in hard copy from doing so. Presumably, those filing online will receive a greater share of the settlement fund than a similarly situated class member completing the form in hard copy. Moreover, the online form, which does not allow a class member to indicate that a deal is unexpired, fails to provide notice to those holding vouchers with promotional value remaining that they will not receive any of the forfeited promotional value under the Proposed Settlement.

## IV. Conclusion

Because the Proposed Settlement is unfair, unreasonable, and inadequate, the class representatives cannot fairly and adequately represent absent class members, and notice provided to absent class members was insufficient, this Court should deny class certification and refuse to certify the Proposed Settlement.

DATED: February 8, 2013

KATHARINE T. SCHAFFZIN, Pro Se
1362 Poplar Ridge Drive
Memphis, TN 38120
(267) 357-2195
kschaffzin@comcast.net

**CERTIFICATE OF SERVICE**

I, Katharine Traylor Schaffzin, certify that on February 8, 2013, I mailed the foregoing Objections to Proposed Settlement and Notice of Intention to Appear at Fairness Hearing via first class mail through the United States Postal Service to:

The Honorable Ellen Segal Huvelle
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Washington, DC 20001

Mr. Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
507 C Street, NE
Washington, DC 20002

Mr. Michael G. Rhodes
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111

Ms. Michelle C. Doolin
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: February 8, 2013

KATHARINE TRAYLOR SCHAFFZIN, Pro Se
1362 Poplar Ridge Drive
Memphis, TN 38120
(901) 236-7490
kschaffzin@comcast.net

# EXHIBIT 1



**MyPix2Canvas B. One 16 x 20" Personalized Canvas Print**

MYPIX2CANVAS



VOUCHER NUMBER:

10009415246

PURCHASED BY:

Katharine Schaffzin

PURCHASED ON:

March 7, 2011

PROMOTIONAL VALUE ($46) VALID THROUGH

September 7, 2011

PAID VALUE ($39) DOES NOT EXPIRE







## Instructions

1) Visit mypix2canvas.com to place your order starting 3/9/2011
2) When prompted enter your LivingSocial voucher number in the designated area during step 3 (shopping cart) of the checkout process
3) Enjoy!

## Refund Policy

LivingSocial will provide a refund for this voucher if a request is made within seven days of purchase. Within that period, you can request a refund directly on your My Vouchers page at http://www.livingsocial.com/vouchers. After that, we provide refunds upon request only where the relevant merchant has gone out of business before the promotional period ends.

## The Fine Print

Multiple vouchers can be combined per order • Valid for online orders; an additional fee applies for shipping • Voucher is redeemable online starting 3/9/2011

Except where noted in the Fine Print:

- No cash value/cash back
- Tax and gratuity are not included
- Entire value must be used in one visit
- Cannot be combined with any other offer or promotion
- LivingSocial Terms and Conditions - http //www.livingsocial.com/terms

## Need Assistance?

http://help.livingsocial.com/

Call LivingSocial 877-521-4191

# EXHIBIT 2




**MyPix2Canvas B. One 16 x 20" Personalized Canvas Print**

MYPIX2CANVAS



VOUCHER NUMBER:

10009415247

PURCHASED BY:

**Katharine Schaffzin**

PURCHASED ON:

**March 7, 2011**

PROMOTIONAL VALUE ($46) VALID THROUGH

**September 7, 2011**

PAID VALUE ($39) DOES NOT EXPIRE







## Instructions

1) Visit mypix2canvas.com to place your order starting 3/9/2011
2) When prompted enter your LivingSocial voucher number in the designated area during step 3 (shopping cart) of the checkout process
3) Enjoy!

## Refund Policy

LivingSocial will provide a refund for this voucher if a request is made within seven days of purchase. Within that period, you can request a refund directly on your My Vouchers page at http://www.livingsocial.com/vouchers. After that, we provide refunds upon request only where the relevant merchant has gone out of business before the promotional period ends.

## The Fine Print

Multiple vouchers can be combined per order • Valid for online orders; an additional fee applies for shipping • Voucher is redeemable online starting 3/9/2011

Except where noted in the Fine Print:

- No cash value/cash back
- Tax and gratuity are not included
- Entire value must be used in one visit
- Cannot be combined with any other offer or promotion
- LivingSocial Terms and Conditions - http://www.livingsocial.com/terms

## Need Assistance?

http://help.livingsocial.com/

Call LivingSocial: 877-521-4191

# EXHIBIT 3



**$20 to Spend on Food and Drink at Lunchbox Eats**

LUNCHBOXEATS



VOUCHER NUMBER:

100010469090

PURCHASED BY:

Katharine Schaffzin

PURCHASED ON:

March 23, 2011

PROMOTIONAL VALUE ($10) VALID THROUGH

September 25, 2011

Paid Value ($10) Expires: March 23, 2016







## Instructions

1) Print out voucher and bring to establishment or display iPhone/Android voucher
2) Present prior to ordering your meal
3) Enjoy!

## location

288 S. Fourth Street
Memphis, TN 38126

## Refund Policy

LivingSocial will provide a refund for this voucher if a request is made within seven days of purchase. Within that period, you can request a refund directly on your My Vouchers page at http://www.livingsocial.com/vouchers. After that, we provide refunds upon request only where the relevant merchant has gone out of business before the promotional period ends.

## The Fine Print

Limit 1 per person, up to 1 additional as gift • Dine-in only (not valid for takeout or delivery)

Except where noted in the Fine Print:

- No cash value/cash back
- Tax and gratuity are not included
- Entire value must be used in one visit
- Cannot be combined with any other offer or promotion
- LivingSocial Terms and Conditions - http://www.livingsocial.com/terms

## Need Assistance?

http://help.livingsocial.com/

Call LivingSocial: 877-521-4191

KATHARINE T. SCHAFFZIN

1362 Poplar Ridge Drive, Memphis, TN 38120
kschaffzin@comcast.net

Ellen S Huvelle

**LET THIS BE FILED**
2/12/13

Honorable Ellen Segal Huvelle
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Washington, DC 20001

February 8, 2013

***Via First Class Mail***

***Re:*** ***In re LivingSocial Marketing and Sales Practice Litigation, Misc. Action No. 11-mc-0472 (ESH), MDL Docket No. 2254***

Your Honor,

Enclosed for filing please find Objections to Proposed Settlement and Notice of Intention to Appear at Fairness Hearing in the above-captioned case. I file these on my own behalf as a member of the class.

I greatly appreciate your consideration of these Objections.

Best regards,

K. Schaffzin
Katharine T. Schaffzin

Encl.

Cc: Mr. Charles J. LaDuca, Esquire (w/encl.)
Mr. Michael G. Rhodes, Esquire (w/encl.)
Ms. Michelle C. Doolin, Esquire (w/encl.)