E. Huvelle

**LET THIS BE FILED**

2/19/13

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re LIVINGSOCIAL MARKETING AND SALES PRACTICES LITIGATION ) ) ) ) ) ) ) | Misc. Action No. 1:11-mc-0472 (ESH) |
| This Document Relates To: ) ) ALL CASES ) ) ) | DATE: March 7, 2013<br>TIME: 9:30 a.m.<br>JUDGE: Hon. Ellen S. Huvelle |

# OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

## I. INTRODUCTION AND CLASS MEMBERSHIP

Come now, class members, MICHELLE MELTON and CERY PERLE ("Objectors"), hereby: (i) file these Objections to the Proposed Class Action Settlement (the "Proposed Settlement") which is based on the "Class Action Settlement Agreement" (the "Settlement Agreement"); (ii) object to Class Counsel's notice of motion and motion for attorneys' fees; (iii) gives notice of their intent to appear at the settlement hearing; and (iv) request an award of incentive fees for serving as an unnamed class member objectors.

Objector MELTON represents to the court that she is a Class Member, as shown by the following Email address: meltons4@yahoo.com As such Objector is qualified to make a claim for the proposed relief as set forth in the notice.

Objector PERLE represents to the court that he is a Class Member, as shown by the following Email address: cperle@spbu.com. As such Objector is qualified to make a claim for the proposed relief as set forth in the notice.

## II. LEGAL STANDARD

It is well established in the District of Columbia that "under Rule 23 of the Federal Rules of Civil Procedure, no class action may be dismissed, settled or compromised without the approval of the Court. Before giving its approval, the Court must provide adequate notice to all members of the class, conduct a fairness hearing, and find, after notice and hearing, that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties. To determine whether a proposed settlement is fair, reasonable, and adequate, the court must examine whether the interests of the class are better served by the settlement than by further litigation. In deciding whether to approve a proposed settlement, the Court must protect the interests of those unnamed class members whose rights may be affected by the settlement of the action." (internal citations omitted) *Blackman v. District of Columbia*, 454

F.Supp 2d 1, 7 (2006, D.D.C) Therefore, as held by the court in *Blackman v. District of Columbia*, a detailed analysis of the terms of the settlement must be made:

> In this Circuit there is 'no obligatory test' that the Court must use to determine whether a settlement is fair, adequate and reasonable. Instead, the Court must consider the facts and circumstances of the case, ascertain what factors are most relevant in the circumstances, and exercise its discretion in deciding whether approval of the proposed settlement is fair.
> *Id* at 8.

In addition, the district court's scrutiny does not end with a detailed analysis of the settlement terms, but rather, extends to the fee request made by counsel as well. The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003. Therefore, the Court becomes the fiduciary for the class and must monitor disbursement to the class and attorneys. *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989.) As discussed below, the Proposed Settlement here is not reasonable, fair or adequate. Also, the attorneys' fee requested by Class counsel is excessive and unreasonable.

### III. OBJECTIONS

#### A. *CY PRES* IS NOT ADEQUATE BECAUSE THE INTENDED RECIPIENTS DO NOT PROMOTE THE CLASS MEMBERS' INTERESTS

The doctrine of *cy pres* originated in the law of wills and trusts and allowed courts to redirect money from trusts and testamentary gifts that would otherwise fail for legal reasons. *In Re Wells Fargo Securities Litigation*, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998). However, a court cannot direct excess funds to any seemingly worthwhile recipient. Instead,

the funds must be used in such a way that best serve the original intent of the settlor or testator. *Id.* at 1195. This idea was translated for use in the context of class actions when "(1) no parties have equitable interests in the residue or (2) distribution to such parties would be impractical." *Id.* Courts within this Circuit have warned, "a court must be careful to direct the residue to an entity that will indirectly serve the interests of class members or "others similarly situated, e.g. *future class members* who engage in future transactions of the type involved in the class litigation." *Id* at 1195. In *Dennis v. Kellogg Co.* 697 F.3d 858 (9th Cir., 2012), the court held that, "[t]o avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id* at 5 (quoting *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1038 (9th Cir. 2011)). For instance, in *Schwartz v. Dallas Cowboys Football Club, Ltd.* 362 F. Supp 2d 574, 576 (2005, E.D Pennsylvania), the court rejected a *cy pres* distribution proposed by the plaintiff therein finding, among others, that distribution to a "student legal clinic is not needed to promote the policies of the Sherman and Clayton Acts, the underlying statutes at issue in this case."

