UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re LIVINGSOCIAL MARKETING AND SALES PRACTICES LITIGATION | ) ) ) | Misc. Action No. 1:11-mc-0472 (ESH) MDL No. 2254 |
| This Document Relates To: | ) ) | |
| ALL CASES | ) ) ) | DATE:       March 7, 2013 TIME:       9:30 a.m. JUDGE:     Honorable Ellen S. Huvelle |

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, on March 7, 2012 at 9:30 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Ellen S. Huvelle, United States District Court for the District of Columbia, 333 Constitution Avenue N.W., Washington, D.C.  20001, Defendants LivingSocial, Inc. ("LivingSocial") and Jack's Canoes and Kayaks, LLC, d/b/a Jack's Boathouse ("Jack's Boathouse") (collectively, "Defendants"), and Plaintiffs Melissa Forshey, Mandy Miller, Kimberly Pullman, Sarah Gosling, Dawn Abbott, Barrie Arliss, Cara Lauer and Amy Schultz (collectively, "Plaintiffs"), on behalf of themselves and on behalf of each of the Settlement Class Members, will and hereby do, jointly move this Court for an order granting Final Approval of the Settlement and entry of Final Judgment.  Plaintiffs also hereby move this Court for an order that certifies the proposed Settlement Class for settlement purposes.

These motions are brought pursuant to Fed. R. Civ. P. 23(e) and are based on the parties' Settlement Agreement and Release, submitted to the Court on October 19, 2012, and the exhibits annexed thereto; this Joint Motion and Motion; the Memorandum of Points and Authorities, submitted herewith; the Declaration of John J. Stoia, Jr., submitted herewith; the Declaration of Michael G. Rhodes in Support of Joint Motion for Preliminary Approval of Settlement; the Declaration of the Honorable Edward A. Infante (Ret.), submitted herewith; the Declaration of Jennifer M. Keough, submitted herewith; the Declaration of Ellen Bloom, submitted herewith; the Declaration of Sally Greenberg, submitted herewith; the complete file and record in this action; the oral argument of counsel; and such other and further evidence and argument as the Court may choose to consider.

These motions are made on the grounds that: (1) the proposed Settlement is fair, reasonable and adequate and is the product of extensive, arm's-length negotiations before Judge Edward A. Infante (Ret.) of JAMS; (2) the Settlement Class meets all of the requirements for certification of a

settlement class; and (3) the notice provided to Settlement Class Members has been adequate and

reasonable, has satisfied all of the requirements of Fed. R. Civ. P. Rule 23(c)(2)(B) and (e)(1), and

constituted the best notice practicable under the circumstances.

DATED:  February 22, 2013          ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                        JOHN J. STOIA, JR.
                                        RACHEL L. JENSEN
                                        THOMAS R. MERRICK
                                        PHONG L. TRAN

s/ John J. Stoia, Jr.

JOHN J. STOIA, JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA (DC Bar 476134)
WILLIAM H. ANDERSON (DC Bar 502380)
507 C Street, NE
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

WITES & KAPETAN PA
MARC A. WITES
JONATHAN STEPHEN BURNS
4400 N Federal Highway
Lighthouse Point, FL  33064
Telephone:  954/570-8183
954/354-0205 (fax)

CARNEY GILLESPIE ISITT PLLP
CHRISTOPHER ROBERT CARNEY
100 W. Harrison Street, Suite N440
Seattle, WA  98119
Telephone:  206/445-0220

MYLES A. SCHNEIDER & ASSOCIATES,
   LTD.
MYLES A. SCHNEIDER
710 Dodge Avenue, NW, Suite A
Elk River, MN  55330
Telephone:  763/315-1100
877/294-4254 (fax)

816629_1

BONNETT FAIRBOURN FRIEDMAN
  & BALINT
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602-798-5825 (fax)

AUDET & PARTNERS, LLP
MICHAEL A. McSHANE
221 Main Street, Suite 1460
San Francisco, CA  94105
Telephone:  415/568-2555
415/576-1776 (fax)

HALUNEN & ASSOCIATES
CLAYTON D. HALUNEN
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  612/605-4098
612/605-4099 (fax)

BOLEN ROBINSON & ELLIS, LLP
CHRISTOPHER M. ELLIS
202 S. Franklin, 2nd Floor
Decatur, IL  62523
Telephone:  217/429-4296
217/329-0034 (fax)

LEVIN, FISHBEIN, SEDRAN & BERMAN
CHARLES E. SCHAFFER
510 Walnut Street, Suite 500
Philadelphia, PA  19106-3697
Telephone:  215/592-1500
215/592-4663 (fax)

Attorneys for Plaintiffs

DATED:  February 22, 2013        COOLEY LLP
CHRISTOPHER B. DURBIN

_____
      s/ Christopher B. Durbin
CHRISTOPHER B. DURBIN

719 Second Avenue, Suite 900
Seattle, WA 98104
Telephone:  206/452-8769
206-452-8800 (fax)

COOLEY LLP
MICHELLE C. DOOLIN
DARCIE A. TILLY
4401 Eastgate Mall
San Diego, CA 92121
Telephone:  858/550-6000

COOLEY LLP
MICHAEL RHODES
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:  415/693-2000

Attorneys for Defendants

## ECF CERTIFICATION

The filing attorney attests that he has obtained concurrence regarding the filing of this

document from the signatories to this document.

Dated:  February 22, 2013                    By:   s/ John J. Stoia, Jr.
                                                          JOHN J. STOIA, JR.

- 4 -

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re LIVINGSOCIAL MARKETING AND SALES PRACTICES LITIGATION | ) ) ) | Misc. Action No. 1:11-mc-0472 (ESH) MDL No. 2254 |
| This Document Relates To: | ) ) ) | |
| ALL CASES | ) ) ) | DATE:     March 7, 2013 TIME:     9:30 a.m. JUDGE:   Honorable Ellen S. Huvelle |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................4

        A.      LivingSocial's Sale and Marketing of Daily Deal Vouchers...................4

        B.      The MDL Proceeding ................................................................................5

        C.      Plaintiffs' Claims and Defendants' Defenses ...........................................6

        D.      The Discovery Process...............................................................................7

        E.      The Settlement Discussions .......................................................................9

III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED
        SETTLEMENT WHICH REFLECTS CAREFUL CONSIDERATION BY THE
        PARTIES OF THE BENEFITS, BURDENS, AND RISKS ASSOCIATED WITH
        CONTINUED LITIGATION .........................................................................................11

        A.      The Standard for Approval of a Class Action Settlement Under Fed. R.
                Civ. P. Rule 23(e)......................................................................................11

        B.      The Settlement Is Fair, Reasonable and Adequate ..................................12

                1.      The Proposed Settlement Is the Product of Serious, Arm's-Length
                        Negotiations ..................................................................................13

                2.      The Terms of Settlement in Relation to the Strength of the Case ............15

                3.      The Stage of the Litigation Proceedings at the Time of the
                        Settlement .....................................................................................19

                4.      Reaction of the Class ....................................................................20

                5.      Opinion of Experienced Counsel .................................................21

IV.     FOR PURPOSES OF SETTLEMENT ONLY, THE SETTLEMENT CLASS
        MEETS THE REQUIREMENTS OF FED. R. CIV. P. 23 .................................................22

V.      NOTICE TO THE SETTLEMENT CLASS WAS ADEQUATE AND
        SATISFIED DUE PROCESS .........................................................................................25

VI.     CONCLUSION...........................................................................................................28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Boyle v. Giral*,
  820 A.2d 561 (D.C. 2003) ...........................................................................................16, 17

*Browning v. Yahoo! Inc.*,
  No. C04-1463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) ........................................27

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (2008) ........................................................................................27

*Cohen v. Warner Chilcott Pub. Ltd. Co.*,
  522 F. Supp. 2d 105 (D.D.C. 2007) ...................................................................19, 20, 23

*Diamond Chem. Co. v. Akzo Nobel Chems.*,
  No. 01-2118, No. 02-1018 (CKK), 2007 U.S. Dist. LEXIS 49406
  (D.D.C. July 10, 2007) ..............................................................................................16

*Farinella v. Paypal, Inc.*,
  611 F. Supp. 2d 250 (E.D.N.Y. 2009) ..............................................................................27

*In re Baan Co. Sec. Litig.*,
  284 F. Supp. 2d 62 (D.D.C. 2003) .....................................................................12, 20, 25