Here, this action was commenced to address defendants' illegal and deceptive business practices in selling deals online. The intended *cy pres* recipients are National Consumers League and Consumers Union (Settlement Agreement, Paragraph 2.3) National Consumers League which has an internet presence at http://www.nclnet.org/ appears to be an organization intended at "to protect and promote social and economic justice for consumers and workers in the United States and abroad." (See "Mission" of the organization on its website). And Consumers Union which has an internet presence at http://www.consumersunion.org/, states that its mission is to "is to work for a fair, just, and safe marketplace for all consumers and to empower consumers to protect themselves." Neither of these organizations appear to deal with the prevention of unfair and deceptive

3

business practices, which was the intended purpose of the class action here. Under the circumstances, *cy pres* distributions to these organizations do not further the interest of the class members. Therefore, the *cy pres* provision is not adequate and the proposed settlement should not be approved.

B. **THE DISTRICT COURT MUST ONLY AWARD A REASONABLE ATTORNEYS' FEE AFTER CONSIDERING ALL THE EVIDENCE**

The district court bears the responsibility of scrutinizing attorney fee requests and the burden rests with counsel to establish a factual basis to support the award. See *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241 (1996, 8th Cir.). The consideration of the fairness of the attorneys' fees provisions is an essential part of the consideration of the fairness of the Proposed Settlement. The Settlement Agreement states that "Class counsel's fees and costs application and the Court's decision to grant or deny it, in whole or in part, are to be considered by the court separately from the court's consideration of the fairness, reasonableness, and adequacy of the settlement." (Settlement Agreement, paragraph 2.5(h)) Contrary to class counsel's desire the consideration of the fairness of the attorneys' fees cannot be separated from the fairness of the class settlement. This is especially so where the payment of attorneys' fees to class counsel erodes the funds available to class members. (Paragraph 2.5(f) of the Settlement Agreement provides that any amount remaining in the Attorneys' Fees and Costs Fund after the court's award shall be paid to the Settlement Fund for distribution to the class) As held in *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241 (1996, 8th Cir.):

> Although under the terms of each settlement agreement, attorneys' fees technically derive from the defendants rather than out of class' recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorneys' fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are best still viewed as an aspect of the class' recovery. *Johnston*, 83 F.3d at 246.

4

Generally "Two accepted methods for calculating attorneys' fees are the lodestar and the percentage-of-the-fund methods." See *Fresh Kist Produce, L.L.C.* v. *Choi Corp*, 362 F. Supp. 2d 118, 127 (D.D.C.2005). In *Swedish Hosp.* v. *Shalala*, 1 F.3d at 1271, this circuit decided that percentage of the fund was preferable in common fund cases. However, courts have also considered the lodestar amount to determine whether the award of a percentage of the fund is appropriate. The Ninth Circuit has held that where awarding a percentage of the fund would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead. *Six Mexican Workers* v. *Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). Therefore, here, the court must consider all of the evidence available to support the percentage of the fund calculation and the lodestar calculation in determining the reasonable fee to be awarded to class counsel. Using this analysis the court will conclude that $3 million is grossly excessive here.

### 1. THE REQUEST AWARD OF 66% IS NOT JUSTIFIED UNDER THE PERCENTAGE OF THE FUND CALCULATION

Courts utilize the following factors to determine what percentage of the fund may be awarded: (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee for similar work in the community; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases. *In re Texas Prison Litigation*, 191 F.R.D. 164 (W.D.Mo., 1999) citing *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974); *Brown* v. *Phillips Petroleum Co.*, 838 F.2d 451,454 (10th Cir.), cert. denied, 488 U.S. 822,

109 S.Ct. 66, 102 L.Ed.2d 43 (1988) (noting that the *Johnson* factors are relevant to the percentage that should be awarded).