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..............................15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002) .......................................................................................15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  Nos. MDL 1290 (TFH), 99MS276 (TFH), Civ. 99-0790 (TFH),
  2003 WL 22037741 (D.D.C. June 16, 2003) ............................................................13, 19, 21

*In re Vitamins Antitrust Litig.*,
  305 F. Supp. 2d 100 (D.D.C. 2004) ...................................................................12, 13, 17, 20

*Meijer, Inc. v. Warner Chilcott Holdings, Co. III, Ltd.*,
  565 F. Supp. 2d 49 (D.D.C. 2008) ..................................................................................21

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306, 70 S. Ct. 652 (1950) .................................................................................25

*Osher v. SCA Realty I*,
  945 F. Supp. 298 (D.D.C. 1996) ....................................................................................12

**Page**

*Peters v. Nat'l R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) ......................................................................25, 27

*Trombley v. Nat'l City Bank*,
  826 F. Supp. 2d 179 (D.D.C. 2011) ................................................................. *passim*

*United States v. Dist. of Columbia*,
  933 F. Supp. 42 (D.D.C. 1996) ........................................................................3, 12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §1693l-1(a)(2)(B)..............................................................................................18
  §1693.................................................................................................................2

Federal Rules of Civil Procedure
  Rule 23 ..............................................................................................22, 25, 26, 27
  Rule 23(a)..........................................................................................................22
  Rule 23(a)(1)......................................................................................................23
  Rule 23(b)(3)........................................................................................19, 22, 24
  Rule 30(b)(6)........................................................................................................8
  Rule 23(c)(2)(B)................................................................................................25
  Rule 23(e)................................................................................................3, 11, 12

12 C.F.R.
  §205.20(a)..........................................................................................................18

D.C. Code Ann.
  §28-3901.............................................................................................................6

**SECONDARY AUTHORITIES**

4 William B. Rubenstein, Alba Conte and Herbert B. Newberg,
  *Newberg on Class Actions* (4th ed. 2002)
  §11:41 ...............................................................................................................15

*Manual for Complex Litig.* (3d ed. 1995)
  §30.42.............................................................................................................12, 13

813486_1

Plaintiffs Melissa Forshey ("Forshey"), Mandy Miller ("Miller"), Kimberly Pullman ("Pullman"), Sarah Gosling ("Gosling"), Dawn Abbott ("Abbott"), Barrie Arliss ("Arliss"), Cara Lauer ("Lauer") and Amy Schultz ("Schultz") (collectively, "Plaintiffs" or "Named Plaintiffs"), by and through their respective counsel, respectfully submit this memorandum of points and authorities in support of their joint motion for final approval of the Class Action Settlement in this Action and their motion for class certification.   Defendants LivingSocial, Inc. ("LivingSocial" or "the Company") and Jack's Canoes and Kayaks, LLC, d/b/a Jack's Boathouse ("Jack's Boathouse") (collectively, "Defendants" and together with Plaintiffs, the "Parties") join in sections I-III and V of this memorandum.[1]

## I.      INTRODUCTION

The Parties here have achieved a comprehensive settlement that provides valuable monetary and injunctive relief to millions of consumers nationwide who purchased LivingSocial Deals and then received Deal Vouchers ("Deal Vouchers") that Plaintiffs alleged contained illegal expiration dates and other restrictions.   The Settlement, which finally resolves this multi-district litigation ("MDL"), was achieved after more than a year of hard-fought litigation, and after extensive, arm's-length negotiations between the Parties, including multiple mediation sessions before the Honorable Edward A. Infante (Ret.) of JAMS.   The Settlement is notable in that LivingSocial agreed to establish a Settlement Fund of $4,500,000 to provide direct cash payments to Class Members with expired and unredeemed Deal Vouchers, as well as to cover certain settlement administration costs. §2.1(a). Class Members who submit a timely and valid claim therefore may obtain a cash payment of *100%* of the purchase price (also known as "paid value") of any unredeemed and expired Deal

---

[1]      All capitalized terms herein have the same meaning as in the Settlement Agreement and Release ("Settlement Agreement"), submitted to this Court on October 19, 2012 (Dkt. No. 24-1). All "§" or "§§" references are to the Settlement Agreement and all emphasis is added and citations omitted, unless noted otherwise.

Voucher.  *Id.*  Money remaining in the Settlement Fund after the payment of all valid claims will be divided equally between the National Consumers League and Consumers Union, two not-for-profit consumer organizations which are strong advocates for the Credit Card Accountability Responsibility and Transfer Act ("CARD Act"), 15 U.S.C. §1693, *et seq.*, and which promote consumer awareness on issues concerning gift cards, gift certificates and other related products, among other things.  §2.3.  *See generally*, Declaration of Ellen Bloom in Support of *Cy Pres* Award to Consumers Union ("Bloom Decl."); Declaration of Sally Greenberg in Support of *Cy Pres* Award to National Consumers League ("Greenberg Decl."), both concurrently filed herewith.

The Settlement also provides for injunctive relief in the form of an agreement by LivingSocial to continue to maintain the following measures for a minimum period of three years after the Final Settlement Date: (i) provide clear and conspicuous disclosures on its Deal Vouchers and its website that identify the paid and promotional values of the Deal; (ii) ensure that no expiration date is imposed on the paid value of any Deal Voucher that is shorter than the expiration minimum contained in the CARD Act (five years) or any applicable state law, whichever is longer; (iii) state in its terms and conditions that purchasers may request a full refund of the paid value of any unredeemed Deal Voucher within seven days of purchase; and (iv) state in its terms and conditions that purchasers may request a full refund of the paid value of their Deal if the Deal is unredeemed and the Merchant has gone out of business before the expiration of the promotional period.  §2.4(a).  Plaintiffs believe these company-wide business reforms, which were implemented after this Action was filed, directly address their allegations concerning LivingSocial's use of allegedly deceptive and restrictive expiration terms and will serve to protect consumers against the alleged conduct moving forward.

On October 25, 2012, this Court granted conditional class certification and preliminary approval of the Settlement.  *See* Preliminary Approval and Provisional Class Certification Order

- 2 -

("Preliminary Approval Order") (Dkt. No. 28).   In granting preliminary approval, the Court evaluated the fairness, reasonableness, and adequacy of the Settlement Agreement and found that the Settlement fell within the range of reasonableness under applicable law, thus meriting further proceedings and possible final approval and dissemination of notice to the Settlement Class. Preliminary Approval Order at 1-2.  Since that date, notice has been provided to the Settlement Class in accordance with the Court's Preliminary Approval Order.  Declaration of Jennifer M. Keough in Support of Joint Motion for Final Approval of the Class Action Settlement ("Keough Decl."), ¶¶7-10, filed concurrently herewith.

The Parties now jointly move for final approval of the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  In deciding whether to grant approval, courts in this Circuit "'need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties.'"  *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 191-92 (D.D.C. 2011) (citing *United States v. Dist. of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)).  Importantly, while the Court must undertake careful scrutiny of the settlement as a whole, it should be guided by the "'principle of preference' that encourages settlements."  *Id.* at 191.

Here, the proposed Settlement, when viewed in its entirety and measured against the benefits, burdens and risks associated with the continued litigation of this Action, warrants final approval. The Settlement was reached after more than a year of contentious litigation, during which the Parties engaged in motion practice, extensive written discovery and multiple depositions into the claims and defenses asserted in the Action.  Moreover, the Settlement Agreement was the product of protracted, arm's-length negotiations between the Parties who were represented by capable, seasoned counsel on both sides, under the guidance and supervision of a well-respected, experienced mediator.  Only after

- 3 -

the Parties had the opportunity to fully assess the strengths and weaknesses of their respective positions were they able to achieve a comprehensive settlement that provides meaningful economic and injunctive relief to the Settlement Class.  The Settlement is fair, reasonable and adequate, particularly in light of the uncertainty inherent in continuing to litigate Plaintiffs' claims.