Here, class counsel seeks to recover $3 million, which is grossly excessive given the benefits obtained to class members under the Proposed Settlement. Class counsel has a creative calculation to justify the high request for attorneys' fees. Class counsel claims that the settlement is actually $62 million. However, this is not accurate. The vast majority of this alleged $62 million is a valuation of an injunctive relief under Settlement at $54 million. Even this $54 million is not accurate where the expert witness Alexander J. Hoinsky has provided an analysis of the value of the injunction based on a projection of 5 years whereas, defendant has only agreed to the injunction for a period of 3 years (Settlement Agreement, paragraph 2.4(i)). It appears that class counsel is trying to pull the wool over this court's eyes by using the illusory value of the injunctive relief. Therefore, the real value of the Proposed Settlement is only the cash benefit of $4.5 million being paid into the Settlement Fund and the additional $80,000, that defendant has agreed to bear in administrative costs. With these more accurate representations of the benefits available to the class, it is clear that class counsel seeks and amount as attorneys' fees which is about 66% of the Settlement Fund. Even if one were to include the $3 million set aside for attorneys' fees disbursement as part of the benefit available to the class, it is evident that the class counsel's request for fees is excessive. If the total settlement fund is considered as $7.5 million ($4.5 million in Settlement Funds and $3 million in Attorneys' Fees and Costs Funds), then the $3 million forms 40% of the entire $7.5 million. This again is excessive where the reasonable percentage of the fund is closer to 20-25%.

Another factor to be considered in determining the reasonableness of a percentage of the fund calculation is the number of hours expended by counsel thus far in the litigation and in receiving the settlement achieved. Here, minimal legal work has been performed. The

declarations submitted in support of the request for attorneys' fees identify litigation steps that are usually taken in any normal non-class action litigation. This is not a class action in which class counsel engaged in extensive law and motion work or discovery. There appears to have been some motions to dismiss and motions to compel discovery. However, nothing suggests that these motions were out of the ordinary or something which is not found in any simple litigation. Also, discovery conducted to date has been minimal. Written discovery was served with very few requests for documents. Only 3 depositions were conducted. Two mediation sessions were conducted and the resulting settlement was achieved. Under the circumstances, there hasn't been an enormous amount of time spent in litigating this matter, more than what one would find in any litigation. Therefore, the high award of attorneys' fees of $3 million based on a percentage of the fund calculation is not justified. It may be more proper to use a lodestar calculation or reduce the amount of the percentage of the fund to a more reasonable range of 20-25%, which is $1.5 million to $1.875 million (based on a total fund of $7.5 million).

### 2. AN ATTORNEYS' FEE AWARD OF $3,000,000 IS NOT JUSTIFIED USING A LODESTAR CALCULATION

Class counsel attempts to justify the award of $3 million in attorneys' fees arguing that the award is proper based on all counsel's lodestar calculation and with a 1.5 times multiplier. Primarily, the use of a multiplier does not appear warranted here. Courts have declined to apply multipliers in common fund class actions. See, e.g., *In re General Motors*, 55 F.3d at 822; *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F.Supp. 1422, 1435–37 (S.D.N.Y.1994), aff'd, 67 F.3d 1072 (2d Cir.1995); *Trief v. Dun & Bradstreet Corp.*, 840 F.Supp. 277, 283 (S.D.N.Y.1993); *In re Bolar Pharmaceutical Co., Inc., Secs. Litigation*, 800 F.Supp. 1091, 1096–97 (E.D.N.Y.1992). These courts have concluded that awarding a risk multiplier would provide counsel with a windfall, since such a reward for their risk-taking essentially would be double counting. These courts have found a multiplier to be double

7

counting because "the difficulty of the litigation is taken into account in the billable hours and fee rates used to calculate the lodestar figure." *In re Bolar*, 800 F.Supp. at 1097. Enhancement of the lodestar figure, therefore, has been found unnecessary by these courts. Similarly, if the court is inclined to use a lodestar method to determine the reasonableness of a fee award, it should not use any multiplier, since this is a common fund class action.

Additionally, the lodestar amount sought by counsel is over inflated and should be reduced. As discussed above, this litigation has not included enormous legal work. Indeed it is surprising that despite the minimal legal work, class counsel and plaintiff's counsel have managed to jointly spend over 4,000 hours (4,012.50 hours exactly) in this litigation. It is even more interesting to note the over inflations in the hourly rate which has led to a total lodestar calculation of *$2,037,278*. This translates into an average hourly rate of over $500 per hour, which is a high average rate considering that many junior attorneys and paralegal rates are included in this average rate. One would think that the lower rates of junior attorneys and paralegals when clubbed with the higher rates of senior attorneys would bring down the average significantly. However, here it appears that there is an excessive lodestar amount which is the result of over billing and overly high hourly rates (a first year associate is being charged at $375/hr). Under the circumstances, if the court uses the lodestar method to determine the reasonableness of the attorney's fees, the court must refuse to use a multiplier and also must use a more reasonable hourly rate for the attorneys in its determination. If such a calculation is made, the court may find that reasonable attorney's fees are closer to the $1.5 million to $1.875 million suggested above.