For all the reasons set forth herein, Plaintiffs and Defendants jointly request the Court grant final approval of their Settlement Agreement and Plaintiffs request the Court grant final certification of the Settlement Class for settlement purposes only.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    LivingSocial's Sale and Marketing of Daily Deal Vouchers

Based in Washington, D.C., LivingSocial is a growing company that facilitates internet-based "Daily Deals," by which consumers may purchase a wide variety of offerings – often from a local merchant such as Jack's Boathouse – at a substantial discount.  CC, ¶¶22, 24-26.[2]  The deals offered by LivingSocial, include, but are not limited to, deals for restaurant meals, personal services (massages, haircuts, manicures), entrance or access  into venues, fitness classes, outdoor activities, sporting events and theater tickets, and clothing and accessories.  *See, e.g.*, *id*., ¶2.  LivingSocial Deal Vouchers are typically split into a "paid" portion (*i.e.*, the amount actually paid for the voucher) and a "promotional" portion (any amount above the paid portion of the voucher).  Millions of consumers throughout the United States have purchased LivingSocial Deal Vouchers.  CC, ¶121; *see also* Keough Decl., ¶8 (more than ten million email notices were sent to Class Members).

LivingSocial's website is segmented into local markets, such as cities, neighborhoods, and related geographic areas.  CC, ¶¶22, 24-26.  These local pages offer "deals" on products and services from merchants within the relevant locale.  *Id*.  LivingSocial's homepage offers individuals the

---

[2]      Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint" or "CC") (Dkt. No. 10), filed November 4, 2011.

opportunity to sign-up to receive email notifications from LivingSocial regarding the deals available in their designated region. *Id.* LivingSocial members who purchase a particular deal receive vouchers by email that may be redeemed with the relevant merchant. *Id.*, ¶¶29-30. LivingSocial members may also obtain a copy of their voucher by logging onto the LivingSocial website.

### B.  The MDL Proceeding

This MDL proceeding is comprised of six separate actions against LivingSocial, the first of which was filed more than two years ago. *See* Dkt. Nos. 1 & 3. These actions include the following:

1.  *Abbott v. Hungry Machine, Inc., d/b/a LivingSocial*, No. 11-cv-00253-RSL, United States District Court for the Western District of Washington ("*Abbott* Case") (filed February 14, 2011) (Dkt. No. 1);

2.  *Miller v. LivingSocial, Inc.*, No. 11-cv-60519-WPD, United States District Court for the Southern District of Florida ("*Miller* Case") (filed March 11, 2011) (*id.*);

3.  *Forshey v. LivingSocial, Inc.*, No. 11-cv-00745-HHK, United States District Court for the District of Columbia ("*Forshey* Case") (filed April 19, 2011) (*id.*);

4.  *Pullman v. Hungry Machine, Inc, d/b/a LivingSocial.com.*, No. 11-cv-00846-LAB-JMA, United States District Court for the Southern District of California ("*Pullman* Case") (filed April 21, 2011) (*id.*);

5.  *Gosling v. Hungry Machine, Inc., d/b/a/ LivingSocial.com*, No. 11-cv-02094-LB, United Stated District Court for the Northern District of California ("*Gosling* Case") (filed April 28, 2011) (*id.*); and

6.  *Schultz v. Hungry Machine, Inc.*, No. 11-cv-01136-JNE-SER, United States District Court for the District of Minnesota ("*Schultz* Case") (filed April 29, 2011) (Dkt. No. 3).

On August 22, 2011 and September 7, 2011, the JPML transferred the actions to the United States District Court for the District of Columbia before the Honorable Ellen S. Huvelle, No. 11-mc-00472-ESH-AK, under the title *In re LivingSocial Marketing and Sales Practices Litigation.* Dkt. Nos. 1 & 3; Declaration of John J. Stoia, Jr., in Support of Joint Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Class Certification ("Stoia Decl."), ¶6, filed concurrently herewith.

### C.      Plaintiffs' Claims and Defendants' Defenses

Plaintiffs assert similar class claims based on federal and state law, which arise out of Defendants' marketing and sale of LivingSocial Deal Vouchers bearing expiration dates and other restrictions. Stoia Decl., ¶7. On November 4, 2011, Plaintiffs filed their Consolidated Amended Class Action Complaint, which asserts six causes of action against Defendants: violations of the CARD Act (Count I); violations of 27 "State Gift Certificate Statutes" (Count II); violations of the District of Columbia Consumer Protection Statute, D.C. Code Ann. §28-3901, *et seq.* ("CCPA") (Count III); breach of contract (Count IV); quasi-contract, restitution, or unjust enrichment (Count V); and declaratory or injunctive relief (Count VI). CC, ¶¶126-197; Stoia Decl., ¶9.

Specifically, Plaintiffs allege, *inter alia*, that the CARD Act prohibits the sale of gift certificates with expiration periods of less than five years and that the CARD Act is applicable to LivingSocial Deals. CC, ¶¶126-134. Plaintiffs also allege that the inclusion of expiration dates on LivingSocial Deals violates a number of state laws that apply to expiration dates on gift cards and gift certificates. *Id.*, ¶¶135-165. Plaintiffs further contend that Defendants imposed other unfair and unconscionable conditions on Deal Vouchers, including forcing consumers to redeem the entire Voucher in the course of a single transaction and not providing for the exchange of any unused portion of the Voucher for cash value. *Id.*, ¶¶166-178.

Plaintiffs assert claims for all counts on behalf of a class of "[a]ll persons in the United States who purchased or otherwise acquired a . . . voucher . . . issued by LivingSocial, on or after August 22, 2010, with an expiration date of less than five years from the date of purchase." *Id.*, ¶120. Similarly, for all counts except the CCPA claim, Plaintiffs seek to represent a class of "[a]ll persons in the United States who purchased or otherwise acquired a . . . voucher . . . issued by LivingSocial with an expiration date that is earlier than the expiration period provided under applicable state gift certificate laws." *Id.*

- 6 -

Defendants deny, and have always denied, the entirety of Plaintiffs' allegations.  Defendants further deny that they are liable under any of the legal theories asserted by Plaintiffs.  *See* Memorandum of Points and Authorities in Support of Joint Motion for Preliminary Approval of Settlement ("Preliminary Approval Motion") (Dkt. No. 24) at 13-16.  Specifically, Defendants dispute that Deal Vouchers are gift certificates under federal and state law, and that the CARD Act and the other gift certificate statutes under which Plaintiffs sue are intended to apply to LivingSocial Deals.  Preliminary Approval Motion at 13-14.  On November 18, 2011, Defendants moved to dismiss and strike portions of the Complaint ("Motion to Dismiss"), arguing, among other things, that Plaintiffs lacked Article III standing and that they had failed to allege suffering any harm as the result of LivingSocial's alleged misconduct.  Dkt. No. 12.  On December 9, 2011, Plaintiffs filed their opposition to the Motion to Dismiss, disputing these contentions.  Dkt. No. 16.  The Court had not ruled on the Motion to Dismiss when the Parties reached a settlement in principle.

D.     **The Discovery Process**

Before settlement was reached in this Action, the Parties engaged in an extensive and often contentious discovery process.  Plaintiffs served Defendants with their first set of interrogatories and requests for production on November 8, 2011.  Stoia Decl., ¶12.  Defendants served their responses and objections to Plaintiffs' discovery requests on December 23, 2011, and began their review and production of responsive documents.  Declaration of Michael Rhodes in Support of Joint Motion for Preliminary Approval of Settlement ("Rhodes Decl.") (Dkt. No. 24-3), ¶3.  Among the documents produced by Defendants to Plaintiffs are:

- publicly disclosed terms relating to the expiration of LivingSocial vouchers;

- publicly disclosed versions of LivingSocial's Terms and Conditions;

- the total number of LivingSocial vouchers sold in the United States, broken down by state and type for each month, quarter, year, and cumulatively between August 22, 2010 and December 31, 2011;

- 7 -

- the net billings that LivingSocial has generated and retained on average as a result of sales of LivingSocial vouchers in the United States, broken down by state and type for each month, quarter, year, and cumulatively between August 22, 2010 and December 31, 2011;

- the total number and dollar amount of refunds that LivingSocial has provided to customers relating to LivingSocial vouchers sold in the United States, broken down by state and type for each month, quarter, year, and cumulatively between August 22, 2010 and December 31, 2011;

- representative versions of agreements between LivingSocial and merchants regarding LivingSocial vouchers sold between August 22, 2010 and November 4, 2011; and

- existing final executed versions of agreements between LivingSocial and merchants for deals identified in the consolidated complaint.

*See* Defendants' Opposition to Motion to Compel Further Responses from Defendants Regarding Plaintiffs' First Request for Production of Documents and First Set of Interrogatories to All Defendants (Dkt. No. 21) at 12-13, filed May 3, 2012; Stoia Decl., ¶16.