### 3. OTHER UNFAIR PROVISIONS REGARDING ATTORNEYS' FEES IN THE SETTLEMENT AGREEMENT RENDER THE PROPOSED SETTLEMENT UNFAIR

In addition to the excessive request for attorneys' fees, there are a number of provisions of the Proposed Settlement regarding the disbursement of attorneys' fees that are

unfair to class members. These provisions unfairly place the interest of class counsel above the interests of class members, and thereby cast a shadow on the fairness of the entire settlement. Because of these provisions are more favorable to class counsel than class members, the court must reject the proposed settlement.

First, the Settlement Agreement contains a "quick pay" provision which clearly places the interest of class counsel above the interests of class members. The Settlement provides that the Attorneys' Fees and Costs Fund will be funded within 25 days after the court preliminary approves the Proposed Settlement. (Settlement Agreement, Paragraph 2.5 (b)). This funding of the attorneys' fees is far in advance of the funding of the Settlement Fund. In addition, the Settlement Agreement provides that class counsel will be paid the entire award of attorneys' fees and costs within *5 business days* after final order is entered. (Settlement Agreement, Paragraph 2.5(f)). Whereas, class members will be aid only 30-45 days after the final order. In case of an appeal, class members will have to wait until the resolution of the appeal to be paid. There is no such restriction on payments to class counsel. Under the circumstances, it appears that class counsel negotiated more favorable terms for themselves compared to the class.

Secondly, the early payment of fees to counsel from the Attorneys' Fees and Costs fund presents a problem if the award of fees and costs is the subject of an appeal or is reduced on appeal. It appears that in anticipation of a dilemma created by early payment, the Settlement Agreement provides that class counsel will execute a promissory note to be delivered to the Escrow Holder for the amount distributed from the fund as fees and costs. Thereafter, if the award of attorneys' fees is reduced on appeal, the Settlement Agreement contemplates that class counsel will voluntarily replace the amount of reduction in fees. (Settlement Agreement, paragraph 2.5 (g)). This provision places an undue burden on class members to then chase down class counsel (who presumably have little incentive to repay the

fund) and collect the amounts now owed to the Settlement Fund (all monies left over in the attorneys' fees fund reverts to the settlement fund). This nightmare situation can be easily avoided by requiring class counsel to wait, just like the class members, until the resolution of an appeal to be paid. Therefore Objectors request that the court take this approach.

Finally, the settlement Agreement also provides that a couple of law firms will distribute the entire award of attorneys' fees between various different plaintiffs' firms. (Settlement Agreement, Paragraph 2.5(d)) permitting a couple of law firms to decide on distributions of attorneys' fees is not proper as This distribution is tantamount the law firms decision to "award" fees and it usurps the court's domain.

Because of these unfair provisions, the court must not grant final approval of the Proposed Settlement without making suitable changes to address the objectors' concerns.

## IV. JOINDER IN ALL OTHER OBJECTIONS

These Objectors join in all other meritorious, bona fide objections filed with the Court by other absent class members.

## V. CONCLUSION

WHEREFORE, the Objectors respectfully request that this Court:

    A.    Upon proper hearing, sustain these Objections;

    B.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

/ / /

/ / /

/ / /

        C.    Award an incentive fee to each Objector for their service in improving the settlement for the class, if any.

Dated: February 8, 2013

        Michelle Melton
        1570 Lake Druze
        Cardiff CA 92007

Dated: February 8, 2013

        Cery Perle
        13590 Jog Road, Suite C-6
        Delray Beach, FL 33446

Copies To:

Charles J. LaDuca
William H. Anderson
Cuneo Gilbert & LaDuca LLP
507 C Street, NE
Washington DC 20002

Michael G. Rhodes
Michelle C. Doolin
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111

11