Plaintiffs also prepared and served responses to Defendants' interrogatories and produced documents concerning their purchases of LivingSocial's Deals. Rhodes Decl., ¶4; Stoia Decl., ¶16. The Parties engaged in a lengthy meet-and-confer process, including numerous written and telephonic negotiations, in an attempt to resolve disagreements over the scope of Plaintiffs' discovery requests. Stoia Decl., ¶15. The Parties, however, were unable to reach an agreement, and on April 16, 2012, Plaintiffs filed a motion to compel (Dkt. No. 20). Stoia Decl., ¶15. The motion to compel was fully briefed by the Parties in May 2012. *Id.*

In addition to engaging in written discovery, Defendants served deposition notices on all eight Named Plaintiffs, took three depositions, and set dates for the remaining plaintiffs when the Action settled. Rhodes Decl., ¶5; Stoia Decl., ¶17. Plaintiffs also served Fed. R. Civ. P. 30(b)(6) deposition notices on Defendants and engaged in several telephonic conferences with Defendants concerning the scope of those depositions. Stoia Decl., ¶18. Had the Parties failed to resolve this

matter, the Parties would have proceeded with those depositions and other discovery, including expert discovery.  Rhodes Decl., ¶6; Stoia Decl., ¶17.

E.       **The Settlement Discussions**

Prior to submitting their Settlement Agreement to the Court for approval, the Parties engaged in hard-fought, arm's-length settlement negotiations spanning over a year.  Rhodes Decl., ¶¶7-8; Stoia Decl., ¶19.  Importantly, their negotiations were undertaken with the guidance and active participation of the Honorable Edward A. Infante (Ret.) of JAMS.  *See* Declaration of Edward A. Infante (Ret.) in Support of Joint Motion for Final Approval of Class Action Settlement ("Infante Decl."), ¶¶5-11, filed concurrently herewith; Stoia Decl., ¶19; Rhodes Decl., ¶¶7-8.  Judge Infante, a former Chief Magistrate Judge of the United States District Court for the Northern District of California, has more than 30 years of dispute resolution experience and in particular, has considerable expertise in mediating and overseeing complex class action matters.  Infante Decl., ¶1.  On or about August 30, 2011, in an effort to reach a prompt resolution of the Action, representatives of the Parties attended mediation before Judge Infante in San Francisco, California.  Infante Decl., ¶5; Rhodes Decl., ¶7; Stoia Decl., ¶20.  While the mediation provided a constructive forum for settlement discussions, it did not result in a settlement.  Infante Decl., ¶6; Rhodes Decl., ¶7; Stoia Decl., ¶20.  Thereafter, additional settlement efforts were attempted between the Parties through a series of ongoing direct discussions and negotiations under Judge Infante's guidance.  *See* Infante Decl., ¶6; Stoia Decl., ¶20.

On June 14, 2012, the Parties attended a second, in-person mediation before Judge Infante. While the Parties were unable to reach a settlement, they were able to substantially narrow the areas of dispute and discussed a workable structure for settlement.  Infante Decl., ¶7; Rhodes Decl., ¶8; Stoia Decl., ¶21.  Following the in-person mediation attempt, the Parties continued to engage in settlement discussions, by way of numerous telephonic conferences and written exchanges, with the assistance of Judge Infante.  Infante Decl., ¶8; Rhodes Decl., ¶8; Stoia Decl., ¶21.  These discussions

- 9 -

ultimately resulted in an agreement in principle, with the exception of Plaintiffs' attorneys' fees and expenses, which the Parties refrained from negotiating until all other terms of Settlement were set. Infante Decl., ¶¶8-9; Rhodes Decl., ¶8; Stoia Decl., ¶21.   Over the course of several months thereafter, the Parties drafted and negotiated the Settlement Agreement, exchanging over a dozen versions of the draft Settlement Agreement and the settlement exhibits, including the email and long-form class notices, claim form, and opt-out/exclusion request form, as well as the proposed fairness hearing order, and proposed final judgment.  Stoia Decl., ¶21.

Throughout the negotiations process, the Parties consulted Judge Infante on various settlement issues, including the terms of the monetary and injunctive relief.  Infante Decl., ¶9; Stoia Decl., ¶23.  The Settlement was close to collapsing at several critical junctures, but with Judge Infante's guidance and assistance, the Parties persevered and were ultimately able to resolve all the material issues and finalize the details of the Settlement Agreement and settlement exhibits.  Infante Decl., ¶9; Stoia Decl., ¶23.  Thus, the Parties achieved what was ultimately the subject Settlement Agreement filed with, and preliminarily approved by, this Court on October 25, 2012.  Infante Decl., ¶¶9-11; Rhodes Decl., ¶8; Stoia Decl., ¶23.

Only after the Parties were able to reach an agreement on the material terms of the Settlement did they negotiate fees and expenses.  Infante Decl., ¶11; Stoia Decl., ¶25.  After considerable deliberation, Defendants agreed to pay attorneys' fees and expenses to Plaintiffs not to exceed $3,000,000, separate and apart from the Settlement Fund.  §2.5(a); Stoia Decl., ¶25.  Defendants also agreed to pay incentive awards of $2,500 to each of the Named Plaintiffs who were deposed, and $500 to the Named Plaintiffs who were not deposed, for their time and effort in participating in this Action, for a total of $10,000.  §2.6.  *See* Stoia Decl., ¶25.

As Judge Infante witnessed, throughout the Parties' settlement discussions, including the mediation sessions on August 30, 2011 and June 14, 2012, and during the Parties' direct

- 10 -

negotiations, the Parties always negotiated at arm's-length.  Infante Decl., ¶10.  There was never any indication of any type of collusion between the Parties in any of the negotiations.  *Id.*  In fact, the negotiations were intense at every step of the way, and the Parties vigorously defended their respective positions.  *Id.*  Judge Infante can attest to the fact that the Parties conducted themselves with utmost professionalism, ethics, and competence throughout the process.  *Id.*  In fact, as he has averred in his declaration submitted concurrently herewith, Class Counsel and Defendants' Counsel are intelligent, capable lawyers who fought very hard on behalf of their clients' positions and were fully prepared, well informed on the law and facts of the case and negotiated accordingly.  *Id.*

While reasonableness is ultimately for the Court's determination, Judge Infante, as the mediator of this dispute, has recommended, based on his knowledge of the Action, the settlement relief that was achieved, the barriers to resolution, and the risk associated with continued litigation, that the Settlement is fair, reasonable, and adequate to settle the Class' claims asserted in this matter. *Id.*, ¶¶3-21.

## III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT WHICH REFLECTS CAREFUL CONSIDERATION BY THE PARTIES OF THE BENEFITS, BURDENS, AND RISKS ASSOCIATED WITH CONTINUED LITIGATION

The proposed Settlement is fair, reasonable and adequate and reflects careful consideration by both Parties of the benefits, burdens, and risks associated with continued litigation of this Action. Accordingly, the Parties respectfully submit that this Court should grant final approval of their Settlement Agreement and order that relief be given to the Class.

### A.   The Standard for Approval of a Class Action Settlement Under Fed. R. Civ. P. Rule 23(e)

Rule 23(e) provides that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e). Although the Court should "'eschew any rubber stamp approval'" in exercising its discretion under

Rule 23(e), the Court must "'stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case.'" *In re Vitamins Antitrust Litig*., 305 F. Supp. 2d 100, 103 (D.D.C. 2004) (quoting *Dist. of Columbia*, 933 F. Supp. at 47).  Importantly, the Court's discretion should be "constrained by the 'principle of preference' favoring and encouraging settlements in appropriate cases." *Id.*  As this Court has previously noted, "in 'the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits.'"  *In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 63 (D.D.C. 2003) (citing *Osher v. SCA Realty I*, 945 F. Supp. 298, 304 (D.D.C. 1996)).

While there is no single, obligatory test in this Circuit for determining whether a proposed settlement of a class action should be approved under Rule 23(e), courts here generally consider whether the proposed settlement is "'fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are being served if the litigation is resolved by settlement rather than pursued.'" *Vitamins Antitrust Litig*., 305 F. Supp. 2d at 103-04 (citing *Manual for Complex Litigation (Third)*, §30.42 at 238 (1995)); *see also Baan Co. Sec. Litig.*, 284 F. Supp. 2d at 63.  Courts in this Circuit typically examine the following factors: "(a) whether the settlement is the result of arm's-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the status of the litigation at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103. Moreover, where, as here, the proposed Settlement has been reached after discovery and arm's-length negotiations conducted by capable counsel, there is a strong presumption that the Settlement is fair, adequate, and reasonable.  *Id.* at 104.

### B.      The Settlement Is Fair, Reasonable and Adequate

The Court has already considered some of the factors for final approval (*i.e.*, whether the settlement was the product of arm's-length negotiation and the terms of the settlement) in deciding

813486_1

to grant preliminary approval of the Settlement and finding that the Settlement falls within the range of reasonableness meriting possible final approval. *See* Preliminary Approval Order at 1 ("The Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations and falls within the range of possible approval as fair, reasonable and adequate."). When considered in light of the favorable settlement that was achieved on behalf of the Settlement Class, as well as the significant risks associated with the continued litigation of this Action, ***all*** of the foregoing factors strongly support final approval.

### 1.    The Proposed Settlement Is the Product of Serious, Arm's-Length Negotiations

As noted above, in this Circuit, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *See Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104 (citing *Manual for Complex Litig.*, §30.42 (3d ed. 1995)).

The presumption of fairness, adequacy and reasonableness should apply in this Action. As a threshold matter, both Parties are represented by capable and skilled counsel who have extensive experience in litigating complex consumer class actions. Class Counsel in particular have demonstrated their expertise in litigating consumer class actions, including actions involving "Daily Deals" and gift certificates. Stoia Decl., ¶29. Robbins Geller Rudman & Dowd LLP is currently lead counsel for plaintiffs in *In re Groupon Marketing and Sales Practices Litigation*, No. 11-md-02238-DMS-RBB (S.D. Cal.). *Id.* Similarly, Defendants' Counsel has significant experience defending putative class actions alleging violations of laws regulating company's interactions with consumers and has defended numerous actions regarding gift certificate laws. Rhodes Decl., ¶¶1-2 (citing biographies of Michael G. Rhodes and Michelle Doolin, Defendants' Counsel). Because the Parties' respective counsel are experienced and well-informed about the facts of the Action, their support of the proposed Settlement is entitled to considerable weight. *See In re Lorazepam &*

*Clorazepate Antitrust Litig.*, Nos. MDL 1290 (TFH), 99MS276 (TFH), Civ. 99-0790 (TFH), 2003 WL 22037741, at *6 (D.D.C. June 16, 2003) (stating the opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement").

Further supporting the presumption of fairness, adequacy and reasonableness is the fact the proposed Settlement was the product of fully-informed, arm's-length negotiations, and grew out of both sides' intense and adversarial litigation of the case.  Indeed, the Settlement was only achieved after more than a year of contentious litigation, during which the Parties engaged in extensive discovery into the issues that were in dispute.   Stoia Decl., ¶¶11-16; Rhodes Decl., ¶¶3-6. Particularly, with respect to their CARD Act and related state gift certificate claims, Plaintiffs sought and obtained documents in discovery concerning the expiration dates and terms and conditions placed on LivingSocial's Deal Vouchers during the relevant time period.  Stoia Decl., ¶16.  Plaintiffs also obtained documents detailing LivingSocial's agreements with merchants, as well as the amount of refunds issued by LivingSocial during the relevant time period.  *Id.*  Plaintiffs therefore had the opportunity to review documents pertaining to the heart of their claims – whether Defendants imposed illegal terms on the LivingSocial Deal Vouchers.  Defendants, on the other hand, received responses to their interrogatories and documents concerning Plaintiffs' LivingSocial Deal purchases. Defendants also deposed three of the eight Named Plaintiffs.  Rhodes Decl., ¶¶4-5.  Further, the Parties were thoroughly familiar with the complex legal issues of the Action, having fully briefed the Motion to Dismiss.  Stoia Decl., ¶¶10-11.  As such, the Parties were fully informed of the key factual and legal issues of the Action when they reached the proposed Settlement.

Notably, the Parties, through their experienced, capable and fully informed Counsel, conducted extensive arm's-length negotiations under the watchful eye of an experienced mediator, the Honorable Edward A. Infante.  Infante Decl., ¶10.  In fact, counsel for the Parties engaged in two

- 14 -

separate rounds of formal mediations before Judge Infante, as well as countless settlement discussions directly with each other before they could reach a resolution to this Action. These protracted and often contentious settlement negotiations lasted well over a year. Infante Decl., ¶¶5-7; Stoia Decl., ¶¶19-21.

Counsel therefore believe and represent to this Court that the Settlement Agreement is fair, reasonable, and adequate, which weighs heavily in favor of a finding that the Settlement Agreement is fair. Stoia Decl., ¶30. Similarly, Judge Infante has submitted a declaration recommending to the Court that it should approve the Settlement Agreement reached by the Parties in this Action. Infante Decl., ¶¶3-21. As such, there is good reason for the fairness of the Settlement to be presumed. *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("[T]he fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."); 4 William B. Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* §11:41 (4th ed. 2002) ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").

### 2.    The Terms of Settlement in Relation to the Strength of the Case

The settlement relief negotiated by the Parties, when examined against the relative strength of Plaintiffs' case, including their ability to obtain recovery at trial, thoroughly supports final approval. *See Trombley*, 826 F. Supp. 2d at 195-96. Here, the proposed Settlement will provide comprehensive monetary and injunctive relief, both on a retroactive and prospective basis, to millions of consumers nationwide who purchased LivingSocial Deal Vouchers with allegedly restrictive expiration terms. The economic relief provided under the Settlement is particularly

notable because Plaintiffs contend that Class Members who submit a timely and valid claim may potentially obtain **complete** relief for the Deal Vouchers they purchased. Indeed, pursuant to the Settlement, LivingSocial has agreed to establish a Settlement Fund of $4,500,000 from which qualifying Class Members will obtain cash refunds of **100%** of the purchase price of any unredeemed and expired Deal Voucher. §2.4.

The Settlement further provides that funds which remain in the Settlement Fund after payments have been made to all Class Members who submit a valid and timely claim will be evenly divided as *cy pres* payments to the National Consumers League and Consumers Union. §2.3. Both proposed *cy pres* recipients are well-established, not-for-profit organizations that represent consumers on current marketplace issues, including issues concerning gift cards, gift certificates, and related products, among other things. Bloom Decl., ¶¶2, 5; Greenberg Decl., ¶¶2, 4 & fn.1. Both organizations have extensively researched and investigated gift cards and gift certificates and have published materials advising consumers about potential problems with these products. Bloom Decl., ¶¶6-10; Greenberg Decl., ¶¶7-10. And notably, both organizations were early supporters of the CARD Act and strongly advocated for the passage of the law. Bloom Decl., ¶¶6-7; Greenberg Decl., ¶¶5-7. The proposed *cy pres* award bears a close relationship to the underlying purpose of the litigation and will benefit the Settlement Class, as both the National Consumers League and Consumers Union will devote the residual funds toward their continuing efforts to educate and protect consumers against deceptive practices relating to the marketing and sale of gift cards and gift certificates, as well as toward their ongoing advocacy for the robust enforcement of the CARD Act. *See Diamond Chem. Co. v. Akzo Nobel Chems.*, No. 01-2118, No. 02-1018 (CKK), 2007 U.S. Dist. LEXIS 49406, at *2 (D.D.C. July 10, 2007); *see also Boyle v. Giral*, 820 A.2d 561, 569-70 (D.C. 2003). Because the *cy pres* payments will only be distributed once all claims for refunds for expired and unredeemed Deal Vouchers have been fully satisfied and because the proposed organizations

- 16 -

both have a demonstrated commitment to the specific issues addressed by Plaintiffs here, the proposed *cy pres* award is appropriate.

In addition to providing direct cash payments to the Class, LivingSocial made an agreement, for a period of three years following the Final Settlement Date, regarding the way it markets and sells Deals to consumers.  Specifically, LivingSocial agreed to maintain its current policy (which was implemented after this Action was filed) that ***no expiration date*** will be imposed on the purchase price (paid value) of any Deal Voucher that is shorter than the five-year period of expiry set forth by the CARD Act, or any applicable state law, whichever is longer.  §2.4(a).  LivingSocial also agreed it will continue to provide clear and conspicuous disclosures on its Deal Vouchers and its website that identify the paid and promotional values of the Deal.  *Id.*  Finally, LivingSocial agreed to state in its terms and conditions that: (i) purchasers may request a full refund of any unredeemed LivingSocial Deal Voucher within seven days of purchase; and (ii) they may request a full refund of the paid value of their Deal if the Deal is unredeemed and the Merchant has gone out of business before the expiration of the promotional period.  §2.4(b).  Plaintiffs contend the foregoing injunctive relief directly addresses their concerns over LivingSocial's allegedly onerous expiration policies and other restrictions.

Plaintiffs contend that this Settlement provides valuable benefits to the Class, particularly when weighed against the complexities and risks associated with the ongoing litigation of the Action.  *See Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104-05 (considering the complexities of proof and the risks and delays associated with class action litigation in finding that the settlement provided significant benefit to the class).  Indeed, Plaintiffs would have faced considerable risks had there been no settlement.  Defendants contend that they have strong defenses, which, had the litigation moved forward, could have potentially foreclosed any relief to Plaintiffs and the Settlement Class on a classwide basis.  Preliminary Approval Motion at 13-16.  Defendants have always

- 17 -

maintained that the federal CARD Act and the various state gift certificate laws cited by Plaintiffs do not apply to LivingSocial Deal Vouchers. *Id.* at 14. Specifically, Defendants contend that it is unlikely that Plaintiffs can succeed on the threshold matter of establishing that Deal Vouchers are (or should be) regulated as "gift certificates" under federal or state law. *Id.* Defendants contend that many of LivingSocial's Deal Vouchers are redeemable at ***unrelated*** merchants or are redeemable for a specific item or experience – ***not*** a specific amount or value. *Id.* Defendants therefore believe that such vouchers clearly fall outside the CARD Act's definition of a "gift certificate." *Id.*; *see* 15 U.S.C. §1693*l*-1(a)(2)(B); *see also* 12 C.F.R. §205.20(a). Moreover, according to Defendants, many other Deals are for entry into venues or events, exempting these Deals from the CARD Act. *Id.*; 15 U.S.C. §1693*l*-1(a)(2)(D). As such, among other reasons, Defendants contend that Plaintiffs will be unable to demonstrate that LivingSocial's Deal Vouchers violate the federal CARD Act. For similar reasons, Defendants contend that it is unclear (at best) whether LivingSocial's Deal Vouchers meet the definition of a "gift certificate" under the various state laws.

Moreover, assuming *arguendo* that LivingSocial Deal Vouchers are gift certificates, Defendants contend that placement of expiration dates on the Vouchers' ***promotional*** value is permissible as it is expressly permitted by gift-certificate regulations. Preliminary Approval Motion at 15; *see, e.g.*, 15 U.S.C. §1693*l*-1(a)(2)(D)(iii) (stating that term "gift certificate" does not include "a loyalty, award, or ***promotional*** gift card"). Accordingly, among other reasons, it is Defendants' position that even if Plaintiffs successfully establish that LivingSocial Deal Vouchers are gift certificates, they cannot establish that the Deal Vouchers violated any law. For similar reasons, among others, Defendants contend that even if Plaintiffs can establish liability, they will be unable to demonstrate that they are entitled to recover any damages or other relief. Because the jurisprudence concerning the application of the CARD Act and other gift certificate statutes to the type of "Daily Deal" vouchers at issue here remains largely unsettled, the Parties would have likely continued to

- 18 -

litigate this Action through trial and even beyond had no settlement been achieved.  *Trombley*, 826 F. Supp. 2d at 195-96 (the potential for continued litigation of claims involving "unsettled" issues weighs in favor of approval of settlement).

Furthermore, if Plaintiffs' claims were to be litigated, Defendants would contend, among other reasons, that individual issues predominate over common issues, precluding class certification under Rule 23(b)(3).  Defendants would argue that a class cannot be certified because, *inter alia*, Plaintiffs challenge millions of different Daily Deals, each with different Merchant Partners, different purchase prices and promotional values, different expiration dates, and different deal-specific terms.  If this Action was to be tried, Defendants would argue, among other reasons, that varying state laws would apply to different LivingSocial Vouchers depending on the state in which the Deals were purchased, the types of Deal purchased, and various state laws treat Vouchers differently.  Defendants would also argue that circumstances surrounding each Plaintiff's purchases, among other reasons, may present affirmative defenses that preclude Plaintiffs' success at trial.

Considering the substantial risks Plaintiffs may face if the litigation proceeds (whether at the motion to dismiss stage, class certification stage, summary judgment stage, trial, or on appeal), the benefits achieved on behalf of the Class under the Settlement are excellent and fully warrant final approval.  *See Trombley*, 826 F. Supp. 2d at 195.

### 3.      The Stage of the Litigation Proceedings at the Time of the Settlement

In determining whether a proposed class action settlement is fair, adequate and reasonable, consideration should be given to "'whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery.'"  *Cohen*, 522 F. Supp. 2d at 117 (citing *Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *4).  Here, the proceedings had advanced considerably by the time settlement was reached, as the Parties spent more than a year litigating the matter, including engaging in extensive

- 19 -

discovery and motion practice.  The Parties therefore had the opportunity to fully assess the relative strengths and weaknesses of their respective positions and to compare the benefits of the proposed Settlement Agreement to further litigation.  In fact, Plaintiffs conducted extensive discovery and obtained a considerable amount of information (including more than 73,000 pages of documents and more than 100 megabytes of electronically stored information) concerning the Deal Voucher sales and other related financial information, the terms and conditions applicable to Deal Vouchers, company refund information, and the agreements between LivingSocial and its Merchant Partners. Stoia Decl., ¶16.  Defendants also sought and obtained documents concerning each Plaintiff's Deal Voucher purchases and noticed each Plaintiff's deposition, ultimately deposing three of them. Rhodes Decl., ¶5.  Through their respective litigation efforts and their independent evaluation of the Action, the Parties possessed a well-founded view of the merits of their respective positions and the potential for, and likely amount of any recovery.  *See Cohen*, 522 F. Supp. 2d at 117.  As such, the Settlement does not "'come too early to be suspicious nor too late to be a waste of resources,'" but is rather "'at a desirable point of the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense and litigation.'"  *Id.* (citing *Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 105); *see also Baan Co. Sec. Litig.*, 284 F. Supp. 2d at 63 ("in 'the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits'").  Clearly, the stage of the litigation proceedings at the time of settlement weighs in favor of final approval.

### 4.      Reaction of the Class

The reaction of the Class to the proposed Settlement further supports final approval of the Settlement.  *Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 105.  In particular, Class Members have responded favorably to the monetary component of the Settlement, as 53,315 valid claims for relief

have been submitted.  Keough Decl., ¶17.  These claims will result in a total of $1,894,803 in cash relief to the Settlement Class.  *Id.*, ¶18.

Further highlighting the positive reaction to the proposed Settlement is the relatively small number of exclusions and objections raised by Class Members.  Out of the more than 10 million Settlement Class Members who received email notice of the Settlement, there have been only 361 valid exclusions and 8 objections to date.  This is a *de minimus* number of exclusions and objections, considering the size of the Settlement Class and the more than 53,000 claims submitted to date by Class Members for the Settlement relief.  *Id.*  It is also notable that neither the United States Attorney General nor any state attorney general has filed an objection to the Settlement.

Moreover, out of the eight objections that were raised, four of them are invalid on their face because they were not properly served on the Parties and the Court and failed to provide sufficient factual information, as clearly required by the Settlement Agreement.  §3.7(a); Keough Decl., ¶14. Moreover, Plaintiffs contend that certain of the objections have been filed by professional objectors who routinely appear in class actions in the hopes that they may hold up the settlement here or in the Court of Appeals for their own pecuniary gain.  These objectors either misconstrue the terms of the Settlement Agreement or misapply the governing legal authority for final approval and, therefore, their objections are unpersuasive.  The Parties will fully address these objections in their response, due on February 25, 2012, as set forth in the Court's February 12, 2013 Order (Dkt. No. 36).  Suffice it to say, the relative dearth of significant objections or substantial number of requests for exclusion and all other relevant factors support a finding that the Settlement is fair, reasonable, and adequate.

### 5.    Opinion of Experienced Counsel

The opinion of experienced counsel "'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'"  *Meijer, Inc. v. Warner Chilcott Holdings, Co. III, Ltd.*, 565 F. Supp. 2d 49, 58 (D.D.C. 2008) (citing *Lorazepam & Clorazepate*

*Antitrust Litig.*, 2003 WL 22037741, at *6).  Both Class Counsel and Defendants' Counsel have

substantial expertise in litigating complex, consumer class action cases, such as this Action.

Notably, Class Counsel, after having the opportunity to conduct extensive discovery and analyzing

the merits of the Action, agree and affirmatively declare that the Settlement is fair, reasonable and

adequate.  Stoia Decl., ¶30.  And, this assessment is shared by Judge Infante.  Infante Decl., ¶¶17-20.

Counsel's favorable opinion of the Settlement weighs in favor of final approval.

## IV.    FOR PURPOSES OF SETTLEMENT ONLY, THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF FED. R. CIV. P. 23

Final approval is also warranted because the Settlement Class here meets the requirements

for certification pursuant to Rule 23.  The Court has already conditionally certified the Settlement

Class and appointed the Class Representatives and Class Counsel to represent the Settlement Class

Members.  Preliminary Approval Order at 2.  As set forth in Plaintiffs' Motion for Conditional

Certification of the Settlement Class and Appointment of Class Representatives and Class Counsel

(Dkt. No. 25),[3] which Defendants did not oppose for purposes of settlement only, the Settlement

Class satisfies the requirements for class certification set forth in Rule 23(a) and Rule 23(b)(3).  *See*

Memorandum of Points and Authorities in Support of Motion for Conditional Certification of the

Settlement Class and Appointment of Class Counsel ("Conditional Certification Memo") (Dkt.

No. 26) at 1-6, filed October 19, 2012.

The Settlement Class plainly satisfies the Rule 23(a) prerequisites of numerosity,

commonality, typicality, and adequacy for purposes of settlement.  It is undisputed that LivingSocial

has sold millions of Deal Vouchers throughout the United States, thus readily satisfying the

numerosity requirement.  *See* Conditional Certification Memo at 2; *see Trombley*, 826 F. Supp. 2d at

---

[3]     Defendants do not join Plaintiffs' request for certification of the Settlement Class but, for settlement purposes only, do not oppose the request.

192 (Rule 23(a)(1) numerosity only requires that the class be "so numerous that joinder of all members is impracticable."). As further indication of numerosity, notice of the proposed Settlement was emailed to over 10 million purchasers of LivingSocial Deal Vouchers. Keough Decl., ¶8.

Commonality is also satisfied because the claims of Plaintiffs and the Settlement Class Members are based on a common course of conduct by Defendants to market and sell LivingSocial Deal Vouchers with expiration dates, allegedly in violation of federal and state gift certificate laws. Specifically, Plaintiffs allege that the federal CARD Act is applicable to all LivingSocial Deal Vouchers and prohibits the sale of gift certificates with expiration periods of less than five years, and that a number of state laws similarly prohibit expiration of gift certificates, which they contend include Deal Vouchers. ¶¶126-134; *see also Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 114 (D.D.C. 2007) (commonality "'is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members'").

Plaintiffs also contend that typicality is met because the claims of the Named Plaintiffs and the Settlement Class Members are based on the same core facts and underlying legal theory – Defendants' marketing and sale of LivingSocial Deal Vouchers with allegedly illegal expiration terms. *Trombley*, 826 F. Supp. 2d at 192-93 (typicality is met when "'each class member's claim arises from the same course of events that led to the claims of the representative parties'"). In addition, Plaintiffs contend that the Named Plaintiffs are adequate to represent the Settlement Class, and that there is no conflict between the Named Plaintiffs' interests and those of the Settlement Class.[4] *Id.* at 193 (adequacy satisfied where the interests of the named representatives are not

---

[4] Plaintiffs have applied for Incentive Awards of $2,500 for each Named Plaintiff who was deposed and $500 for each of the other Named Plaintiffs, as compensation for their time and effort in prosecuting this action, which LivingSocial agreed may be paid from the Settlement Fund if awarded by the Court. Given the modest amount requested, there is no conflict with Settlement Class

antagonistic to unnamed class members and the named representatives appear to vigorously prosecute the interests of the class through qualified counsel). Also, with respect to the issue of adequacy, Robbins Geller Rudman & Dowd LLP and Cuneo Gilbert & LaDuca, LLP, the law firms which prosecuted this Action on behalf of Plaintiffs and the Class, are indisputably qualified and experienced in handling class action litigation, as the Court found in appointing those firms as Class Counsel. *See* Stoia Decl., ¶2.

Plaintiffs further contend that the Settlement Class also satisfies the requirements for certification under Rule 23(b)(3). First, common questions predominate because many of the same alleged operative facts and legal issues apply to all of the Settlement Class Members' claims. Conditional Certification Memo at 2-3; *see Trombley*, 826 F. Supp. 2d at 193-94 ("'common issues need only be predominant, not dispositive of the litigation'"). Each Settlement Class Member purchased at least one LivingSocial Voucher with an expiration date, which Plaintiffs contend violates one or more laws. *See* Conditional Certification Memo at 5. Second, given the relatively small size of each Class Member's potential claim and the common elements among the legal claims of Class Members, a class action is the most efficient and cost-effective way to prosecute the claims asserted in the Action. *See Trombley*, 826 F. Supp. 2d at 194 (large size of the class, uniformity of issues, along with the prohibitive costs of prosecuting complex litigation, weigh strongly in favor of finding that class action adjudication is superior to other forms of adjudication). Thus, for purposes of settlement, the requirement of superiority is met here.

Accordingly, Plaintiffs request that the Court grant certification of the Settlement Class as defined in the Settlement Agreement for purposes of effectuating the Settlement, and order that all

Members, particularly where no award was requested or negotiated until after the other material Settlement terms were agreed upon.

Settlement Class Members are bound by the Settlement Agreement and the Final Judgment entered in this Action, except for those Settlement Class Members who have submitted timely requests for exclusion.  *See* Keough Decl., Ex. G.

## V.   NOTICE TO THE SETTLEMENT CLASS WAS ADEQUATE AND SATISFIED DUE PROCESS

Finally, the notice provided to the Settlement Class was adequate and satisfies Rule 23 and all other due process requirements.  Rule 23 requires that "the court . . . direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see Baan Co. Sec. Litig.*, 284 F. Supp. 2d at 62, 67.  While actual notice is not required, the notice must be "'reasonably calculated . . . to apprise interested parties'" of the pendency of the action and afford them an opportunity to present their objections.  *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652 (1950)).

The notice plan provided under the Settlement was reasonably calculated to apprise Class Members of the pendency of the Action and their right to object or exclude themselves from the Settlement.  This Court previously approved the form and manner of notice, and ordered that notice of the Proposed Settlement be provided to the Settlement Class through two methods.  Preliminary Approval Order at 3.  First, the Court authorized the Settlement Administrator to send the Short-Form Notice via email to the email addresses of Settlement Class Members, as contained in LivingSocial's records.  *Id.*  Second, the Court directed the Settlement Administrator to establish a Settlement Website through which the following documents would be posted and made available: (i) the Long-Form Notice; (ii) Claim Form; (iii) Opt-out/Exclusion Request Form; and (iii) related pleadings, including the Complaint, Settlement Agreement; (iv) Preliminary Approval Order and the

- 25 -

underlying briefing; (v) as well the briefing in support of entry of the Fairness Hearing Order and Judgment and Class Counsel's motion for attorneys' fees and expenses. *Id.*

In granting preliminary approval, this Court found that the notice to the Settlement Class by way of direct email and website publication constitutes "the best method for providing such notice that is practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members of their rights and obligations, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law." Preliminary Approval Order at 2. The Court further held that the Long-Form Notice and Short-Form Notice "comply with due process and Rule 23 because they are reasonably calculated to adequately apprise Settlement Class Members of (i) the pending lawsuit; (ii) the proposed Settlement; and (iii) their rights, including the right to either participate in the Settlement, exclude themselves from the Settlement or object to the Settlement." *Id.*

Pursuant to the Settlement Agreement, and in accordance with the Court's Preliminary Approval Order, the Settlement Administrator, Garden City Group, Inc. ("GCG"), caused notice to be disseminated to potential Settlement Class Members. Keough Decl., ¶¶8-10. Between November 23 and November 25, 2012, the Settlement Administrator sent direct notice of the Settlement via email to 10,988,559 potential Settlement Class members. *Id.* at 9. The email notice was in the form approved by this Court, and included a link to the Settlement Website and instructions to Class Members. *Id.* The Settlement Administrator coordinated with various internet service providers ("ISPs") to minimize the inadvertent treatment and potential blockage of the email notices as "spam" emails. *Id.*, ¶8.

Moreover, pursuant to the Settlement Agreement, and in accordance with the Court's Preliminary Approval Order, notice was directed to all potential Settlement Class Members through a comprehensive, dedicated Settlement Website. Keough Decl., ¶¶10-11. The Settlement Website,

- 26 -

which became operational on November 23, 2012, and may be viewed at www.livingsocialvouchersettlement.com, contains copies of the Settlement Agreement and all exhibits thereto, instructions on how to submit claims for refunds online or mail; instructions on how to opt-out from the Settlement or lodge objections; a "Frequently Asked Questions" ("FAQ") page and answers thereto; pleadings pertaining to the Settlement; a summary of the important dates and deadlines; and contact information for both Parties' counsel, the Court and the Settlement Administrator.  *Id.*

The notice program, carried out in accordance with the Preliminary Approval Order, complies with Rule 23 and satisfies due process, and is the best notice practicable.  *Peters*, 966 F.2d at 1486 (holding that actual notice is not required, rather, notice need only be "'reasonably calculated . . . to apprise interested parties'" of the pendency of the action and afford them an opportunity to present their objections).  Here, because LivingSocial primarily communicates with its customers by means of the internet and by email, and does not have physical mailing addresses for the majority of Settlement Class Members, the notice program approved by the Court is the best notice practicable and is targeted to reach Settlement Class Members. *See Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 256-57 & n.10 (E.D.N.Y. 2009) ("[C]lass members in this case are uniquely suited for email notification because (1) their interactions with the defendants have exclusively or predominantly been via email and over the internet and (2) while the email addresses associated with their PayPal accounts have been verified by the defendants, their mailing addresses have not."); *Browning v. Yahoo! Inc.*, No. C04-1463 HRL, 2006 WL 3826714, at *8-*9 (N.D. Cal. Dec. 27, 2006) (finding email notice directing class members to official settlement website particularly appropriate where class members' "allegations arise from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are familiar with and comfortable with email and the Internet"); *see also Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 58 (2008) (approving email notice directing class members to settlement website and stating "[u]sing a summary notice that directed the class member wanting more information to a Web

- 27 -

site containing a more detailed notice, and provided hyperlinks to that Web site, was a perfectly acceptable manner of giving notice in this case").

Accordingly, adequate notice has been provided to the Settlement Class.

## VI.   CONCLUSION

Plaintiffs and Defendants respectfully submit that the Settlement is fair, reasonable, and adequate.  For the reasons set forth above, the Parties respectfully request that the Court grant final approval of the Settlement and enter the Judgment and Dismissal with Prejudice submitted herewith.

Respectfully submitted,

DATED:  February 22, 2013

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR.
RACHEL L. JENSEN
THOMAS R. MERRICK
PHONG L. TRAN

s/ John J. Stoia, Jr.
JOHN J. STOIA, JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA (DC Bar 476134)
WILLIAM H. ANDERSON (DC Bar 502380)
507 C Street, NE
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

WITES & KAPETAN PA
MARC A. WITES
JONATHAN STEPHEN BURNS
4400 N Federal Highway
Lighthouse Point, FL  33064
Telephone:  954/570-8183
954/354-0205 (fax)

813486_1

CARNEY GILLESPIE ISITT PLLP
CHRISTOPHER ROBERT CARNEY
100 W. Harrison Street, Suite N440
Seattle, WA  98119
Telephone:  206/445-0220

MYLES A. SCHNEIDER & ASSOCIATES,
   LTD.
MYLES A. SCHNEIDER
710 Dodge Avenue, NW, Suite A
Elk River, MN  55330
Telephone:  763/315-1100
877/294-4254 (fax)

BONNETT FAIRBOURN FRIEDMAN
   & BALINT
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602-798-5825 (fax)

AUDET & PARTNERS, LLP
MICHAEL A. McSHANE
221 Main Street, Suite 1460
San Francisco, CA  94105
Telephone:  415/568-2555
415/576-1776 (fax)

HALUNEN & ASSOCIATES
CLAYTON D. HALUNEN
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  612/605-4098
612/605-4099 (fax)

BOLEN ROBINSON & ELLIS, LLP
CHRISTOPHER M. ELLIS
202 S. Franklin, 2nd Floor
Decatur, IL  62523
Telephone:  217/429-4296
217/329-0034 (fax)

LEVIN, FISHBEIN, SEDRAN & BERMAN
CHARLES E. SCHAFFER
510 Walnut Street, Suite 500
Philadelphia, PA  19106-3697
Telephone:  215/592-1500
215/592-4663 (fax)

Attorneys for Plaintiffs

813486_1

DATED:  February 22, 2013                    COOLEY LLP
                                             CHRISTOPHER B. DURBIN


                                             _____
                                                    s/ Christopher B. Durbin
                                             CHRISTOPHER B. DURBIN

                                             719 Second Avenue, Suite 900
                                             Seattle, WA 98104
                                             Telephone:  206/452-8769
                                             206-452-8800 (fax)

                                             COOLEY LLP
                                             MICHELLE C. DOOLIN
                                             DARCIE A. TILLY
                                             4401 Eastgate Mall
                                             San Diego, CA 92121
                                             Telephone:  858/550-6000

                                             COOLEY LLP
                                             MICHAEL RHODES
                                             101 California Street, 5th Floor
                                             San Francisco, California 94111-5800
                                             Telephone:  415/693-2000

                                             Attorneys for Defendants

## ECF CERTIFICATION

       The filing attorney attests that he has obtained concurrence regarding the filing of this

document from the signatories to this document.


Dated:  February 22, 2013                    By:___s/ John J. Stoia, Jr._____
                                                    JOHN J. STOIA, JR.

- 30 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 22, 2013.

s/ John J. Stoia, Jr.
JOHN J. STOIA, JR.

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:   jstoia@rgrdlaw.com

813486_1

# Mailing Information for a Case 1:11-mc-00472-ESH-AK

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **William H. Anderson**
  wanderson@cuneolaw.com,halunen@halunenlaw.com

- **Christopher A. Bandas**
  cbandas@bandaslawfirm.com

- **Jonathan Stephen Burns**
  jburns@wklawyers.com

- **Jay S. Carlson**
  JayCarlson.legal@gmail.com

- **Christopher Robert Carney**
  christopher.carney@cgi-law.com

- **Michelle C. Doolin**
  mdoolin@cooley.com,bambrose@cooley.com

- **Christopher B Durbin**
  cdurbin@cooley.com

- **Christopher M. Ellis**
  cellis@brelaw.com

- **Shaun Van Eyk**
  shaun@vaneyk-moore.com

- **Sean P. Gillespie**
  sean.gillespie@cgi-law.com

- **Craig Alan Guthery**
  cguthery@cooley.com

- **Kenan Lee Isitt**
  kenan.isitt@cgi-law.com

- **Rachel L. Jensen**
  rachelj@rgrdlaw.com

- **Michael Joseph Klisch**
  mklisch@cooley.com,bnelson@cooley.com

- **Charles J. LaDuca**

charlesl@cuneolaw.com

- **Thomas Robert Merrick**
  tmerrick@rgrdlaw.com

- **Michael G. Rhodes**
  mrhodes@cooley.com,rlopez@cooley.com,pmoyes@cooley.com

- **Myles A. Schneider**
  myles@maschneider.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com,e_file_sd@rgrdlaw.com,ldeem@rgrdlaw.com

- **Patricia N Syverson**
  psyverson@bffb.com

- **Michael Ross Tein**
  tein@lewistein.com

- **Darcie Tilly**
  dtilly@cooley.com

- **Phong L. Tran**
  ptran@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
FREDERIC FLETCHER
30025 Alicia Parkway
Apartment G340
Laguna Niguel, CA 92677

MICHELLE MELTON
1570 Lake Druze
Cardiff, CA 92007

CERY PERLE
13590 Jog Road
Suite C-6
Delray Beach, FL 33446

KATHARINE TRAYLOR SCHAFFZIN
1362 Poplar Ridge Drive
Memphis, TN 38120
```